**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **LISA ALYN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:15-cv-00596** |
| | ) | **Senior Judge William J. Haynes, Jr** |
| **v.** | ) | **Magistrate Judge John S. Bryant** |
| | ) | **JURY DEMAND** |
| | ) | |
| **SOUTHERN LAND COMPANY, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## NOTICE OF FILING

Defendant Southern Land Company hereby submits its exhibits to the counterclaims. At the time of filing, Defendant was unable to submit the exhibits as separate attachments to the counterclaims due to a CM/ECF technical failure. As such, Defendant is submitting all the exhibits together with this Notice of Filing. Counsel for Defendant will contact the Clerk's Office to resolve this issue.

Respectfully submitted,

s/Randy Michels
Randy Michels (BPR # 21604)
Kevin Hartley (BPR # 29199)
TRUST TREE LEGAL, P.C.
1321 Adams Street
Nashville, TN 37208
Telephone: (615) 852-8408
Email: randy@trust-tree.com
Email: bill@trust-tree.com
Email: kevin@trust-tree.com

Counsel for Defendant
SOUTHERN LAND COMPANY, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of June, 2015, a true and exact copy of the foregoing has been served via the Electronic Case Filing System of the United States District Court for the Middle District of Tennessee, which will automatically send email notification of such filing to the following attorneys of record:

Thomas K. Potter, III (BPR # 024857)
John Paul Nefflen (BPR # 020226)
BURR & FORMAN LLP
511 Union Street
Suite 2300
Nashville, TN 37219
Telephone: (615) 724-3219
Email: tpotter@burr.com
Email: jnefflen@burr.com

Gregory D. Latham
INTELLECTUAL PROPERTY CONSULTING, LLC
201 St. Charles Ave., Suite 2500
New Orleans, LA 70170
Telephone: (504) 322-7166
Email: glatham@iplawconsulting.com

s/Randy Michels
Counsel for Southern Land Company

**EXHIBIT 1**

**Int. Cls.: 36, 37, 42, and 44**

**Prior U.S. Cls.: 100, 101, 102, 103, and 106**

**Reg. No. 3,101,150**

**United States Patent and Trademark Office** **Registered June 6, 2006**

## SERVICE MARK
### PRINCIPAL REGISTER

WESTHAVEN

SOUTHERN LAND COMPANY, LLC (TENNESSEE LTD LIAB CO)
501 CORPORATE CENTER DRIVE, SUITE 200
FRANKLIN, TN 370672661

FOR: REAL ESTATE BROKERAGE SERVICES; LEASING OF REAL ESTATE; REAL ESTATE MANAGEMENT, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-31-2002; IN COMMERCE 1-31-2002.

FOR: REAL ESTATE DEVELOPMENT; LAND DEVELOPMENT SERVICES, NAMELY, MASTER PLANNING AND LAYING OUT OF RESIDENTIAL AND/OR COMMERCIAL COMMUNITIES; RESIDENTIAL AND COMMERCIAL BUILDING CONSTRUCTION AND CONSTRUCTION MANAGEMENT SERVICES; GOLF COURSE CONSTRUCTION; LANDSCAPE LIGHTING INSTALLATION SERVICES; INSTALLATION OF LANDSCAPE IRRIGATION SYSTEMS, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

FIRST USE 1-31-2002; IN COMMERCE 1-31-2002.

FOR: LANDSCAPE LIGHTING DESIGN; INTERIOR DECORATING; ARCHITECTURAL DESIGN; ARCHITECTURAL DRAFTING SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 3-31-2003; IN COMMERCE 3-31-2003.

FOR: LANDSCAPE GARDENING DESIGN FOR OTHERS; LANDSCAPE MAINTENANCE SERVICES, NAMELY, LAWN AND PLANT CARE; LANDSCAPE INSTALLATION SERVICES, NAMELY, LANDSCAPE GARDENING, IN CLASS 44 (U.S. CLS. 100 AND 101).

FIRST USE 4-30-2003; IN COMMERCE 4-30-2003.

SN 76-524,137, FILED 6-20-2003.

CHRISTOPHER OTT, EXAMINING ATTORNEY

**EXHIBIT 2**

**Int. Cls.: 36, 37, 42, and 44**

**Prior U.S. Cls.: 100, 101, 102, 103, and 106**

**Reg. No. 3,101,151**

**United States Patent and Trademark Office** **Registered June 6, 2006**

## SERVICE MARK
### PRINCIPAL REGISTER

# WESTHAVEN

SOUTHERN LAND COMPANY, LLC (TENNESSEE LTD LIAB CO)
501 CORPORATE CENTER DRIVE, SUITE 200
FRANKLIN, TN 370672661

FOR: REAL ESTATE BROKERAGE SERVICES; LEASING OF REAL ESTATE; REAL ESTATE MANAGEMENT, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-31-2002; IN COMMERCE 1-31-2002.

FOR: REAL ESTATE DEVELOPMENT; LAND DEVELOPMENT SERVICES, NAMELY, MASTER PLANNING AND LAYING OUT OF RESIDENTIAL AND/OR COMMERCIAL COMMUNITIES; RESIDENTIAL AND COMMERCIAL BUILDING CONSTRUCTION AND CONSTRUCTION MANAGEMENT SERVICES; GOLF COURSE CONSTRUCTION; LANDSCAPE LIGHTING INSTALLATION SERVICES; INSTALLATION OF LANDSCAPE IRRIGATION SYSTEMS, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

FIRST USE 1-31-2002; IN COMMERCE 1-31-2002.

FOR: LANDSCAPE LIGHTING DESIGN; INTERIOR DECORATING; ARCHITECTURAL DESIGN; ARCHITECTURAL DRAFTING SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 3-31-2003; IN COMMERCE 3-31-2003.

FOR: LANDSCAPE GARDENING DESIGN FOR OTHERS; LANDSCAPE MAINTENANCE SERVICES,NAMELY, LAWN AND PLANT CARE; LANDSCAPE INSTALLATION SERVICES, NAMELY, LANDSCAPE GARDENING, IN CLASS 44 (U.S. CLS. 100 AND 101).

FIRST USE 4-30-2003; IN COMMERCE 4-30-2003.

SN 76-524,401, FILED 6-20-2003.

CHRISTOPHER OTT, EXAMINING ATTORNEY

1&1 Welcome to 1&1! Language English

Home | Whois | Registration Agreements | About us

**EXHIBIT 3**

## Check WHOIS Data

Here you can check the WHOIS data for domains. For some domain extensions, you can also click the corresponding registry logo on the right side of the page.

Enter the desired domain name and click 'Check WHOIS Data'.

www. westhaventn.com Check WHOIS Data

Domain Name: westhaventn.com
Registry Domain ID: 40410501_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.1and1.com
Registrar URL: http://1and1.com
Updated Date: 2012-12-14T21:58:31Z
Creation Date: 2000-11-09T19:13:32Z
Registrar Registration Expiration Date: 2015-11-09T19:13:32Z
Registrar: 1&1 Internet AG
Registrar IANA ID: 83
Registrar Abuse Contact Email: abuse@1and1.com
Registrar Abuse Contact Phone: +1.8774612631
Reseller:
Domain Status: clientTransferProhibited https://www.icann.org/epp#clientTransferProhibited
Registry Registrant ID:
Registrant Name: John LaFon
Registrant Organization: Southern Land Company
Registrant Street: 501 Corporate Centre Drive
Registrant Street: Suite 600
Registrant City: Franklin
Registrant State/Province: TN
Registrant Postal Code: 37067
Registrant Country: US
Registrant Phone: +1.6157783146
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: john.lafon@southernland.com
Registry Admin ID:
Admin Name: John LaFon
Admin Organization: Southern Land Company
Admin Street: 501 Corporate Centre Drive
Admin Street: Suite 600
Admin City: Franklin
Admin State/Province: TN
Admin Postal Code: 37067
Admin Country: US
Admin Phone: +1.6157783146
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: john.lafon@southernland.com
Registry Tech ID:
Tech Name: Hostmaster ONEANDONE
Tech Organization: 1&1 Internet Inc.
Tech Street: 701 Lee Rd.
Tech Street: Suite 300
Tech City: Chesterbrook
Tech State/Province: PA
Tech Postal Code: 19087
Tech Country: US
Tech Phone: +1.8774612631
Tech Phone Ext:
Tech Fax: +1.6105601501
Tech Fax Ext:
Tech Email: hostmaster@1and1.com
Nameserver: ns51.1and1.com
Nameserver: ns52.1and1.com
DNSSEC: Unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
>>> Last update of WHOIS database: 2015-06-23T18:52:31Z <<<

For more information on Whois status codes, please visit https://icann.org/epp

### TERMS OF USE

The data in the WHOIS database is provided by 1&1 for information purposes, and to assist persons in obtaining information about or related to a domain name registration record. 1&1 does not guarantee its accuracy. By submitting a WHOIS query, you agree that you will use this data only for lawful purposes and that, under no circumstances, you will use this data to
(1) allow, enable, or otherwise support the transmission by e-mail, telephone, or facsimile of mass, unsolicited, commercial advertising or solicitations to entities other than the data recipient's own existing customers; or
(2) enable high volume, automated, electronic processes that send queries or data to the systems of any Registry Operator or ICANN-Accredited registrar, except as reasonably necessary to register domain names or modify existing registrations. 1&1 reserves the right to modify these terms at any time. By submitting this query, you agree to abide by this policy.

Our partners

**EXHIBIT 4**

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO**: 76/524401

**APPLICANT**: Southern Land Company, LLC

**CORRESPONDENT ADDRESS**:
HANNAH K.V. CASSIDY
STITES & HARBISON PLLC
424 CHURCH STREET, SUITE 1800
NASHVILLE, TENNESSEE 37219

**RETURN ADDRESS**:
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514
**ecom116@uspto.gov**

**MARK**: WESTHAVEN

**CORRESPONDENT'S REFERENCE/DOCKET NO** : N/A

**CORRESPONDENT EMAIL ADDRESS**:

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and e-mail address.

## OFFICE ACTION

**TO AVOID ABANDONMENT, WE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF OUR MAILING OR E-MAILING DATE**.

Serial Number 76/524401

The assigned examining attorney has reviewed the referenced application and determined the following.

NO CONFLICTING MARKS
The examining attorney has searched the Office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d). TMEP §704.02.

RECITATION OF SERVICES
The recitation of services is unacceptable as indefinite because the nature of the services is unclear and identifies services which are properly classified in more than one International Class. For example the term "leasing" is indefinite because it is not clear as to what is being leased and the proper classification cannot be determined. In addition, the term "sales" does not identify a service under the US Trademark Act or the Nice Agreement since the primary beneficiary of selling or sales is the seller. Language describing services acceptable in the retail chain (e.g., retail stores, distributorships, on-line retailing) should be used instead of selling or sales.

The applicant must specify the common commercial name for the services. The applicant may adopt the

following recitation, if accurate: TMEP §1402.11.
Class 35: Leasing of office equipment; business management

Class 36: Real estate brokerage services; leasing of real estate; real estate management

Class 37: Real estate development; land development services, namely, planning and laying out of residential and/or commercial communities; residential and commercial building construction and construction management services; gold course construction; landscape lighting installation services; installation of landscape irrigation systems

Class 42: Landscape lighting design; interior decorating; architectural design; architectural drafting services

Class 44: Landscape gardening design for others; landscape maintenance services, namely, lawn care; landscape installation services, namely, landscape gardening

Please note that, while an application may be amended to clarify or limit the identification, additions to the identification are not permitted. 37 C.F.R. §2.71(a); TMEP §1402.06. Therefore, the applicant may not amend to include any services that are not within the scope of the services recited in the present identification.

MULTIPLE CLASS APPLICATION

If the applicant prosecutes this application as a combined, or multipleâ€class application, the applicant must comply with each of the following.

(1) The applicant must list the goods/services by international class with the classes listed in ascending numerical order. TMEP §1403.01.

(2) The applicant must submit a filing fee for each international class of goods/services not covered by the fee already paid. 37 C.F.R. §§2.6(a)(1) and 2.86(a); TMEP §§810.01 and 1403.01. Effective January 1, 2003, the fee for filing a trademark application is $335 for each class. This applies to classes added to pending applications as well as to new applications filed on or after that date. The applicant has paid for one class of services.

MEANING

The applicant must indicate whether “WESTHAVEN” has any significance in the relevant trade, or any geographical significance. 37 C.F.R. §2.61(b).

RESPONSE TO OFFICE ACTION

No set form is required for response to this Office action. The applicant must respond to each point raised. The applicant should simply set forth the required changes or statements and request that the Office enter them. The applicant must sign the response.

Applicants may now respond formally using the Office’s Trademark Electronic Application System (TEAS) at **http://www.uspto.gov/teas/index.html**. When using TEAS the data the applicant submits is directly uploaded into the Office’s database, which reduces the time it takes to process the applicant’s response, while also eliminating the possibility of data entry errors by the Office. Applicants are strongly encouraged to use TEAS to respond to office actions.
PLEASE NOTE: Because it delays processing, submission of duplicate papers is discouraged. Unless

specifically requested to do so by the Office, parties should not mail follow up copies of documents transmitted electronically or by fax. TMEP 306.04; *Cf. ITC Entertainment Group Ltd. V. Nintendo of America Inc*. 45 USPQ2d 2021 (TTAB 1998).

/Jennifer Martin/
Examining Attorney L.O. 116
(703) 306-7925; (703) 746-8116 (fax)
Jennifer.Martin@uspto.gov

**How to respond to this Office Action:**

To respond formally using the Office's Trademark Electronic Application System (TEAS), visit **http://www.uspto.gov/teas/index.html** and follow the instructions.

To respond formally via E-mail, visit **http://www.uspto.gov/web/trademarks/tmelecresp.htm** and follow the instructions.

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the serial number, law office and examining attorney's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

For general and other useful information about trademarks, you are encouraged to visit the Office's web site at **http://www.uspto.gov/main/trademarks.htm**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY.**

**EXHIBIT 5**

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO**: 76/524137

**APPLICANT**: Southern Land Company, LLC

**CORRESPONDENT ADDRESS**:
HANNAH K.V. CASSIDY
STITES & HARBISON PLLC
424 CHURCH STREET, SUITE 1800
NASHVILLE, TENNESSEE 37219

**RETURN ADDRESS**:
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514
**ecom116@uspto.gov**

**MARK**: W WESTHAVEN

**CORRESPONDENT'S REFERENCE/DOCKET NO** : N/A

**CORRESPONDENT EMAIL ADDRESS**:

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and e-mail address.

# OFFICE ACTION

**TO AVOID ABANDONMENT, WE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF OUR MAILING OR E-MAILING DATE**.

Serial Number 76/524137

The assigned examining attorney has reviewed the referenced application and determined the following.

<u>NO CONFLICTING MARKS</u>
The examining attorney has searched the Office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d). TMEP §704.02.

<u>RECITATION OF SERVICES</u>
The recitation of services is unacceptable as indefinite because the nature of the services is unclear and identifies services which are properly classified in more than one International Class. For example the term "leasing" is indefinite because it is not clear as to what is being leased and the proper classification cannot be determined. In addition, the term "sales" does not identify a service under the US Trademark Act or the Nice Agreement since the primary beneficiary of selling or sales is the seller. Language describing services acceptable in the retail chain (e.g., retail stores, distributorships, on-line retailing) should be used instead of selling or sales.

The applicant must specify the common commercial name for the services. The applicant may adopt the

following recitation, if accurate: TMEP §1402.11.

Class 35: Leasing of office equipment; business management

Class 36: Real estate brokerage services; leasing of real estate; real estate management

Class 37: Real estate development; land development services, namely, planning and laying out of residential and/or commercial communities; residential and commercial building construction and construction management services; gold course construction; landscape lighting installation services; installation of landscape irrigation systems

Class 42: Landscape lighting design; interior decorating; architectural design; architectural drafting services

Class 44: Landscape gardening design for others; landscape maintenance services, namely, lawn care; landscape installation services, namely, landscape gardening

Please note that, while an application may be amended to clarify or limit the identification, additions to the identification are not permitted. 37 C.F.R. §2.71(a); TMEP §1402.06. Therefore, the applicant may not amend to include any services that are not within the scope of the services recited in the present identification.

MULTIPLE CLASS APPLICATION

If the applicant prosecutes this application as a combined, or multipleâ€‚classapplication, the applicant must comply with each of the following.

(1) The applicant must list the goods/services by international class with the classes listed in ascending numerical order. TMEP §1403.01.

(2) The applicant must submit a filing fee for each international class of goods/services not covered by the fee already paid. 37 C.F.R. §§2.6(a)(1) and 2.86(a); TMEP §§810.01 and 1403.01. Effective January 1, 2003, the fee for filing a trademark application is $335 for each class. This applies to classes added to pending applications as well as to new applications filed on or after that date. The applicant has paid for one class of services.

DRAWING

The drawing is not acceptable because it will not reproduce satisfactorily because it contains gray stippling which is unclear and does not reproduce. The applicant must submit a new drawing showing the mark clearly and conforming to 37 C.F.R. §2.52. TMEP §807.07(a).

Applicant must clarify whether the gray tones in the drawing are intended to indicate the color gray.

(1) If the color gray is a feature of the mark, then applicant must submit a color claim and description as follows: “The color gray is a feature of the mark. The color gray appears in <specify where color gray appears>.” 37 C.F.R. §§2.52(b) and (b)(1).

(2) If the color gray is intended to indicate shading only, then applicant must submit a new drawing showing the mark in black and white only, with the gray tones deleted.

Please note: An applicant cannot amend the drawing of the mark if the change materially alters the mark. TMEP §807.14(a). The Office determines whether a proposed amendment materially alters a mark by

comparing the proposed amendment with the description or drawing of the mark filed with the original application. 37 C.F.R. §2.72. TMEP §807.14(a)(i).
The requirements for a specialâ€form drawing are as follows:

(1) The drawing must appear in black and white; no color is permitted.

(2) Every line and letter must be black and clear.

(3) The use of gray to indicate shading is unacceptable.

(4) The lining must not be too fine or too close together.

(5) The preferred size of the area in which the mark is displayed is 2½ inches (6.1 cm.) high and 2½ inches (6.1 cm.) wide. It should not be larger than 4 inches (10.3 cm.) high or 4 inches (10.3 cm.) wide.

(6) If the reduction of the mark to the required size renders any details illegible, the applicant may insert a statement in the application to describe the mark and these details.

37 C.F.R. §2.52; TMEP §§807.01(b) and 807.07(a). The Office will enforce these drawing requirements strictly.

The Office prefers that the drawing be depicted on a separate sheet of smooth, nonshiny, white paper 8 to 8½ inches (20.3 to 21.6 cm.) wide and 11 inches (27.9 cm.) long, and that the sheet contain a heading listing, on separate lines, the applicant's complete name; the applicant's address; the goods or services recited in the application; and, if the application is filed under Section 1(a) of the Act, the dates of first use of the mark and of first use of the mark in commerce; or, if the application is filed under Section 44(d), the priority filing date of the foreign application. 37 C.F.R. §2.52(b); TMEP §§807.01(a), 807.01(b), 807.01(c) and 807.07(a).

NOTE: The Trademark Rules pertaining to drawings were amended on November 2, 2003. For applications filed prior to November 2, 2003, applicants may follow either the new special form drawing rules or the special form drawing rules in force prior to their amendment on November 2, 2003. Exam Guide 01-03, section I.B.6.

MEANING
The applicant must indicate whether "WESTHAVEN" has any significance in the relevant trade, or any geographical significance. 37 C.F.R. §2.61(b).

RESPONSE TO OFFICE ACTION
No set form is required for response to this Office action. The applicant must respond to each point raised. The applicant should simply set forth the required changes or statements and request that the Office enter them. The applicant must sign the response.

Applicants may now respond formally using the Office's Trademark Electronic Application System (TEAS) at **http://www.uspto.gov/teas/index.html**. When using TEAS the data the applicant submits is directly uploaded into the Office's database, which reduces the time it takes to process the applicant's response, while also eliminating the possibility of data entry errors by the Office. Applicants are strongly encouraged to use TEAS to respond to office actions.

PLEASE NOTE: Because it delays processing, submission of duplicate papers is discouraged. Unless specifically requested to do so by the Office, parties should not mail follow up copies of documents transmitted electronically or by fax. TMEP 306.04; *Cf. ITC Entertainment Group Ltd. V. Nintendo of America Inc*. 45 USPQ2d 2021 (TTAB 1998).

/Jennifer Martin/
Examining Attorney L.O. 116
(703) 306-7925; (703) 746-8116 (fax)
Jennifer.Martin@uspto.gov

**How to respond to this Office Action:**

To respond formally using the Office's Trademark Electronic Application System (TEAS), visit **http://www.uspto.gov/teas/index.html** and follow the instructions.

To respond formally via E-mail, visit **http://www.uspto.gov/web/trademarks/tmelecresp.htm** and follow the instructions.

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the serial number, law office and examining attorney's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

For general and other useful information about trademarks, you are encouraged to visit the Office's web site at **http://www.uspto.gov/main/trademarks.htm**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY.**

**EXHIBIT 6**


**STITES & HARBISON** PLLC

ATTORNEYS

SunTrust Center
424 Church Street
Suite 1800
Nashville, TN 37219-2376
[615] 244-5200
[615] 782-2371 Fax
www.stites.com

**James R. Michels**
**[615] 782-2234**
**randy.michels@stites.com**


July 6, 2004

Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514

| | | |
|---|---|---|
| RE: | Response to Office Action | |
| | Mark: | WESTHAVEN |
| | Serial No.: | 76/524,401 |
| | Applicant: | Southern Land Company, LLC |
| | Date of Office Action: | January 6, 2004 |
| | Examining Attorney: | Jennifer Martin |
| | Law Office: | 116 |

Ladies and Gentlemen:

Enclosed please find a Response to Office Action in connection with the above-referenced mark, PTO-2038 in the amount of $1,005.00, along with a self-addressed stamped postcard. Please stamp the postcard to indicate your receipt of this document and return it to us.

If you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

James R. Michels

JRM:fmv
Enclosures

12363N:020184:586794:1:NASHVILLE

07-12-2004
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #66

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Mark: | WESTHAVEN | ) | **AMENDMENT AND RESPONSE** to Office Action dated January 6, 2004 |
| Serial No.: | 76/524,401 | ) | |
| Filed: | June 20, 2003 | ) | Examiner: Jennifer Martin |
| Applicant: | Southern Land Company, LLC | ) | Law Office 116 |

Box RESPONSES FEE
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514

### AMENDMENT AND RESPONSE TO OFFICE ACTION

Dear Commissioner:

This is in response to the Office Action dated January 6, 2004, in connection with the above-referenced Application. Applicant Southern Land Company, LLC, has carefully reviewed the Examining Attorney's comments and submits the following amendment and response.

### AMENDMENT

The Examining Attorney has required that the Applicant amend the recitation of services. Pursuant to this request, Applicant requests that the recitation of services be amended to read as follows:

Class 36: Real estate brokerage services; leasing of real estate; real estate management

Class 37: Real estate development; land development services, namely, master planning and laying out of residential and/or commercial communities; residential and commercial building construction and construction management services; golf course construction; landscape lighting installation services; installation of landscape irrigation systems

Class 42: Landscape lighting design; interior decorating; architectural design; architectural drafting services

Class 44: Landscape gardening design for others; landscape maintenance services, namely, lawn and plant care; landscape installation services, namely, landscape gardening

**REMARKS**

The foregoing Amendment adopts substantially the same recitation of services proposed by the Examining Attorney in the Office Action. Applicant notes that there was a typographical error in the Office Action relating to golf course construction in International Class 37. The Office Action refers to "gold course construction." The proper description of the services, which is reflected in the amended recitation, should be "golf course construction." The new recitation of services is otherwise substantially as the Examining Attorney suggested, and should therefore be acceptable.

Applicant is prosecuting this Application as a multiple class application. Applicant asserts that the amended recitation set forth above is in compliance with the requirement in the Office Action that the services be listed by International Class with the classes listed in ascending numerical order. Further, Applicant submits an additional $1005 fee for the three International Classes not covered by the fee already paid.

Finally, the Examining Attorney states that Applicant must indicate whether "WESTHAVEN" has any significance in the relevant trade, or any geographical significance. Applicant submits that "WESTHAVEN" does not have any significance in the relevant trade, or any geographical significance.

**CONCLUSION**

In view of the foregoing, Applicant respectfully submits that its Application is in

condition for allowance, and requests that it be promptly passed to publication.

Respectfully submitted,

Hannah K.V. Cassidy
James R. Michels
Stites & Harbison PLLC
424 Church Street, Suite 1800
Nashville, Tennessee 37219
Phone: (615) 244-5200
Fax: (615) 782-2371

**CERTIFICATE OF MAILING**

I hereby certify that this Amendment and Response to Office Action for the WESTHAVEN mark (Serial No. 76/524,401) is being deposited with the United States Postal Service as first class mail in an envelope addressed to Box RESPONSES FEE, Commissioner for Trademarks at 2900 Crystal Drive, Arlington, Virginia 22202-3514, on this 6th day of July, 2004.

James R. Michels

EXHIBIT 7

# STITES & HARBISON PLLC

ATTORNEYS

SunTrust Center
424 Church Street
Suite 1800
Nashville, TN 37219-2376
[615] 244-5200
[615] 782-2371 Fax
www.stites.com

July 6, 2004

James R. Michels
[615] 782-2234
randy.michels@stites.com

Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514

RE: Response to Office Action

| | |
|---|---|
| Mark: | W WESTHAVEN |
| Serial No.: | 76/524,137 |
| Applicant: | Southern Land Company, LLC |
| Date of Office Action: | January 6, 2004 |
| Examining Attorney: | Jennifer Martin |
| Law Office: | 116 |

Ladies and Gentlemen:

Enclosed please find a Response to Office Action in connection with the above-referenced mark, PTO-2038 in the amount of $1,005.00, along with a self-addressed stamped postcard. Please stamp the postcard to indicate your receipt of this document and return it to us.

If you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

James R. Michels

JRM:fmv
Enclosures

12363N:020184:586794:1:NASHVILLE

07-12-2004
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #66

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| Mark: | W WESTHAVEN | ) ) ) | **AMENDMENT AND RESPONSE** to Office Action dated January 6, 2004 |
| Serial No.: | 76/524,137 | ) ) | |
| Filed: | June 20, 2003 | ) ) | Examiner: Jennifer Martin |
| Applicant: | Southern Land Company, LLC | ) | Law Office 116 |

Box RESPONSES FEE
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514

**AMENDMENT AND RESPONSE TO OFFICE ACTION**

Dear Commissioner:

This is in response to the Office Action dated January 6, 2004, in connection with the above-referenced Application. Applicant Southern Land Company, LLC, has carefully reviewed the Examining Attorney's comments and submits the following amendment and response.

**AMENDMENT**

The Examining Attorney has required that the Applicant amend the recitation of services. Pursuant to this request, Applicant requests that the recitation of services be amended to read as follows:

| | |
|---|---|
| Class 36: | Real estate brokerage services; leasing of real estate; real estate management |
| Class 37: | Real estate development; land development services, namely, master planning and laying out of residential and/or commercial communities; residential and commercial building construction and construction management services; golf course construction; landscape lighting installation services; installation of landscape irrigation systems |
| Class 42: | Landscape lighting design; interior decorating; architectural design; architectural drafting services |

Class 44: Landscape gardening design for others; landscape maintenance services, namely, lawn and plant care; landscape installation services, namely, landscape gardening

The Examining Attorney has also required that the Applicant submit a new drawing. Applicant respectfully requests that the attached drawing be substituted for the drawing originally submitted herein.

**REMARKS**

The foregoing Amendment adopts substantially the same recitation of services proposed by the Examining Attorney in the Office Action. Applicant notes that there was a typographical error in the Office Action relating to golf course construction in International Class 37. The Office Action refers to "gold course construction." The proper description of the services, which is reflected in the amended recitation, should be "golf course construction." The new recitation of services is otherwise substantially as the Examining Attorney suggested, and should therefore be acceptable.

Applicant is prosecuting this Application as a multiple class application. Applicant asserts that the amended recitation set forth above is in compliance with the requirement in the Office Action that the services be listed by International Class with the classes listed in ascending numerical order. Further, Applicant submits an additional $1005 fee for the three International Classes not covered by the fee already paid.

According to the Examining Attorney, the drawing is not acceptable because it will not reproduce satisfactorily because it contains gray stippling which is unclear and does not reproduce. Accordingly, Applicant submits a new drawing showing the mark clearly and conforming to 37 C.F.R. § 2.52.

Finally, the Examining Attorney states that Applicant must indicate whether "WESTHAVEN" has any significance in the relevant trade, or any geographical significance.

Applicant submits that "WESTHAVEN" does not have any significance in the relevant trade, or any geographical significance.

## CONCLUSION

In view of the foregoing, Applicant respectfully submits that its Application is in condition for allowance, and requests that it be promptly passed to publication.

Respectfully submitted,

Hannah K.V. Cassidy
James R. Michels
Stites & Harbison PLLC
424 Church Street, Suite 1800
Nashville, Tennessee 37219
Phone: (615) 244-5200
Fax: (615) 782-2371

## CERTIFICATE OF MAILING

I hereby certify that this Amendment and Response to Office Action for the W WESTHAVEN mark (Serial No. 76/524,137) is being deposited with the United States Postal Service as first class mail in an envelope addressed to Box RESPONSES FEE, Commissioner for Trademarks at 2900 Crystal Drive, Arlington, Virginia 22202-3514, on this 6th day of July, 2004.

James R. Michels

## DRAWING

| | |
|---|---|
| Mark: | W WESTHAVEN (and design) |
| Applicant: | Southern Land Company, LLC<br>a Tennessee limited liability company<br>having a business address at:<br><br>501 Corporate Center Drive, Suite 200<br>Franklin, Tennessee 37067-2661 |
| Goods or Services: | Class 36: Real estate brokerage services; leasing of real estate; real estate management<br><br>Class 37: Real estate development; land development services, namely, master planning and laying out of residential and/or commercial communities; residential and commercial building construction and construction management services; golf course construction; landscape lighting installation services; installation of landscape irrigation systems<br><br>Class 42: Landscape lighting design; interior decorating; architectural design; architectural drafting services<br><br>Class 44: Landscape gardening design for others; landscape maintenance services, namely, lawn and plant care; landscape installation services, namely, landscape gardening |
| Description, Claim or Lining Statement: | The Mark consists of a stylized W encircled by an oval, centered above the word "Westhaven" |

WESTHAVEN

EXHIBIT 8

# 1210.02(a) Geographic Locations

A geographic location may be any term identifying a country, city, state, continent, locality, region, area, or street.

*Region*. A particular, identifiable region (e.g., "Midwest" or "Mid-Atlantic") is a geographic location. *In re Pan-O-Gold Baking Co*., 20 USPQ2d 1761 (TTAB 1991) (holding that the primary significance of "New England" is geographic). On the other hand, vague geographic terms (e.g., "Global," "National," "International," or "World") are *not* considered to be primarily geographic, though they may be merely descriptive or deceptively misdescriptive under §2(e)(1). *See* **TMEP §1209.03(o)**.

*Nicknames*. A geographic nickname (e.g., "Big Apple" or "Motown"), or an abbreviation or other variant of the name of a geographic location, is treated the same as the actual name of the geographic location, if it is likely to be perceived as such by the purchasing public. *See In re Spirits of New Merced, LLC*, 85 USPQ2d 1614 (TTAB 2007) (holding that "Yosemite" – a well recognized and frequently used shorthand reference to Yosemite National Park and the Yosemite region in general – conveys a readily recognizable geographic significance); *In re Carolina Apparel,* 48 USPQ2d 1542 (TTAB 1998) (CAROLINA APPAREL primarily geographically descriptive of retail clothing store services, where the evidence showed that "Carolina" is used to indicate either the state of North Carolina or the state of South Carolina). *But see In re Trans Cont'l Records, Inc*., 62 USPQ2d 1541 (TTAB 2002) (O-TOWN found to be a "relatively obscure term" that would *not* be perceived by a significant portion of the purchasing public as a geographic reference to Orlando, Florida).

*Adjectives*. The adjectival form of the name of a geographic location is considered primarily geographic if it is likely to be perceived as such by the purchasing public. *See In re Joint-Stock Co. "Baik,"* 80 USPQ2d 1305 (TTAB 2006) (BAIKALSKAYA – the Russian equivalent of "from Baikal" or "Baikal's" – held primarily geographically descriptive of vodka); *In re Jack's Hi-Grade Foods, Inc*., 226 USPQ 1028 (TTAB 1985) (NEAPOLITAN held primarily geographically deceptively misdescriptive of sausage emanating from the United States, where the term is defined as "of or pertaining to Naples in Italy"); *In re BankAmerica Corp*., 231 USPQ 873 (TTAB 1986) (BANK OF AMERICA held primarily geographically descriptive).

*Maps*. A map or outline of a geographic area is also treated the same as the actual name of the geographic location if it is likely to be perceived as such. *See In re Canada Dry Ginger Ale, Inc*., 86 F.2d 830, 32 USPQ 49 (C.C.P.A. 1936) (map of Canada held to be the equivalent of the word "Canada"). *But see In re Texsun Tire & Battery Stores, Inc*., 229 USPQ 227, 229 (TTAB 1986) (holding that if the depiction of a map is fanciful or so integrated with other elements of a mark that it forms a unitary whole, then the map should not be considered primarily geographically descriptive).

*Coined Locations*. The mere fact that a term may be the name of a place that has a physical location does not necessarily make that term geographic under §2(e)(2). For example, names of amusement parks, residential communities, and business complexes which are coined by the applicant, must not be refused. *In re Pebble Beach Co*., 19 USPQ2d 1687 (TTAB 1991) (17 MILE DRIVE not a geographic term, where it refers to a specific location wholly owned by applicant, and was coined by applicant to refer both to applicant's services and the place where the services were performed).

EXHIBIT 9

WHOIS search results for:
**WESTHAVENFRANKLIN.COM**
(Registered)

Is this your domain? GO
Add hosting, email and more.

Want to buy this domain? GO
Get it with our Domain Buy service.

Domain Name: WESTHAVENFRANKLIN.COM
Registry Domain ID: 1741157492_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-04-02T15:37:57Z
Creation Date: 2012-08-28T14:41:01Z
Registrar Registration Expiration Date: 2016-08-28T14:41:01Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: Lisa Alyn
Registrant Organization: Benchmark Realty
Registrant Street: 1569 Championship Blvd
Registrant City: Franklin
Registrant State/Province: Tennessee
Registrant Postal Code: 37064
Registrant Country: United States
Registrant Phone: (615) 708-0445
Registrant Phone Ext:
Registrant Fax: (615) 778-8898
Registrant Fax Ext:
Registrant Email: lisa@lisaalyn.com
Registry Admin ID:
Admin Name: Lisa Alyn
Admin Organization: Benchmark Realty
Admin Street: 1569 Championship Blvd
Admin City: Franklin
Admin State/Province: Tennessee
Admin Postal Code: 37064
Admin Country: United States
Admin Phone: (615) 708-0445
Admin Phone Ext:
Admin Fax: (615) 778-8898
Admin Fax Ext:
Admin Email: lisa@lisaalyn.com
Registry Tech ID:
Tech Name: Lisa Alyn
Tech Organization: Benchmark Realty
Tech Street: 1569 Championship Blvd
Tech City: Franklin
Tech State/Province: Tennessee
Tech Postal Code: 37064
Tech Country: United States
Tech Phone: (615) 708-0445
Tech Phone Ext:
Tech Fax: (615) 778-8898
Tech Fax Ext:
Tech Email: lisa@lisaalyn.com
Name Server: NS6567.HOSTGATOR.COM
Name Server: NS6568.HOSTGATOR.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
>>> Last update of WHOIS database: 2015-06-23T17:00:00Z <<<

For more information on Whois status codes, please visit
https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en

The data contained in GoDaddy.com, LLC's WHOIS database, while believed by the company to be reliable, is provided "as is" with no guarantee or warranties regarding its accuracy. This information is provided for the sole purpose of assisting you in obtaining information about domain name registration records. Any use of this data for any other purpose is expressly forbidden without the prior written permission of GoDaddy.com, LLC. By submitting an inquiry, you agree to these terms of usage and limitations of warranty. In particular, you agree not to use this data to allow, enable, or otherwise make possible, dissemination or collection of this data, in part or in its entirety, for any purpose, such as the transmission of unsolicited advertising and solicitations of any kind, including spam. You further agree not to use this data to enable high volume, automated or robotic electronic processes designed to collect or compile this data for any purpose, including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified in the "registrant" section. In most cases, GoDaddy.com, LLC is not the registrant of domain names listed in this database.

See Underlying Registry Data
Report Invalid Whois

## Domain already taken?

Enter Domain Name Search

### NameMatch Recommendations

GoDaddy.com NameMatch has found similar domain names related to your search. Registering multiple domain names may help protect your online brand and enable you to capture more Web traffic, which you can then direct to your primary domain.

**Domains available for new registration:**

| | | |
|---|---|---|
| **Alternate TLDs** | | |
| westhavenfranklin.**info** | SAVE! | $2.99*/yr |
| westhavenfranklin.**org** | SAVE! | $7.99*/yr |
| westhavenfranklin.**us** | SAVE! | $4.99/yr |
| westhavenfranklin.**biz** | SAVE! | $7.99*/yr |
| westhavenfranklin.**mobi** | SAVE! | $6.99*/yr |
| westhavenfranklin.**ca** | SAVE! | $9.99/yr |
| westhavenfranklin.**me** | SAVE! | $9.99/yr |
| westhavenfranklin.**ws** | SAVE! | $9.99/yr |
| **Similar Premium Domains** | | |
| NewHavenKentucky.com | | $449.00* |
| WestHavenTownHall.com | | $949.00* |
| OldWestTowns.com | | $499.00* |

ADD TO CART

**Domains available at Go Daddy Auctions®:**

| | |
|---|---|
| westhaventv.com<br>Ends on: 9/20/2015 3:00:00 PM PDT | $1,898.00* |
| franklinelementaryschool.com<br>Ends on: 9/19/2015 9:28:00 AM PDT | $1,299.00* |
| franklincountyalabama.com<br>Ends on: 9/19/2015 9:08:00 AM PDT | $899.00* |
| franklin-institute.com<br>Ends on: 9/15/2015 9:25:00 AM PDT | $749.00* |
| franklincountync.com<br>Ends on: 9/14/2015 10:31:00 AM PDT | $1,249.00* |
| westhavengroup.com<br>Ends on: 9/14/2015 9:23:00 AM PDT | $1,595.00* |

VIEW LISTING

### Learn more about

Private Registration
Deluxe Registration
Business Registration
Protected Registration

*Plus ICANN fee of $0.18 per domain name year.
**.CA domain names will be registered through Go Daddy Domains Canada, Inc., a CIRA certified registrar.

Search for another domain name in the **WHOIS** database
Enter a domain name to search Search



Use of this Site is subject to express terms of use. By using this site, you signify that you agree to be bound by these Universal Terms of Service.
Legal Privacy Policy Advertising Preferences
Copyright © 1999 - 2015 GoDaddy Operating Company, LLC. All Rights Reserved.

EXHIBIT 10



WHOIS search results for:
**WESTHAVENFRANKLIN.NET**
(Registered)

Is this your domain? GO
Add hosting, email and more.

Want to buy this domain? GO
Get it with our Domain Buy service.

Domain Name: WESTHAVENFRANKLIN.NET
Registry Domain ID: 1745209222_DOMAIN_NET-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-04-02T15:37:30Z
Creation Date: 2012-09-15T18:16:24Z
Registrar Registration Expiration Date: 2016-09-15T18:16:24Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: Lisa Alyn
Registrant Organization: Benchmark Realty
Registrant Street: 1569 Championship Blvd
Registrant City: Franklin
Registrant State/Province: Tennessee
Registrant Postal Code: 37064
Registrant Country: United States
Registrant Phone: (615) 708-0445
Registrant Phone Ext:
Registrant Fax: (615) 778-8898
Registrant Fax Ext:
Registrant Email: lisa@lisaalyn.com
Registry Admin ID:
Admin Name: Lisa Alyn
Admin Organization: Benchmark Realty
Admin Street: 1569 Championship Blvd
Admin City: Franklin
Admin State/Province: Tennessee
Admin Postal Code: 37064
Admin Country: United States
Admin Phone: (615) 708-0445
Admin Phone Ext:
Admin Fax: (615) 778-8898
Admin Fax Ext:
Admin Email: lisa@lisaalyn.com
Registry Tech ID:
Tech Name: Lisa Alyn
Tech Organization: Benchmark Realty
Tech Street: 1569 Championship Blvd
Tech City: Franklin
Tech State/Province: Tennessee
Tech Postal Code: 37064
Tech Country: United States
Tech Phone: (615) 708-0445
Tech Phone Ext:
Tech Fax: (615) 778-8898
Tech Fax Ext:
Tech Email: lisa@lisaalyn.com
Name Server: NS21.DOMAINCONTROL.COM
Name Server: NS22.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
>>> Last update of WHOIS database: 2015-06-23T17:00:00Z <<<

For more information on Whois status codes, please visit
https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en

The data contained in GoDaddy.com, LLC's WHOIS database, while believed by the company to be reliable, is provided "as is" with no guarantee or warranties regarding its accuracy. This information is provided for the sole purpose of assisting you in obtaining information about domain name registration records. Any use of this data for any other purpose is expressly forbidden without the prior written permission of GoDaddy.com, LLC. By submitting an inquiry, you agree to these terms of usage and limitations of warranty. In particular, you agree not to use this data to allow, enable, or otherwise make possible, dissemination or collection of this data, in part or in its entirety, for any purpose, such as the transmission of unsolicited advertising and solicitations of any kind, including spam. You further agree not to use this data to enable high volume, automated or robotic electronic processes designed to collect or compile this data for any purpose, including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified in the "registrant" section. In most cases, GoDaddy.com, LLC is not the registrant of domain names listed in this database.

See Underlying Registry Data
Report Invalid Whois

## Domain already taken?

Enter Domain Name | Search

### NameMatch Recommendations

GoDaddy.com NameMatch has found similar domain names related to your search. Registering multiple domain names may help protect your online brand and enable you to capture more Web traffic, which you can then direct to your primary domain.

**Domains available for new registration:**

| | | |
|---|---|---|
| **Alternate TLDs** | | |
| westhavenfranklin.**info** | SAVE! | $2.99*/yr |
| westhavenfranklin.**org** | SAVE! | $7.99*/yr |
| westhavenfranklin.**us** | SAVE! | $4.99/yr |
| westhavenfranklin.**biz** | SAVE! | $7.99*/yr |
| westhavenfranklin.**mobi** | SAVE! | $6.99*/yr |
| westhavenfranklin.**ca** | SAVE! | $9.99/yr |
| westhavenfranklin.**me** | SAVE! | $9.99/yr |
| westhavenfranklin.**ws** | SAVE! | $9.99/yr |
| **Similar Premium Domains** ? | | |
| NewHavenKentucky.com | | $449.00* |
| WestHavenTownHall.com | | $949.00* |
| OldWestTowns.com | | $499.00* |

ADD TO CART

**Domains available at Go Daddy Auctions®:**

| | |
|---|---|
| westhaventv.com<br>Ends on: 9/20/2015 3:00:00 PM PDT | $1,898.00* |
| franklinelementaryschool.com<br>Ends on: 9/19/2015 9:28:00 AM PDT | $1,299.00* |
| franklincountyalabama.com<br>Ends on: 9/19/2015 9:08:00 AM PDT | $899.00* |
| franklin-institute.com<br>Ends on: 9/15/2015 9:25:00 AM PDT | $749.00* |
| franklincountync.com<br>Ends on: 9/14/2015 10:31:00 AM PDT | $1,249.00* |
| westhavengroup.com<br>Ends on: 9/14/2015 9:23:00 AM PDT | $1,595.00* |

VIEW LISTING

### Learn more about

Private Registration ? Deluxe Registration ?
Business Registration ? Protected Registration ?

*Plus ICANN fee of $0.18 per domain name year.
**.CA domain names will be registered through Go Daddy Domains Canada, Inc., a CIRA certified registrar.

Search for another domain name in the **WHOIS** database
Enter a domain name to search | Search

**NEED HELP?** CALL OUR AWARD-WINNING SUPPORT TEAM 24/7 AT **(480) 505-8877**



Use of this Site is subject to express terms of use. By using this site, you signify that you agree to be bound by these Universal Terms of Service.
Legal Privacy Policy Advertising Preferences
Copyright © 1999 - 2015 GoDaddy Operating Company, LLC. All Rights Reserved.

EXHIBIT 11

# .com

From Wikipedia, the free encyclopedia

*This article is about the generic top-level domain .com. For the file format, see COM file. For other uses, see com (disambiguation) and Dot-com (disambiguation).*

The domain name **com** is a top-level domain (TLD) in the Domain Name System of the Internet. Its name is derived from the word *commercial*,[1] indicating its original intended purpose for domains registered by commercial organizations. However, eventually the distinction was lost when .com, .org and .net were opened for unrestricted registration.

The domain was originally administered by the United States Department of Defense, but is today operated by Verisign, and remains under ultimate jurisdiction of U.S. law.[2][3][4] Verisign Registrations in com are processed via registrars accredited by ICANN. The registry accepts internationalized domain names.

The domain was one of the original top-level domains (TLDs) in the Internet when the Domain Name System was implemented in January 1985, the others being edu, gov, mil, net, org, and arpa. It has grown into the largest top-level domain.[5]

**.com**

| | |
|---|---|
| **Introduced** | 1985 |
| **Registry** | Verisign |
| **Sponsor** | None |
| **Intended use** | Commercial entities (worldwide) |
| **Actual use** | Used for virtually any commercial or non-commercial website and is generally accepted as the standard for TLDs |
| **Registration restrictions** | None |
| **Structure** | Registrations are conducted at second level. |
| **Documents** | RFC 920; RFC 1591; ICANN registry agreement |
| **Dispute policies** | UDRP |
| **Website** | Verisign COM NET Registry |
| **DNSSEC** | yes |

**Contents** [hide]

1 History
2 List of oldest com domains
3 See also
4 References
5 External links

## History [edit]

The domain com was as one of the first set of top-level domains when the Domain Name System was first implemented for use on the Internet in January 1985. The domain was administered by the U.S. Department of Defense (DoD), however the department contracted the domain maintenance to SRI International. SRI created DDN-NIC, also known as SRI-NIC, or simply *the NIC* (Network Information Center),[6] then accessible online with the domain name nic.ddn.mil. Beginning October 1, 1991, an operations contract was awarded to Government Systems Inc. (GSI), which sub-contracted it to Network Solutions Inc. (NSI).[7]

On January 1, 1993 the National Science Foundation assumed responsibility of maintenance, as com was primarily being used for non-defense interests. The NSF contracted operation to Network Solutions (NSI). In 1995, the NSF authorized NSI to begin charging registrants an annual fee, for the first-time since the domain's inception. Initially the fee was US$50 per year, with US$35 going to NSI, and US$15 going to a government fund. New registrations had to pay for the first two years, making the new-domain registration fee US$100. In 1997 the United States Department of Commerce assumed authority over all generic TLDs. It is currently operated by VeriSign, which had acquired Network Solutions. VeriSign later spun off Network Solutions' non-registry functions into a separate company which continues as a registrar. In the English language the domain is often spelled with a leading period and commonly pronounced as *dot-com*, and has entered common parlance this way.

Although com domains were originally intended to designate commercial entities[8] (others such as government agencies or educational institutions have different top-level domains assigned to them), there has been no restriction on who can register com domains since the mid-1990s. With the commercialization and popularization of the Internet, the com domain was opened to the public and quickly became the most common top-level domain for websites, email, and networking. Many companies that flourished in the period from 1997 to 2001 .[2][3][4] (the time known as the "dot-com bubble") incorporated the com suffix into company names; these became known as dot-coms or dot-com companies. The introduction of biz in 2001, which is restricted to businesses, has had no impact on the popularity of com.[*citation needed*]

Although companies anywhere in the world can register com domains, many countries have a second-level domain with a similar purpose under their own country code top-level domain (ccTLD), such as Australia (com.au), Sri Lanka (com.lk), Greece (com.gr), Mexico (com.mx), South Korea (co.kr), India (co.in), Indonesia (co.id), China (com.cn), Japan (co.jp), Vietnam (.com.vn) or (.vn) and the United Kingdom (co.uk) are all examples.

Many non-commercial sites and networks use com names to benefit from the perceived recognizability of a com domain. However, the registration statistics[5] show varying popularity over the years.[*citation needed*]

As of December 2011, VeriSign reported that approximately 100 million com domains were registered.[9] As of March 2009, VeriSign reported that the domain is served by 926 accredited registrars.[9]

The U.S. Department of Commerce on November 29, 2012, approved renewal of the .com Registry Agreement between Verisign, Inc., and ICANN. Through this agreement, Verisign will manage the registry for the .com top level domain until November 30, 2018.[10]

## List of oldest com domains [edit]

The following are the 100 oldest still-existing registered com domains:[11]

*See also: List of the oldest currently registered Internet domain names*

| Rank | Create date | Domain name | Rank | Create date | Domain name |
|---|---|---|---|---|---|
| 1 | March 15, 1985 | symbolics.com | 49 | December 11, 1986 | CCUR.com |
| 2 | April 24, 1985 | BBN.com | 49 | December 11, 1986 | CI.com |
| 3 | May 24, 1985 | think.com | 49 | December 11, 1986 | convergent.com |
| 4 | July 11, 1985 | MCC.com | 49 | December 11, 1986 | DG.com |
| 5 | September 30, 1985 | DEC.com | 49 | December 11, 1986 | peregrine.com |
| 6 | November 7, 1985 | northrop.com | 49 | December 11, 1986 | quad.com |
| 7 | January 9, 1986 | xerox.com | 49 | December 11, 1986 | SQ.com |
| 8 | January 17, 1986 | SRI.com | 49 | December 11, 1986 | tandy.com |
| 9 | March 3, 1986 | HP.com | 49 | December 11, 1986 | TTI.com |
| 10 | March 5, 1986 | bellcore.com | 49 | December 11, 1986 | unisys.com |
| 11 | March 19, 1986 | IBM.com | 61 | January 19, 1987 | CGI.com |
| 11 | March 19, 1986 | sun.com | 61 | January 19, 1987 | CTS.com |
| 13 | March 25, 1986 | intel.com | 61 | January 19, 1987 | SPDCC.com |
| 13 | March 25, 1986 | TI.com | 64 | February 19, 1987 | apple.com |
| 15 | April 25, 1986 | ATT.com | 65 | March 4, 1987 | NMA.com |
| 16 | May 8, 1986 | GMR.com | 65 | March 4, 1987 | prime.com |
| 16 | May 8, 1986 | tek.com | 67 | April 4, 1987 | philips.com |
| 18 | July 10, 1986 | FMC.com | 68 | April 23, 1987 | datacube.com |
| 18 | July 10, 1986 | UB.com | 68 | April 23, 1987 | KAI.com |
| 20 | August 5, 1986 | bell-atl.com | 68 | April 23, 1987 | TIC.com |
| 20 | August 5, 1986 | GE.com | 68 | April 23, 1987 | vine.com |
| 20 | August 5, 1986 | grebyn.com | 72 | April 30, 1987 | NCR.com |
| 20 | August 5, 1986 | ISC.com | 73 | May 14, 1987 | cisco.com |
| 20 | August 5, 1986 | NSC.com | 73 | May 14, 1987 | RDL.com |
| 20 | August 5, 1986 | stargate.com | 75 | May 20, 1987 | SLB.com |
| 26 | September 2, 1986 | boeing.com | 76 | May 27, 1987 | parcplace.com |
| 27 | September 18, 1986 | ITCorp.com | 76 | May 27, 1987 | UTC.com |
| 28 | September 29, 1986 | siemens.com | 78 | June 26, 1987 | IDE.com |
| 29 | October 18, 1986 | pyramid.com | 79 | July 9, 1987 | TRW.com |
| 30 | October 27, 1986 | alphaDC.com | 80 | July 13, 1987 | unipress.com |
| 30 | October 27, 1986 | BDM.com | 81 | July 27, 1987 | dupont.com |
| 30 | October 27, 1986 | fluke.com | 81 | July 27, 1987 | lockheed.com |
| 30 | October 27, 1986 | inmet.com | 83 | July 28, 1987 | rosetta.com |
| 30 | October 27, 1986 | kesmai.com | 84 | August 18, 1987 | toad.com |
| 30 | October 27, 1986 | mentor.com | 85 | August 31, 1987 | quick.com |
| 30 | October 27, 1986 | NEC.com | 86 | September 3, 1987 | allied.com |
| 30 | October 27, 1986 | ray.com | 86 | September 3, 1987 | DSC.com |
| 30 | October 27, 1986 | rosemount.com | 86 | September 3, 1987 | SCO.com |
| 30 | October 27, 1986 | vortex.com | 89 | September 22, 1987 | gene.com |
| 40 | November 5, 1986 | alcoa.com | 89 | September 22, 1987 | KCCS.com |
| 40 | November 5, 1986 | GTE.com | 89 | September 22, 1987 | spectra.com |
| 42 | November 17, 1986 | adobe.com | 89 | September 22, 1987 | WLK.com |
| 42 | November 17, 1986 | AMD.com | 93 | September 30, 1987 | mentat.com |
| 42 | November 17, 1986 | DAS.com | 94 | October 14, 1987 | WYSE.com |
| 42 | November 17, 1986 | data-IO.com | 95 | November 2, 1987 | CFG.com |
| 42 | November 17, 1986 | octopus.com | 96 | November 9, 1987 | marble.com |
| 42 | November 17, 1986 | portal.com | 97 | November 16, 1987 | cayman.com |
| 42 | November 17, 1986 | teltone.com | 97 | November 16, 1987 | entity.com |
| 49 | December 11, 1986 | 3Com.com | 99 | November 24, 1987 | KSR.com |
| 49 | December 11, 1986 | amdahl.com | 100 | November 30, 1987 | NYNEXST.com |

## See also [edit]

- List of most expensive domain names

## References [edit]

1. ^ "RFC 920: Domain Requirements". October 1984. p. 2. "COM = Commercial, any commercial related domains meeting the second level requirements."
2. ^ "US shuts down Canadian gambling site". The Register. Retrieved 28 November 2012.
3. ^ "Les ".com" peuvent être saisis par les autorités américaines". PC World magazine. Retrieved 28 November 2012.
4. ^ "No need for SOPA, VeriSign seizes bodog.com for US authorities". TECHSPOT.
5. ^ *a* *b* "The Domain Industry Brief".
6. ^ Sitzler, Dana D.; Smith, Patricia G.; Marine, April N. (February 1992). "Building a Network Information Services Infrastructure". p. 3. Retrieved 2008-11-16.
7. ^ Richard Schmalgemeier (1991-09-25). "SRI-NIC services moving". Retrieved 2008-11-16.
8. ^ Jon Postel (March 1994). "RFC 1591 Domain Name System Structure and Delegation". p. 2. Archived from the original on 2 December 2008. Retrieved 2008-11-16.
9. ^ *a* *b* .com Monthly Transaction Report of December 2011
10. ^ http://www.ntia.doc.gov/press-release/2012/department-commerce-approves-verisign-icann-com-registry-renewal-agreement
11. ^ "100 oldest .com domains". iWhois.com. Archived from the original on 2013-10-14. Retrieved 2012-03-10.

## External links [edit]

- IANA .com whois information
- List of .com accredited registrars
- .com WhoIS





This page was last modified on 16 June 2015, at 20:09.

Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy. Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

Privacy policy About Wikipedia Disclaimers Contact Wikipedia Developers Mobile view

Google | westhaven franklin | Randy

Web | Maps | Images | News | Shopping | More | Search tools

**EXHIBIT 12**

About 676,000 results (0.63 seconds)

### Official Westhaven Franklin, TN Community Website
www.**westhaven**tn.com/
Official website of the **Westhaven** Community, just three miles from downtown **Franklin**, TN. Discover the **Westhaven** difference: Livability!
Google+ page · Be the first to review

1001 Westhaven Blvd #100, Franklin, TN 37064
(615) 599-1764
Search For Homes - Westhaven Realty

### Search For Homes - Westhaven ~ Franklin, Tennessee
www.**westhaven**tn.com/available_homes.php
**Westhaven** has eight approved Master Builders ready to customize your home. ... **Westhaven** | A Southern Land Company Community | **Franklin**, Tennessee ...

### Southern Land Company
southernland.com/
... LaurelBrooke-Franklin, TN · **Westhaven-Franklin**, TN · Windstone-Brentwood, TN ... Southside at McEwen-Franklin, TN · Westhaven Town Center-Franklin, TN.
You've visited this page many times. Last visit: 6/1/15

### Westhaven | Facebook
https://www.facebook.com/**Westhaven**TN
**Westhaven**, **Franklin**, TN. 1996 likes · 188 talking about this. Lisa Cahalan, Principal Broker 615.828.8782.

### Westhaven Homes for Sale - Ashton Real Estate Group
www.nashvillesmls.com/**westhaven**.php
4 days ago - **Westhaven** in **Franklin** Tennessee is a Southern Land Company project featuring upscale homes from $400000 to well over $1 million.

### Westhaven Homes for Sale | Franklin TN Homes for Sale
www.**franklin**tnhomesforsaleonline.com/**westhaven-franklin**-tn-homes/
Search for **Westhaven** homes for sale in **Franklin** TN real estate including luxury and new construction homes. Call Tammie White (615) 495-0752.

### Westhaven Golf Club
www.golf**westhaven**.com/
**Westhaven** Golf Club is the perfect place for golf enthusiasts of all levels to enjoy the game in a casual and friendly ... Weather Forecast for **Franklin**, TN ...

### Westhaven Franklin | Westhaven Franklin TN homes for sale
**westhavenfranklin**.com/
a gracious planned community near Historic **Franklin**, TN! Nestled against the rolling hills of Williamson County, **Westhaven** is an award-winning neighborhood ...

### Westhaven Franklin TN homes for sales
**westhavenfranklin**.com/wh-homes/
Search available **Westhaven Franklin** TN homes for sale. It doesn't take long to see why Westhaven is like no other place in Franklin, TN.

### Westhaven - Movoto Real Estate
www.movoto.com › Tennessee › Franklin
View over 13 homes for sale in **Westhaven**, **Franklin**, TN. Browse new listings in Westhaven.







## Westhaven Realty
Directions

Real Estate Agency

**Address:** 1001 Westhaven Blvd #100, Franklin, TN 37064
**Phone:** (615) 599-1764
**Hours:** **Open today** · 10:00 am – 6:00 pm

### People also search for
View 15+ more



Re/Max The Ashton Real Estate Group | Vanessa Stalets | Tennessee Real Estate Commission | The Governors Club | Heritage Foundation of Franklin & Williamson County

Feedback

### Searches related to westhaven franklin

westhaven franklin **tn school zoning** | westhaven franklin **tn restaurants**
westhaven franklin **tn townhomes** | westhaven franklin **tn pool hours**
westhaven franklin **tn foreclosures** | westhaven franklin **tn rentals**
westhaven franklin **tn reviews** | westhaven franklin **tn hoa fees**

Goooooooooogle
**1** 2 3 4 5 6 7 8 9 10 **Next**

Nashville, TN - From your Internet address - Use precise location - Learn more

Help | Send feedback | Privacy | Terms

EXHIBIT 13

SilverPointe properties

WESTHAVEN WF FRANKLIN

Lisa Alyn
615.708.0445

WESTHAVEN SEARCH | MLS SEARCH | BUYERS | SELLERS | RESOURCES | ABOUT | CONTACT



PROPERTIES




GOLF CLUB



AMENITIES



COMMUNITY



TOWN CENTER

## FEATURED PROPERTY




See more...

## WELCOME TO WESTHAVEN...



... a gracious planned community near Historic Franklin, TN! Nestled against the rolling hills of Williamson County, Westhaven is an award-winning neighborhood comprised of spectacular amenities, including a private 18-hole golf course, convenient Town Center, and walkable elementary school... More about Westhaven

The heart of westhavenfranklin.com is Lisa Alyn, a long time Westhaven resident and expert on all things Westhaven. Lisa makes the real estate process enjoyable, friendly and fun, while she approaches her work with absolute integrity and the highest ethical standards... More about Lisa

## AERIAL MARKETING FOR ULTIMATE EXPOSURE




## WHAT OTHERS ARE SAYING

Lisa's real estate knowledge and expertise in Westhaven and surrounding communities was so greatly superior to that of other realtors with whom we have worked that, ... See more

We followed Lisa's marketing advice and sold our home quickly and for a profit! ... See more

More Testimonials

## WESTHAVEN SALES ANALYSIS




View the complete analysis

## WESTHAVEN WEEKLY

Follow Lisa's adventures in Westhaven and real estate at the Westhaven Weekly.

This website is owned by Lisa Alyn of SilverPointe Properties and is not affiliated with Westhaven Realty or Southern Land Company.

Home | Properties | Golf Club | Amenities | Community | Town Center | Contact | Site Map

LISA ALYN, Realtor® C-RCS | C 615.708.0445 | F 615.371.6310 | License # 304 4111
SilverPointe Properties | 7105 Crossroads Blvd. Suite 102 Brentwood, TN 37027 | P 615.771.7877 | F 615.377.3219 Fair Housing Statement

Real estate listings held by brokerage firms other than SilverPointe® Properties may be marked with the Internet Data Exchange logo and detailed information about those properties will include the name of the listing broker(s) when required by the MLS. All rights reserved.

© 2015 Westhaven Franklin

EXHIBIT 14



# Uniform Domain Name Dispute Resolution Policy

This page is available in: English | العربية | Deutsch | Español | Français | Italiano | 日本語 | 한국어 | Português | Русский | 中文

Policy Adopted: August 26, 1999
Implementation Documents Approved: October 24, 1999

**Notes:**

**1. This policy is now in effect. See www.icann.org/udrp/udrp-schedule.htm for the implementation schedule.**

**2. This policy has been adopted by all ICANN-accredited registrars. It has also been adopted by certain managers of country-code top-level domains (e.g., .nu, .tv, .ws).**

**3. The policy is between the registrar (or other registration authority in the case of a country-code top-level domain) and its customer (the domain-name holder or registrant). Thus, the policy uses "we" and "our" to refer to the registrar and it uses "you" and "your" to refer to the domain-name holder.**

---

Uniform Domain Name Dispute Resolution Policy

(As Approved by ICANN on October 24, 1999)

**1. Purpose.** This Uniform Domain Name Dispute Resolution Policy (the "Policy") has been adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN"), is incorporated by reference into your Registration Agreement, and sets forth the terms and conditions in connection with a dispute between you and any party other than us (the registrar) over the registration and use of an Internet domain name registered by you. Proceedings under Paragraph 4 of this Policy will be conducted according to the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules of Procedure"), which are available at http://www.icann.org/en/dndr/udrp/uniform-rules.htm, and the selected administrative-dispute-resolution service provider's supplemental rules.

**2. Your Representations.** By applying to register a domain name, or by asking us to maintain or renew a domain name registration, you hereby represent and warrant to us that (a) the statements that you made in your Registration Agreement are complete and accurate; (b) to your knowledge, the registration of the domain name will not infringe upon or otherwise violate the rights of any third party; (c) you are not registering the domain name for an unlawful purpose; and (d) you will not knowingly use the domain name in violation of any applicable laws or regulations. It is your responsibility to determine whether your domain name registration infringes or violates someone else's rights.

**3. Cancellations, Transfers, and Changes.** We will cancel, transfer or otherwise make changes to domain name registrations under the following circumstances:

a. subject to the provisions of Paragraph 8, our receipt of written or appropriate electronic instructions from you or your authorized agent to take such action;

b. our receipt of an order from a court or arbitral tribunal, in each case of competent jurisdiction, requiring such action; and/or

c. our receipt of a decision of an Administrative Panel requiring such action in any administrative proceeding to which you were a party and which was conducted under this Policy or a later version of this Policy adopted by ICANN. (See Paragraph 4(i) and (k) below.)

We may also cancel, transfer or otherwise make changes to a domain name registration in accordance with the terms of your Registration Agreement or other legal requirements.

**4. Mandatory Administrative Proceeding.**

This Paragraph sets forth the type of disputes for which you are required to submit to a mandatory administrative proceeding. These proceedings will be conducted before one of the administrative-dispute-resolution service providers listed at www.icann.org/en/dndr/udrp/approved-providers.htm (each, a "Provider").

**a. Applicable Disputes.** You are required to submit to a mandatory administrative proceeding in the event that a third party (a "complainant") asserts to the applicable Provider, in compliance with the Rules of Procedure, that

(i) your domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and

(ii) you have no rights or legitimate interests in respect of the domain name; and

(iii) your domain name has been registered and is being used in bad faith.

In the administrative proceeding, the complainant must prove that each of these three elements are present.

**b. Evidence of Registration and Use in Bad Faith.** For the purposes of Paragraph 4(a)(iii), the following circumstances, in particular but without limitation, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith:

(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out-of-pocket costs directly related to the domain name; or

(ii) you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct; or

(iii) you have registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location.

**c. How to Demonstrate Your Rights to and Legitimate Interests in the Domain Name in Responding to a Complaint.** When you receive a complaint, you should refer to Paragraph 5 of the Rules of Procedure in determining how your response should be prepared. Any of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of Paragraph 4(a)(ii):

(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a bona fide offering of goods or services; or

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

**d. Selection of Provider.** The complainant shall select the Provider from among those approved by ICANN by submitting the complaint to that Provider. The selected Provider will administer the proceeding, except in cases of consolidation as described in Paragraph 4(f).

**e. Initiation of Proceeding and Process and Appointment of Administrative Panel.** The Rules of Procedure state the process for initiating and conducting a proceeding and for appointing the panel that will decide the dispute (the "Administrative Panel").

**f. Consolidation.** In the event of multiple disputes between you and a complainant, either you or the complainant may petition to consolidate the disputes before a single Administrative Panel. This petition shall be made to the first Administrative Panel appointed to hear a pending dispute between the parties. This Administrative Panel may consolidate before it any or all such disputes in its sole discretion, provided that the disputes being consolidated are governed by this Policy or a later version of this Policy adopted by ICANN.

**g. Fees.** All fees charged by a Provider in connection with any dispute before an Administrative Panel pursuant to this Policy shall be paid by the complainant, except in cases where you elect to expand the Administrative Panel from one to three panelists as provided in Paragraph 5(b)(iv) of the Rules of Procedure, in which case all fees will be split evenly by you and the complainant.

**h. Our Involvement in Administrative Proceedings.** We do not, and will not, participate in the administration or conduct of any proceeding before an Administrative Panel. In addition, we will not be liable as a result of any decisions rendered by the Administrative Panel.

**i. Remedies.** The remedies available to a complainant pursuant to any proceeding before an Administrative Panel shall be limited to requiring the cancellation of your domain name or the transfer of your domain name registration to the complainant.

**j. Notification and Publication.** The Provider shall notify us of any decision made by an Administrative Panel with respect to a domain name you have registered with us. All decisions under this Policy will be published in full over the Internet, except when an Administrative Panel determines in an exceptional case to redact portions of its decision.

**k. Availability of Court Proceedings.** The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Whois database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name.

**5. All Other Disputes and Litigation.** All other disputes between you and any party other than us regarding your domain name registration that are not brought pursuant to the mandatory administrative proceeding provisions of Paragraph 4 shall be resolved between you and such other party through any court, arbitration or other proceeding that may be available.

**6. Our Involvement in Disputes.** We will not participate in any way in any dispute between you and any party other than us regarding the registration and use of your domain name. You shall not name us as a party or otherwise include us in any such proceeding. In the event that we are named as a party in any such proceeding, we reserve the right to raise any and all defenses deemed appropriate, and to take any other action necessary to defend ourselves.

**7. Maintaining the Status Quo.** We will not cancel, transfer, activate, deactivate, or otherwise change the status of any domain name registration under this Policy except as provided in Paragraph 3 above.

**8. Transfers During a Dispute.**

**a. Transfers of a Domain Name to a New Holder.** You may not transfer your domain name registration to another holder (i) during a pending administrative proceeding brought pursuant to Paragraph 4 or for a period of fifteen (15) business days (as observed in the location of our principal place of business) after such proceeding is concluded; or (ii) during a pending court proceeding or arbitration commenced regarding your domain name unless the party to whom the domain name registration is being transferred agrees, in writing, to be bound by the decision of the court or arbitrator. We reserve the right to cancel any transfer of a domain name registration to another holder that is made in violation of this subparagraph.

**b. Changing Registrars.** You may not transfer your domain name registration to another registrar during a pending administrative proceeding brought pursuant to Paragraph 4 or for a period of fifteen (15) business days (as observed in the location of our principal place of business) after such proceeding is concluded. You may transfer administration of your domain name registration to another registrar during a pending court action or arbitration, provided that the domain name you have registered with us shall continue to be subject to the proceedings commenced against you in accordance with the terms of this Policy. In the event that you transfer a domain name registration to us during the pendency of a court action or arbitration, such dispute shall remain subject to the domain name dispute policy of the registrar from which the domain name registration was transferred.

**9. Policy Modifications.** We reserve the right to modify this Policy at any time with the permission of ICANN. We will post our revised Policy at <URL> at least thirty (30) calendar days before it becomes effective. Unless this Policy has already been invoked by the submission of a complaint to a Provider, in which event the version of the Policy in effect at the time it was invoked will apply to you until the dispute is over, all such changes will be binding upon you with respect to any domain name registration dispute, whether the dispute arose before, on or after the effective date of our change. In the event that you object to a change in this Policy, your sole remedy is to cancel your domain name registration with us, provided that you will not be entitled to a refund of any fees you paid to us. The revised Policy will apply to you until you cancel your domain name registration



© 2014 Internet Corporation For Assigned Names and Numbers. 

EXHIBIT 15

NATIONAL ARBITRATION FORUM

# NATIONAL ARBITRATION FORUM

## DECISION

Southern Land Company, LLC v. Lisa Alyn / Benchmark Realty
Claim Number: FA1403001547956

## PARTIES

Complainant is **Southern Land Company, LLC** ("Complainant"), represented by **Mari-Elise Taube** of **STITES & HARBISON, PLLC**, Tennessee, USA. Respondent is **Lisa Alyn / Benchmark Realty** ("Respondent"), represented by **Gregory D. Latham** of **Intellectual Property Consulting, LLC**, Louisiana, USA.

## REGISTRAR AND DISPUTED DOMAIN NAMES

The domain names at issue are **<westhavenfranklin.com>** and **<westhavenfranklin.net>**, registered with **GoDaddy.com, LLC**.

## PANEL

The undersigned certifies that he or she has acted independently and impartially and to the best of his or her knowledge has no known conflict in serving as Panelist in this proceeding.

Daniel B. Banks, Jr., as Panelist.

## PROCEDURAL HISTORY

Complainant submitted a Complaint to the National Arbitration Forum electronically on March 11, 2014; the National Arbitration Forum received payment on March 11, 2014.

On March 11, 2014, GoDaddy.com, LLC confirmed by e-mail to the National Arbitration Forum that the **<westhavenfranklin.com>** and **<westhavenfranklin.net>** domain names are registered with GoDaddy.com, LLC and that Respondent is the current registrant of the names. GoDaddy.com, LLC has verified that Respondent is bound by the GoDaddy.com, LLC registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On March 12, 2014, the Forum served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of April 1, 2014 by which Respondent could file a Response to the Complaint, via e-mail to all entities and persons listed on Respondent's registration as technical, administrative, and billing contacts, and to

postmaster@westhavenfranklin.com, postmaster@westhavenfranklin.net. Also on March 12, 2014, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response, was transmitted to Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

A timely Response was received and determined to be complete on April 1, 2014.

A timely Additional Submission by Complainant was received and determined to be complete on April 7, 2014.

A timely Additional Submission by Respondent was received and determined to be complete on April 14, 2014,

On April 10, 2014, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the National Arbitration Forum appointed Daniel B. Banks, Jr., as Panelist.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the National Arbitration Forum has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2.

## RELIEF SOUGHT

Complainant requests that the domain names be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

A. Complainant

1. Policy ¶ 4(a)(i)

i. Complainant, Southern Land Company, LLC, is a national community developer with expertise in the creation, design, and construction of retail, commercial, apartment homes, and residential community developments.

ii. Complainant is the owner of trademark registrations with the United States Patent and Trademark Office ("USPTO") for the WESTHAVEN mark (*e.g.*, Reg. No. 3,101,151, registered June 6, 2006).

iii. Respondent's **<westhavenfranklin.com>** and **<westhavenfranklin.net>** domain names are confusingly similar to Complainant's WESTHAVEN mark.

2. Policy ¶ 4(a)(ii)

i. Respondent has no rights or legitimate interests with respect to the disputed domain names.

ii. Respondent is not commonly known by the disputed domain names.
iii. Respondent uses the disputed domain names to redirect Internet users to a competing website promoting Respondent's real estate services.

3. Policy ¶ 4(a)(iii)

i. The disputed domain names were registered and used by Respondent in bad faith.
ii. Respondent registered the disputed domain names primarily to disrupt Complainant's business.
iii. Respondent is using the disputed domain names with the intent to attract users for commercial gain by creating confusion with Complainant's mark.
iv. Respondent was aware of Complainant's mark at the time of registration.

4. v. There are no legal proceedings that have been commenced or terminated in connection with or related to the domain names that are in dispute.

B. Respondent

1. Policy ¶ 4(a)(i)

i. There are clear differences between Complainant's trademark and Respondent's domain names. "Westhaven" is the name of a geographical area about twenty miles south of Nashville, Tennessee.

2. Policy ¶ 4(a)(ii)

i. Respondent uses the disputed domain names in connection with its real estate agent services in the community of Westhaven, Tennessee.

3. Policy ¶ 4(a)(iii)

i. Respondent did not register the disputed domain names to disrupt Complainant's business.
ii. Respondent does not use the disputed domain names to create confusion.

4. Reverse Domain Name Hijacking

i. Respondent used the disputed domain names to offer its real estate services for nearly a year before Complainant's notice of dispute. Complainant admitted that it was aware of Respondent's use of the domain names to promote its real estate services.

5. Respondent registered the **<westhavenfranklin.com>** domain name on August 28, 2012 and registered the **<westhavenfranklin.net>** domain name on September 15, 2012.
6. On February 6, 2014, Respondent filed with the USPTO a petition to cancel Complainant's US Trademark Registrations Nos. 3101150 and 3101151 alleging that Complainant fraudulently represented to the USPTO that the term "Westhaven" as used in connection with Complainant's real estate services has no geographical significance. The USPTO's Trademark and Appeal Board has issued a scheduling order governing discovery and other pretrial matters.

B. Complainant's Additional Submission

1. Policy ¶ 4(a)(i)

i. Complainant has established trademark rights and common law rights in the WESTHAVEN mark that predate Respondent's registration of the disputed domain names.

ii. Respondent and its counsel are mistaken as to the basic fact that WESTHAVEN is a town, municipality, or other governmental or territorial entity. WESTHAVEN is a planned community developed and managed as a business by Complainant.

iii. Coined location names are never considered "geographic" within the ordinary rules of trademark law.

2. Policy ¶ 4(a)(ii)

i. Respondent simply lives in the WESTHAVEN community, which was created by Complainant and is a coined term.

3. Policy ¶ 4(a)(iii)

i. Respondent is using Complainant's mark to offer identical real estate services.

ii. Respondent is intentionally redirecting Internet users to Respondent's website for her own commercial gain. These Internet users are very likely to confuse Respondent as being an affiliate or licensed representative of Complainant's WESTHAVEN brand.

D. Respondents Additional Submission

1. Complainant asserts that all three of the UDRP factors can be decided in favor or Complainant because the domain names include the term "Westhaven."
2. Complainant's purported "Supplemental Facts" are nothing more than unsubstantiated, conclusory allegations.
3. Whether Complainant has any Trademark Rights cannot be determined on the basis of the UDRP record.
4. Westhaven is not a "coined" term. It is a geographical term.
5. Complainant's new assertions of common law rights should not be considered as it was not mentioned in the original complaint and is presented for the first time in Complainant's Additional Submission. This is an attempt to amend its Complaint to add a new basis for it's rights which is prohibited by Rule 7(f) of the Forum's Supplemental Rules.
6. Respondent use prior to this dispute establishes legitimate interests and rights.
7. Complainant fails to provide any evidence of bad faith.

**Procedural Issue: Concurrent Court Proceedings**

Respondent claims that on February 6, 2014, it filed a cancellation petition with the USPTO for the removal of Complainant's WESTHAVEN trademark. Respondent believes the trademark is merely geographically descriptive. Respondent believes it has rights and legitimate interests in this domain name that cannot be questioned until the USPTO

proceedings are concluded.

Complainant claims that Respondent’s cancellation proceeding has no effect on the current case. Complainant notes that Respondent’s cancellation pertains only to Class 36 registration, and as such any “cancellation” would end with Complainant retaining USPTO registration for WESTHAVEN in Classes 37, 42, and 44. Complainant states that Respondent is mistaken as to the basic fact that WESTHAVEN, as a “town,” never existed but for Complainant’s decision to incorporate a business, file for a trademark for WESTHAVEN, and then build a community under that WESTHAVEN mark. Complainant maintains that WESTHAVEN is not an ordinary geographic term (e.g., New York or London) because WESTHAVEN has no meaning beyond identifying the particular area in Tennessee where Complainant develops, manages, and sells interests in real property. Complainant has provided a copy of Respondent’s cancellation petition. *See* Compl. Addt’l Sub., at Attached Ex. B. Complainant does not believe that the effect of the USPTO cancellation hearing will actually have a serious impact in respect to Complainant’s rights to police the use of the WESTHAVEN mark by third-parties on the Internet.

Despite the fact that these proceedings to cancel Complainant's Registered Trademarks were filed and pending, Complainant did not identify the existence of these proceedings in its original Complaint. In fact, Complainant stated in its original complaint that there were no other legal proceedings that have been commenced or terminated in connection with or relating to the domain names that are the subject of the Complaint. In its original Complaint, Complainant based its claim of rights and legitimate interests in the domain name on its registration of the trademark which is the subject of this case. The Rules, ¶ 3 (b)(xi) provide that Complainant must identify in its Complaint any other legal proceedings that have been commenced or terminated in connection with or relating to any of the domain names that are the subject of the complaint. Certainly, if Respondent prevails in its efforts to cancel Complainant's trademark registration, that would be relevant in this proceeding. The fact that Complainant omitted to identify the existence of the proceedings in relation to the validity of Complainant's trademark rights, is questionable.

Rule ¶ 18 (a) allows the Panel the discretion to decide whether to suspend or terminate the administrative proceeding, or to proceed to a decision.

In situations where concurrent court proceedings are pending, as is the situation with respect to the instant Complaint, some panels have chosen to proceed with the UDRP filing. *See eProperty Direct LLC v. Miller*, FA 836419 (Nat. Arb. Forum Jan. 3, 2007) (holding that the panel could decide the dispute under Rule 18(a) of the Policy “since the legal proceedings referred to by the parties appear to be concluded and Orders made. Moreover,… those Orders do not touch directly on the disposition of the disputed domain name or on the parties’ intellectual property rights.”).

Alternatively, other panels have chosen not to proceed with the UDRP because of the pending litigation. *See AmeriPlan Corp. v. Gilbert* FA105737 (Nat. Arb. Forum Apr. 22, 2002) (Regarding simultaneous court proceedings and UDRP disputes, Policy ¶ 4(k) requires that ICANN not implement an administrative panel's decision regarding a UDRP dispute "until the court proceeding is resolved." Therefore, a panel should not rule on a decision when there is a court proceeding pending because "no purpose is served by [the panel] rendering a decision on the merits to transfer the domain name, or have it remain, when as here, a decision regarding the domain name will have no practical consequence.").

The present proceedings are summary proceedings that were never intended to serve as a vehicle for adjudication of traditional trademark disputes. *See Family Watchdog LLC v. Lester Schweiss,* No. D2008-0183 (WIPO April 23, 2008). The domain name dispute in this case is ancillary to the trademark dispute that was filed prior to the filing of the Complaint in the present proceedings.

This panel is of the opinion that this proceeding be terminated pursuant to the Rules, ¶ 18(a), without expressing a view as to the respective merits of the case and without prejudice to the filing of a future complaint after the other legal proceedings have been resolved.

## DECISION

For the reasons stated above, the Complaint is dismissed.

Daniel B. Banks, Jr., Panelist
Dated: April 18, 2014

Click Here to return to the main Domain Decisions Page.

Click Here to return to our Home Page

**EXHIBIT 16**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA631150** |
| Filing date: | **10/06/2014** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 92058638 |
| Party | Defendant<br>Southern Land Company, LLC |
| Correspondence Address | MARI=ELISE TAUBE<br>STITES & HARBISON PLLC<br>401 COMMERCE STREET, SUITE 800<br>NASHVILLE, TN 37219<br>UNITED STATES<br>randy.michels@stites.com, mtaube@stites.com |
| Submission | Motion to Compel Discovery |
| Filer's Name | Mari-Elise Taube |
| Filer's e-mail | mtaube@stites.com, randy.michels@stites.com |
| Signature | /mari-elise taube/ |
| Date | 10/06/2014 |
| Attachments | SOUTHERN_LAND_ALYN_--_Motion_to_Compel.pdf(147013 bytes )<br>Motion to Compel Exhibit A.pdf(217715 bytes )<br>Motion to Compel Exhibit B.pdf(584667 bytes )<br>Motion to Compel Exhibit C.pdf(601710 bytes )<br>Motion to Compel Exhibit D.pdf(170209 bytes )<br>Motion to Compel Exhibit E.pdf(31945 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| **LISA ALYN,** Petitioner | ) | |
| v. | ) | Cancellation No. 92058638<br>U.S. Registration Nos. 3,101,150<br>3,101,151 |
| **SOUTHERN LAND COMPANY, LLC** Registrant | ) | |

**<u>RESPONDENT'S MOTION TO COMPEL DISCOVERY</u>**

Respondent **SOUTHERN LAND COMPANY, LLC** (hereinafter "Respondent") hereby submits this motion to compel discovery pursuant to TBMP § 523.01, *et seq*., and for an order deeming its requests for admission admitted pursuant to TBMP § 407.03 and Fed. R. Civ. P. 36(a), and in support thereof states the following.

## I. INTRODUCTION

This is a Cancellation proceeding brought to cancel Respondent's Registration No. 3,101,150 for WESTHAVEN (& Design), which issued on June 6, 2006, and Registration No. 3,101,150 for WESTHAVEN, which also issued on June 6, 2006, both for a variety of services, including real estate services and land development services (collectively, the "Westhaven Marks").[1] Respondent coined the term "Westhaven" for a mixed-use community that it is building in Franklin, Tennessee.

[1]Registration Nos. 3,101,150 and 3,101,151 are for "Real estate brokerage services; leasing of real estate; real estate management; Real estate development; land development services, namely, master planning and laying out of residential and/or commercial communities; residential and commercial building construction and construction management services; golf course construction; landscape lighting installation services; installation of landscape

Lisa Alyn ("Petitioner" or "Alyn") filed her Petition for Cancellation on February 5, 2014, alleging that U.S. Registration Nos. 3,101,150 and 3,101,151 were obtained fraudulently. Therefore, the burden to produce evidence in support of her allegations and the burden of persuasion to prove fraud, by clear and convincing evidence, remains on Alyn at all times in the proceeding. *See Standard Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha,* 186 Fed. Appx. 1005, 77 USPQ2d 1917, 1926 (TTAB 2006); *Smith International Inc. v. Olin Corp.,* 209 USPQ 1033, 1044 (TTAB 1981) ("It thus appears that the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party.").

A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. *In re Bose Corp*., 580 F.3d 1240, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009) (internal citation omitted). Nevertheless, Petitioner has yet to produce any evidence that Petitioner acted fraudulently. Alyn has evaded her discovery obligations and refused to produce a single document or provide any substantive information that would reveal the grounds she had for alleging fraud in the prosecution of the Westhaven Marks. She has also refused to provide information as to her knowledge of Respondent's use of Westhaven Marks, and has also refused to provide complete responses to Respondent's discovery requests directed to Alyn's own intended use. Alyn must be compelled to respond to Respondent's discovery requests or face an entry of judgment dismissing her Petition.

---

irrigation systems; Landscape lighting design; interior decorating; architectural design; architectural drafting services; Landscape gardening design for others; landscape maintenance services,namely, lawn and plant care; landscape installation services, namely, landscape gardening."

## II. BACKGROUND

On June 6, 2014,[2] Respondent served Petitioner with: a) Respondent's First Set of Interrogatories; (b) Respondent's First Request for Production of Documents and Things; and (c) Respondent's First Set of Requests for Admission (collectively "Discovery Requests"). *See* Discovery Requests attached as Exhibit A hereto.

Alyn provided unsatisfactory and incomplete written responses to the Discovery Requests on July 11, 2014 (Exhibit B hereto). Respondent promptly and comprehensively addressed Alyn's deficiencies by letters of August 8, 2014, and September 17, 2014. (Exhibit C hereto). Petitioner has refused to supplement her responses. In Petitioner's email dated August 22, 2014, Petitioner promised to provide a signed verification to her discovery responses, and also promised to supplement her responses to Respondent's Requests for Admission. (Exhibit D hereto). Despite these promises, Petitioner never provided the signed verification and never supplemented her responses to Respondent's Requests for Admission. Petitioner finally served Respondent with bare-bones, deficient Initial Disclosures on August 26, 2014, over three months late.

Among the requests that Alyn has refused to answer are interrogatories and document requests directed to her claim of fraud, Petitioner's knowledge of Respondent's marks and Petitioner's use of the Westhaven mark. Alyn cannot rest on the allegations contained in her Petition for Cancellation to prove her fraud claim. In fact, in a case such as this, Alyn has an affirmative duty to come forward with evidence to support its claims, or she will face an entry of judgment against her. Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or

[2] Discovery in this matter opened on April 17, 2014, and Initial Disclosures were due on May 17, 2014. Discovery is set to close on October 14, 2014.

surmise and, obviously, any doubt must be resolved against the charging party.'" *In re Bose*, 91 USPQ2d at 1939 (citing *Smith Int'l, Inc. v. Olin Corp*., 209 USPQ 1033, 1044 (TTAB 1981)).

In a further effort to frustrate the discovery process, Alyn has refused to answer substantively a number of requests for admissions depriving the Board and Respondent the ability to narrow the facts in dispute. Accordingly, Respondent moves to have Requests for Admission Nos. 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, and 34 deemed admitted.

Petitioner has also refused to provide entire categories of information and documents that bear on the issues in this proceeding, namely Respondent's ownership and rights in its WESTHAVEN marks, the validity of U.S. Registration Nos. 3,101,150 and 3,101,151, and Petitioner's awareness of Respondent and Respondent's ownership and rights in its marks. Also at issue in this proceeding are the likelihood of confusion factors set forth in *In re E.I. DuPont DeNemours & Co*., 177 USPQ 563 (CCPA 1973), since Petitioner claims to be injured by the continued existence of Respondent's marks on the Principal Register. Alyn has raised the nature of her own (infringing) use of the mark WESTHAVEN by relying on Section 2(d), 15 U.S.C. § 1052(d), to assert standing in its Petition for Cancellation. *See* Petition for Cancellation, ¶ 14.

The scope of discovery in a Board proceeding is governed by Fed. R. Civ. P. 26(b)(1), which provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(2). Paragraph 14 of Petitioner's Petition for Cancellation states that "Petitioner will be damaged by the continued existence of United States Trademark Registration No. 3,101,151 and No. 3,101,150 because they will give color of rights to the Respondent and will continue to be an impediment to Petitioner's ability to use 'Westhaven' in regard to her business services and advertising." In its Answer, Southern Land Company denied this allegation. Since Petitioner claimed that she will be damaged by the

continued existence of the Westhaven Marks on the Principal Register, under the Federal Rules of Civil Procedure, Respondent is entitled to take discovery on this claim.

It is time for Alyn to put up or shut up. If she has no evidence of fraud, then Respondent is entitled to summary judgment on the merits of this proceeding. Moreover, given her deficient discovery responses, it is hard to imagine how Alyn fulfilled her obligations under Rule 11 of the Federal Rules of Civil Procedure to conduct a reasonable inquiry such that that the claims in its Petition were warranted by existing law and facts and not presented for an improper purpose. Fed. R. Civ. P. 11.

## III. ARGUMENT

### A. Alyn Has Failed to Admit or Deny Respondent's Requests for Admission

Under Federal Rule of Civil Procedure 36(a), a matter is admitted unless, within thirty days after being served, the party to whom the request is directed serves a written answer or objection addressed to the matter. Fed. R. Civ. P. 36(a)(3). But a party may not avoid the consequences of this Rule simply by submitting meaningless responses to the requests. "If a matter is not admitted, the answer must specifically deny it, or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4).

If a propounding party is dissatisfied with an answer or objection to a request for admission, the propounding party may file a motion with the Board to determine the sufficiency of the answer or objection. If the Board determines that an answer does not comply with the requirements of Fed. R. Civ. P. 36(a), it may order either that the matter stand admitted or that an amended answer be served. TBMP § 411.02.

Alyn has refused to respond properly or to object to Request for Admission Nos. 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, and 34. Each of the requests asks Alyn to admit or deny facts pertaining to her knowledge of Respondent and Respondent's services. In each case, Alyn

objects to the request, and then states, "Petitioner is without sufficient information or knowledge to enable her to admit or deny the request." A sample request and response follow.

> **REQUEST NO. 12.** Admit that Registrant offers real estate services.
>
> **RESPONSE:** Ms. Alyn is without sufficient information or knowledge to enable her to admit or deny the request.

Not only is this an insufficient response, but it is also untrue. Alyn offers her real estate services in the Westhaven community, so it is impossible for her to not have knowledge of Respondent and Respondent's services. Alyn's boilerplate "non-response" appears to be designed to avoid admitting facts that are detrimental to Ms. Alyn's fraud claim (and to prolong this proceeding). Regardless, pursuant to Fed. R. Civ. P. 36(a) and TMBP § 407.03(b), a party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that it has made a reasonable inquiry and that the information known or readily obtainable by the party to admit or deny the request. Alyn's responses do not comply with the requirements of these rules, and Alyn should be ordered to supplement her responses.

**B. Alyn Should Be Compelled to Supplement Discovery Responses**

The scope of discovery in a Board proceeding is governed by Fed. R. Civ. P. 26(b)(1), which provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(2). The rule contemplates liberal discovery. *See* TBMP § 402.02. It is a general rule that parties are entitled to seek discovery as they may deem necessary to help them prepare for trial. *See Dow Corning Corp. v. The Doric Corp.*, 183 USPQ 377, 378 (TTAB 1974). Alyn has refused to produce any meaningful discovery in support of its Petition for Cancellation, despite the fact that she carries the burden of both production of evidence and of proof on the question of fraud. *In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009).

Petitioner refuses to provide entire categories of information and documents that bear on the issues in this proceeding, namely Registrant's ownership and rights in its WESTHAVEN marks, the validity of U.S. Registration Nos. 3,101,150 and 3,101,151, and Petitioner's awareness of Registrant and Registrant's ownership and rights in its marks, all of which are relevant to the claims and defenses in this proceeding. Respondent is entitled to discovery on these topics, since they are relevant to the claims and defenses in the action.

Respondent addresses Alyn's deficient discovery responses below *seriatim*.

> <u>Alyn's Awareness of Respondent and Respondent's Marks</u>
>
> Interrogatory No. 9 Identify all documents in the possession, custody or control of You referring or relating to Registrant and Registrant's Marks.
>
> Interrogatory No. 10 Identify all documents in the possession, custody or control of Petitioner relating to Registrant's services sold under Registrant's Marks.
>
> Request No. 6 Produce all documents in your possession that refer to Registrant.
>
> Request No. 7 Produce all documents in your possession that refer to Registrant's Marks.
>
> Request No. 8 Produce all documents relating to Your knowledge of Registrant's intellectual property protection for Registrant's Marks.
>
> Request No. 25 Produce all documents related to Petitioner's knowledge of Registrant and any or all of the Registrant's Marks.
>
> Request No. 26 Produce all documents related to Petitioner's knowledge of services offered by Registrant under any or all of Registrant's Marks.

Respondent is well aware of Respondent's use of its Westhaven Marks and rights in its Westhaven Marks. In fact, Alyn advertises her real estate services in Respondent's Westhaven community. Yet Petitioner provided inconsistent responses to Interrogatory No. 9 and Request No. 6 and 7. In response to Interrogatory No 9, Petitioner stated that she had no documents that

refer or relate to Respondent yet Petitioner states that it would be overly burdensome to produce documents that identify Respondent and Respondent's Marks in response to Respondent's requests. Which is it? Respondent is entitled to clear and consistent responses. Alyn should be compelled to produce documents that reflect any knowledge of Respondent's and Respondent's use of its Westhaven Marks.

Alyn's Target Customers

> Interrogatory No. 7 Identify Your target purchasers for the services offered under the WESTHAVEN mark.
>
> Request No. 31 Produce all documents reflecting or regarding the buyers of the services offered by You under the WESTHAVEN mark.

Alyn refuses to provide discovery related to her target customers. The classes of customers for a party's involved goods or services are discoverable. TBMP § 414(3); *see J.B. Williams Co. v. Pepsodent G.m.b.H.*, 188 USPQ 577, 580 (TTAB 1975) (must identify class of customers who purchase products under mark). Thus, Respondent seeks an order directing Alyn to supplement her discovery responses pertaining to her target customers.

Petitioner's Sales and Advertising

> Request No. 14 Produce all documents showing or relating to sales of the Your services under the mark WESTHAVEN.
>
> Request No. 16 Produce all documents relating to the costs of advertising already implemented for any and all services offered under the mark WESTHAVEN by You.
>
> Request No. 18 Produce all documents relating to sales strategies for the services offered under the mark WESTHAVEN by You.
>
> Request No. 34 Produce all documents reflecting or regarding the dollar value of sales or projected sales of the services offered by You under the WESTHAVEN mark, including but not limited to documents reflecting or discussing how such projected sales numbers were determined.

> Request No. 35 Produce all documents showing the amount of money budgeted and/or expended to date to promote the services offered by You under the WESTHAVEN mark.
>
> Interrogatory No. 8 Identify (a) the three persons most knowledgeable as to the advertising or the plans for advertising Your services under the WESTHAVEN mark and (b) documents showing the sales and plans for sales and advertising and plans for advertising under the WESTHAVEN mark.
>
> Request No. 15 Produce all documents showing or relating to the advertising of Your services under the mark WESTHAVEN.
>
> Request No. 17 Produce representative samples of all advertising which has been implemented and representative samples of all planned advertising for the services offered by You under the mark WESTHAVEN.
>
> Request No. 18 Produce all documents relating to sales strategies for the services offered under the mark WESTHAVEN by You.
>
> Request No. 19 Produce all documents relating to the advertising strategies for the services offered under the mark WESTHAVEN by You.

Respondent requested information and documents reflecting sales and advertising figures for Petitioner's services offered under the WESTHAVEN mark at issue. Annual sales and advertising figures, stated in round numbers, for a party's involved goods or services sold under its involved mark are proper matters for discovery. TBMP § 414(18); *see American Optical Corp. v. Exomet, Inc.*, 181 USPQ 120, 123 (TTAB 1974). Respondent also asked for representative samples of marketing materials and comprehensive information regarding Respondent's advertising and sales strategies for its services. Marketing materials and channels of advertising are directly relevant to the legal issues in this proceeding and are thus discoverable. In particular, these requests bear on Petitioner's knowledge of Respondent and Petitioner's use of the Westhaven Marks, which pertain directly to Petitioner's defenses in the proceeding and to Petitioner's standing.

Alyn's Agreements Regarding WESTHAVEN

> Interrogatory No. 15 Identify all agreements relating to Your use of the mark WESTHAVEN and services offered or to be offered under the mark WESTHAVEN, including without limitation agreements relating to advertising of the services offered under the WESTHAVEN mark, assignments, licenses, authorizations, permissions or consents.

> Request No. 24 To the extent that documents have not been produced in response to the preceding document requests, produce all documents showing any and all agreements related to the mark WESTHAVEN, including without limitation, agreements relating to advertising under the mark, assignments, licenses, authorizations, permissions or consents.

Alyn refuses to provide information about or produce the agreements relating to Alyn's use of the WESTHAVEN mark on the basis of relevance. However, agreements regarding a mark at issue, including license agreements or other arrangements between the owner and third-parties, are discoverable in Board proceedings. *See Johnston Pump/General Valve Inc. v. Chromalloy American Corp.*, 10 USPQ2d 16771 (TTAB 1988). Alyn has rendered agreements relating to her own proposed WESTHAVEN mark relevant by claiming rights to the mark in her Petition.

Alyn's Selection and Adoption of Petitioner's WESTHAVEN Mark

> Interrogatory No. 1 Identify (a) the three people most knowledgeable as to the creation, selection, adoption, and use of WESTHAVEN by You and (b) the three people most knowledgeable as to the services provided by You under the WESTHAVEN mark.

> Interrogatory No. 4 State the reasons for Your selection of the WESTHAVEN mark for use on or in connection with real estate services and identify the person(s) who first suggested, proposed, recommended, conceived of, or suggested use of the WESTHAVEN mark in connection with these services.

> Interrogatory No. 5: Describe in detail all steps which were taken in connection with creation and adoption of Petitioner's Mark, and identify all documents which relate to creation and adoption of Petitioner's Mark.
>
> Request No. 2 Produce all documents related to your creation, selection and adoption of the WESTHAVEN mark, including without limitation search reports, market surveys, emails and interoffice memoranda.
>
> Request No. 10 Produce all documents relating to the reasons for Your selection of the WESTHAVEN mark in connection with Your real estate services.
>
> Request No. 44 Produce all documents that relate to every other alternative mark which was considered for adoption and use in connection with Your real estate services.

Respondent requested documents and things related to the creation, selection and adoption of Petitioner's mark, including any non-privileged search materials. Information concerning a party's selection and adoption of its involved mark, including those directing mark selection, is discoverable. TBMP § 414(4); *Volkswagenwerk Aktiengesellschaft v. MTD Products Inc.*, 181 USPQ 471, 473 (TTAB 1974) (identification of persons who suggested use of involved mark on involved goods is not improper); *Goodyear Tire & Rubber Co. v. Tyrco Industries*, 186 USPQ 207, 208 (TTAB 1975) (whether applicant received opinions concerning adoption of mark is not privileged and applicant must identify person, date and documents relating thereto). Alyn has rendered discovery relating to the selection and adoption of her own proposed WESTHAVEN mark relevant by claiming rights to the mark in her Petition.

<u>Alyn's First Use of the WESTHAVEN Mark</u>

> Request No. 20 Produce all documents relating to the date the mark WESTHAVEN was first used by You in connection with real estate services
>
> Request No. 21 Produce all documents, as applicable, relating to the first property sold under the mark WESTHAVEN by You.

Petitioner has refused to provide information and documents related to the first use of her purported WESTHAVEN mark. Information concerning a party's first use of its mark is discoverable. TBMP § 414(5); *Georgia Pacific Corp. v. Great Plains Bag Co.*, 190 USPQ 193, 195-96 (TTAB 1976). This is also particularly relevant because Paragraph 14 of Petitioner's Petition for Cancellation states that "Petitioner will be damaged by the continued existence of United States Trademark Registration No. 3,101,151 and No. 3,101,150 because they will give color of rights to the Respondent and will continue to be an impediment to Petitioner's ability to use 'Westhaven' in regard to her business services and advertising." In its Answer, Southern Land Company denied this allegation. Since Petitioner claimed that she will be damaged by the continued existence of Registrant's marks on the Principal Register, under the Federal Rules of Civil Procedure, Respondent is entitled to take discovery on this claim. Therefore, Petitioner should be ordered to supplement her discovery responses.

<u>Alyn's Use of the WESTHAVEN Mark on Petitioner's Services</u>

> Interrogatory No. 2 Identify and describe in detail each service offered by You under the mark WESTHAVEN and identify and describe in detail where these services are offered.
>
> Request No. 4 Produce all documents which relate or refer to Your use of the WESTHAVEN mark in connection with real estate..

Petitioner has refused to provide information and documents related to the use of her purported WESTHAVEN mark on her services. Information that a party sells the same goods or services as the propounding party is relevant. TBMP § 414 (11). Parties must provide discovery with respect to those of its marks and services that are involved in the proceeding. *Id.* Therefore, Petitioner should be ordered to supplement her discovery responses.

### C. Alyn Should Be Compelled to Sign Her Interrogatories

Pursuant to Fed. R. Civ. P. 33(b)(5), the person who makes the answers must sign them, and the attorney who objects must sign any objections. In her response to Interrogatory No. 11, Alyn confirmed that she answered the Interrogatories, yet never provided Respondent with a signed verification. In its letter of August 8, 2014, Respondent reminded Petitioner of her obligation to sign her interrogatory responses, and Respondent's email of August 22, 2014, states that Alyn will provide a signed verification of her discovery responses within a week from that date. *See* Exhibits C and D. Respondent has yet to receive the signed verification. Petitioner should be compelled to provide Respondent with a signed verification to Petitioner's interrogatory responses.

**D. Alyn Should Be Compelled to Supplement Her Initial Disclosures**

Finally, Ms. Alyn's Initial Disclosures are deficient. Though these disclosures were due on May 17, 2014, Ms. Alyn did not serve her bare-bones disclosures until August 26, 2014. (Exhibit E.) A party failing to make initial disclosures may be subject to a motion to compel, and ultimately, a motion for discovery sanctions. TBMP § 401.02 (citing *Luster Products Inc. v. Van Zandt*, 104 USPQ2d 1877, 1878-79 (TTAB 2012) (motion to compel is available remedy for failure to serve, or insufficient, initial disclosures)). Pursuant to Fed. R. Civ. P. 26(a)(1), Initial Disclosures must include the name, address, and telephone number of each individual likely to have discoverable information, along with the subjects of information, that the disclosing party may use to support its claims and defenses. Initial Disclosures must also include a copy (or a description by category and location) of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1). Alyn's Initial Disclosures do not disclose the subjects of information for which each individual disclosed has personal knowledge, and they also fail to include a copy of the listed documents. *See* Exhibit E. If Alyn does not want to

provide copies of the documents disclosed in the Initial Disclosures, she must at least supplement the disclosures to state the location of the listed documents. TBMP § 401.02. Because Alyn's Initial Disclosures are deficient, Respondent requests an order compelling Alyn to supplement her Initial Disclosures.

## IV. CONCLUSION

Petitioner Alyn initiated this proceeding. Alyn may not now shirk her obligations under the Federal Rules of Civil Procedure to respond fully to discovery, whether in the form of initial disclosures or responses to interrogatories and requests for production of documents or requests for admissions. If Alyn has no evidence in support of her contentions of fraud, the Petition should be dismissed.

For the foregoing reasons, Respondent requests that the Board grant its Motion to Compel Discovery by issuing an Order compelling Petitioner to complete supplemental responses to the discovery issued by Respondent and provide supplemental Initial Disclosures.

Respondent, through counsel, has made a good faith effort to resolve with Petitioner's counsel the issues presented in this motion, and has been unable to reach an agreement.

October 6, 2014

Respectfully submitted,

STITES & HARBISON PLLC

Mari-Elise Taube

James R. Michels
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2234
Email: randy.michels@stites.com

Mari-Elise Taube
STITES & HARBISON PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
Telephone: (703) 837-3932
Email: mtaube@stites.com

Counsel for Respondent
Southern Land Company, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that true copies of the foregoing were served on counsel for Petitioner, this 6th day of October, 2014, by sending it via U.S. Mail, postage prepaid, and by e-mail, to:

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras Street, Suite 1470
New Orleans, Louisiana 70130
E-mail: brandon@proentertainmentlaw.com

Mari-Elise Taube

Mari-Elise Taube

10797N:131487:339509:2:ALEXANDRIA

**EXHIBIT A**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| **LISA ALYN,** | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Cancellation No. 92058638 |
| | ) | U.S. Registration Nos. 3,101,150 |
| | ) | 3,101,151 |
| **SOUTHERN LAND COMPANY, LLC** | ) | |
| | ) | |
| Registrant | ) | |
| | ) | |
| | ) | |

**REGISTRANT'S FIRST SET OF INTERROGATORIES**

Registrant, **SOUTHERN LAND COMPANY, LLC** ("Registrant"), pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rules 2.116 and 2.120 of the Trademark Rules of Practice, hereby serves the following interrogatories to be answered separately and fully in writing and under oath, pursuant to the definitions and instructions contained herein, by Petitioner **LISA ALYN** ("Petitioner"). Each separately numbered or lettered sub-part of each interrogatory requires a separate answer thereto. Responses should be served upon the offices of Stites & Harbison, PLLC, at the address listed below. Furthermore, these interrogatories shall be deemed to be continuing to the fullest extent permitted by the Rules, and Petitioner shall provide Registrant with any supplemental answers and additional information that are requested herein which shall become available to Petitioner at a later date.

## DEFINITIONS AND INSTRUCTIONS

1. The terms "Petitioner," "You" and "Your" refer to Lisa Alyn, your partners, joint venturers, affiliates, agents, attorneys, successors-in-interest, predecessors-in-interest, employees, representatives, subsidiaries, parent companies, and any others acting on her behalf or over whom or which she may or does control.

2. The term "Registrant" shall mean, except where otherwise stated, Southern Land Company, LLC.

3. As used herein, the words "Registrant's Marks" shall include Registrant's trademarks "WESTHAVEN" and "W WESTHAVEN (plus design)".

4. The term "document" shall be construed in its broadest permissible sense, and shall include any and all means of conveying, storing, or memorializing information, whether in paper or other tangible physical form, or in electronic form, and shall mean, without limitation, every writing or record of every type and description that is or has been in the possession, control, or custody of Petitioner or of which Petitioner has knowledge, correspondence, including, but not limited to, e-mail correspondence, invoices, contracts, purchase orders, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes, writings, notations, packaging, artwork, photographs, tear sheets, flyers, brochures, proofs, displays, videotapes, models, drawings, sketches, illustrative materials, magnetic recording tapes, microfilms, or statistical compilations, every copy of such writing or record where the original is not in the possession, custody or control of Petitioner and every copy of every such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

5. The term “date” means the exact day, month and year, if ascertainable; if not ascertainable, the closest approximation that can be made by means of relationship to other events or matters.

6. The terms “and” as well as “or” shall be construed both disjunctively and conjunctively, as necessary, to bring within the scope of these interrogatories information which might otherwise be construed to be outside their scope.

7. Wherever a singular form appears, it also shall be construed as plural, and vice versa, as necessary, to bring within the scope of these interrogatories information that might otherwise be construed to be outside their scope.

8. The terms “concerning,” “regarding” and “related to” mean reflecting, referring to, incorporating, comprising, touching upon, indicating, evidencing, affirming, denying, or relevant to, in addition to its other customary and usual meaning, and includes, but is not limited to, discussing, constituting, pertaining to, describing, evidencing, identifying, touching upon and/or summarizing.

9. The term “identify” or the phrase “state the identity of” means (in addition to any other information requested by the context specified herein):

a. In the case of a person who is an individual: state the full name, present or last known residence or address (designating which) and present or last known position or business affiliation (designating which); job title; employment address; business and residence telephone numbers of each individual;

b. In the case of a company, partnership, corporation, proprietorship, association, or other organization or entity, state: the full name and present or last known

address and telephone number; the legal form of such entity or organization; if incorporated, the identity of the person or persons having knowledge of the matter with respect to which the company is named; and the identity of its chief executive officer;

c. In the case of an act, state: a description of that act; when it occurred; where it occurred; the identity of the person or persons performing said act (or in the case of an omission, the identity of the person or persons failing to act); the identity of all persons who have knowledge, information or belief about the act; when the act or omission first became known; and the circumstances and manner in which such knowledge was first obtained;

d. In the case of an oral communication, state: the date, subject matter, communicator, the person to whom the communication was made, nature of communication, whether it was recorded, and the identity of any witness thereto;

e. In the case of a document, state: the identity of the person or persons who prepared it, the sender and recipient, if any; the title or a description of the general nature of its subject; the date of preparation; the date and manner of distribution and publication, if any; the location of each copy and the identity of the present custodian; the identity of the person or persons who can identify it; the contents of the document verbatim (In lieu of the foregoing, a copy of the document may be supplied.); and if privilege is claimed, the specific basis therefor.

f. In the case of a lost document the date(s) the loss or unavailability was first discovered, the person(s) who first discovered the loss or unavailability and the person(s) most knowledgeable about the contents of such lost or unavailable documents.

11. Each interrogatory or request shall be read to be inclusive rather than exclusive. Accordingly, “including” means “including without limitation.” The word “all” includes “any”

and vice versa. The past tense includes the present tense and vice versa. The masculine form of any word includes the feminine form and vice versa.

12. If Petitioner refuses to identify and/or produce any document(s) based upon a claim of confidentiality, privilege, or work product immunity, Petitioner shall, in log form, (i) identify each document by its author, intended recipient(s), the date of the document, and its general subject matter, and (ii) set forth for each withheld document the particular basis for the refusal of production.

13. In responding to the interrogatories and requests for admission, Petitioner is required to furnish responsive information within its knowledge or the personal knowledge of its attorneys, agents, employees, or other representatives.

14. In responding to the document requests Petitioner is required to furnish responsive documents within its possession, custody, or control or within the possession, custody, or control of its attorneys, agents, employees or other representatives.

15. Each objection, if any, shall be set forth with specificity and shall include a statement of the grounds for the objection.

16. If any document requested to be identified or produced has been destroyed, provide the following additional information as to each such document:

a. the date of destruction;

b. the reason for the destruction;

c. the identification of the person who destroyed the document; and

d. the identification of any person who directed that the document be destroyed.

17. If any of the interrogatories or requests cannot be answered in full, respond to the extent possible, specifying the reasons for the inability to respond to the interrogatory or request and provide whatever information or knowledge is available concerning the unanswered portion.

18. If any responsive information, communication or document is withheld on the basis of any claim of privilege, identify such information, communication or document withheld, state the privilege being relied upon or claimed and the basis for the claim, and identify all persons or entities who have had access to such information, communication or document.

19. Petitioner is to supplement its responses to all discovery requests as required by Fed. R. Civ. P. 26(e).

20. The interrogatories and requests shall be deemed to seek responses as of the date hereof but shall be deemed to be continuing so that any additional information relating in any way to these requests which Petitioner acquires or which becomes known to Petitioner up to and including the time of final disposition shall be furnished to Registrant immediately after such information is first acquired or becomes known.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify (a) the three people most knowledgeable as to the creation, selection, adoption, and use of WESTHAVEN by You and (b) the three people most knowledgeable as to the services provided by You under the WESTHAVEN mark.

**ANSWER:**

**INTERROGATORY NO. 2:** Identify and describe in detail each service offered by You under the mark WESTHAVEN and identify and describe in detail where these services are offered.

**ANSWER:**

**<u>INTERROGATORY NO. 3:</u>** Explain the basis for and identify all facts which evidence, support, refer or relate to the good faith use of the WETSHAVEN mark by You.

**ANSWER:**

**<u>INTERROGATORY NO. 4:</u>** State the reasons for Your selection of the WESTHAVEN mark for use on or in connection with real estate services and identify the person(s) who first suggested, proposed, recommended, conceived of, or suggested use of the WESTHAVEN mark in connection with these services.

**ANSWER:**

**<u>INTERROGATORY NO. 5:</u>** Describe in detail all steps which were taken in connection with creation and adoption of Petitioner's Mark, and identify all documents which relate to creation and adoption of Petitioner's Mark.

**ANSWER:**

**<u>INTERROGATORY NO. 6:</u>** Identify and describe in detail the channels of trade in the United States that You use or intend to use to offer and promote your real estate services under the WESTHAVEN mark.

**ANSWER:**

**<u>INTERROGATORY NO. 7:</u>** Identify Your target purchasers for the services offered under the WESTHAVEN mark.

**ANSWER:**

**<u>INTERROGATORY NO. 8:</u>** Identify (a) the three persons most knowledgeable as to the advertising or the plans for advertising Your services under the WESTHAVEN mark and (b) documents showing the sales and plans for sales and advertising and plans for advertising under the WESTHAVEN mark.

**ANSWER:**

**<u>INTERROGATORY NO. 9:</u>** Identify all documents in the possession, custody or control of You referring or relating to Registrant and Registrant's Marks.

**ANSWER:**

**<u>INTERROGATORY NO. 10:</u>** Identify all documents in the possession, custody or control of Petitioner relating to Registrant's services sold under Registrant's Marks.

**ANSWER:**

**<u>INTERROGATORY NO. 11:</u>** Identify all persons who participated in any way in the preparation of the responses to these interrogatories, Registrant's First Set of Requests for Production of Documents and Things, and Registrant's First Set of Requests for Admissions, and for each person, identify the responses for which the person provided information (excluding only Petitioner's outside counsel and/or their representatives).

**ANSWER:**

**<u>INTERROGATORY NO. 12:</u>** State whether Petitioner has requested or received or has knowledge of any opinions, legal or otherwise, of any type regarding the right to use the WESTHAVEN mark or the registrability of the mark WESTHAVEN by Petitioner. If Your answer to this question is anything other than an unqualified "No", (a) identify the person or persons requesting each such opinion, (b) identify the person or persons rendering each such opinion, and (c) identify all documents relating to the opinion.

**ANSWER:**

**<u>INTERROGATORY NO. 13:</u>** Describe all steps taken by You to determine whether the mark WESTHAVEN was available for use by You and would not conflict with any prior used or registered mark or name, and identify the three persons who are most knowledgeable as to the steps taken to determine availability of the mark and all related documents.

**ANSWER:**

**<u>INTERROGATORY NO. 14:</u>** State the date that you first offered services under the mark WESTHAVEN by You.

**ANSWER:**

**<u>INTERROGATORY NO. 15:</u>** Identify all agreements relating to Your use of the mark WESTHAVEN and services offered or to be offered under the mark WESTHAVEN, including without limitation agreements relating to advertising of the services offered under the WESTHAVEN mark, assignments, licenses, authorizations, permissions or consents.

**ANSWER:**

**<u>INTERROGATORY NO. 16:</u>** For each expert that Petitioner has retained to give testimony in this proceeding, provide the information required in Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

**ANSWER:**

**<u>INTERROGATORY NO. 17:</u>** With respect to each Request for Admission as to which Your response is anything other than an unequivocal admission, please state all facts upon which You base that response.

**ANSWER:**

**<u>INTERROGATORY NO. 18:</u>** For each of the allegations in the Complaint, state the factual basis on which You intend to rely to prove each of these allegations and identify all the documents on which You will rely to support these allegations.

**ANSWER:**

June 6, 2014

Respectfully submitted,

STITES & HARBISON PLLC

Mari-Elise Taube

______________________________

James R. Michels
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2234
Email: randy.michels@stites.com

Mari-Elise Taube
STITES & HARBISON PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
Telephone: (703) 837-3932
Email: mtaube@stites.com

Counsel for Respondent
Southern Land Company, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that true copies of the foregoing were served on counsel for Petitioner, this 6th day of June, 2014, by sending it via U.S. Mail, postage prepaid, and by e-mail, to:

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras Street, Suite 1470
New Orleans, Louisiana 70130
E-mail: brandon@proentertainmentlaw.com

Mari-Elise Taube

Mari-Elise Taube

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| **LISA ALYN,** | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Cancellation No. 92058638 |
| | ) | U.S. Registration Nos. 3,101,150 |
| | ) | 3,101,151 |
| **SOUTHERN LAND COMPANY, LLC** | ) | |
| | ) | |
| Registrant | ) | |
| | ) | |
| | ) | |

**REGISRANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Registrant, **SOUTHERN LAND COMPANY, LLC**, ("Registrant"), serves the following requests for the production of documents and things under Federal Rule of Civil Procedure 34 and Rules 2.116 and 2.120 of the Trademark Rules of Practice, that Petitioner, **LISA ALYN** ("Petitioner") produce, pursuant to the definitions and instructions contained or incorporated herein, the documents and things listed below for inspection and copying, and that said production be made accompanying Petitioner's service of its responses to these requests upon Registrant at the offices of Stites & Harbison PLLC, 401 Commerce St., Suite 800, Nashville, TN 37219, or such other place as counsel may agree and permit Registrant to inspect and copy the documents and things listed below. Furthermore, these requests shall be deemed to be continuing to the fullest extent permitted by the Rules, and Petitioner shall provide Registrant with any supplemental responses and additional documents and things that are requested herein which shall become available to Petitioner at a later date.

## DEFINITIONS AND INSTRUCTIONS

1. The Definitions and Instructions contained in Registrant's First Set of Interrogatories (the "interrogatories") are incorporated herein by reference.

## DOCUMENTS REQUESTED

1. Produce all documents related to market research (including, surveys, studies, investigations and focus group inquiries) conducted by or on behalf of You regarding the use of WESTHAVEN as a mark.

2. Produce all documents related to your creation, selection and adoption of the WESTHAVEN mark, including without limitation search reports, market surveys, emails and interoffice memoranda.

3. Produce all documents which relate or refer to Your intention to use the WESTHAVEN mark in connection with real estate services.

4. Produce all documents which relate or refer to Your use of the WESTHAVEN mark in connection with real estate services.

5. Produce all documents responsive to each and every request for identification of documents in Registrant's First Set of Interrogatories.

6. Produce all documents in your possession that refer to Registrant.

7. Produce all documents in your possession that refer to Registrant's Marks.

8. Produce all documents relating to Your knowledge of Registrant's intellectual property protection for Registrant's Marks.

9. Produce all documents related to the consideration of each and every other alternative mark which was considered for adoption and use in connection with Your real estate services.

10. Produce all documents relating to the reasons for Your selection of the WESTHAVEN mark in connection with Your real estate services.

11. Produce all documents related to the steps taken by You to determine the availability of WESTHAVEN as a mark for use in connection with real estate services.

12. Produce all documents related to or reflecting opinions as to whether Your use of WESTHAVEN would conflict with any prior used or registered mark.

13. Produce all documents related to or reflecting opinions obtained on the inherent registrability of "WESTHAVEN" for the services which You offer under the mark WESTHAVEN.

14. Produce all documents showing or relating to sales of the Your services under the mark WESTHAVEN.

15. Produce all documents showing or relating to the advertising of Your services under the mark WESTHAVEN.

16. Produce all documents relating to the costs of advertising already implemented for any and all services offered under the mark WESTHAVEN by You.

17. Produce representative samples of all advertising which has been implemented and representative samples of all planned advertising for the services offered by You under the mark WESTHAVEN.

18. Produce all documents relating to sales strategies for the services offered under the mark WESTHAVEN by You.

19. Produce all documents relating to the advertising strategies for the services offered under the mark WESTHAVEN by You.

20. Produce all documents relating to the date the mark WESTHAVEN was first used by You in connection with real estate services.

21. Produce all documents, as applicable, relating to the first property sold under the mark WESTHAVEN by You.

22. Produce copies of all legal and non-legal opinions which you have obtained that relate to Your use or application for registration of the mark WESTHAVEN for the services You offer or intend to offer under the mark WESTHAVEN.

23. Produce all documents related to the channels of trade and distribution in the United States that You use or intend to use for the offering of Your services under the mark WESTHAVEN.

24. To the extent that documents have not been produced in response to the preceeding document requests, produce all documents showing any and all agreements related to the mark WESTHAVEN, including without limitation, agreements relating to advertising under the mark, assignments, licenses, authorizations, permissions or consents.

25. Produce all documents related to Petitioner's knowledge of Registrant and any or all of the Registrant's Marks.

26. Produce all documents related to Petitioner's knowledge of services offered by Registrant under any or all of Registrant's Marks.

27. Produce all documents related to studies, surveys or polls conducted by or for Petitioner relating to Registrant or Registrant's Marks.

28. Produce all documents relating to Petitioner's policies for keeping and retaining records.

29. Produce all documents relating to trademark searches, clearance, approval, and evaluation of the mark WESTHAVEN for use by You.

30. Produce all documents that demonstrate, discuss or describe the services in connection with which You use the WESTHAVEN mark.

38. Produce all documents regarding the geographical areas in which You offer and intend to offer your services under the WESTHAVEN mark.

31. Produce all documents reflecting or regarding the buyers of the services offered by You under the WESTHAVEN mark.

32. Produce all documents regarding or discussing Registrant's rights in connection with the exclusive use of WESTHAVEN in connection with real estate services.

33. Produce all documents regarding or discussing Registrant's rights in connection with the exclusive use of WESTHAVEN in connection with land development services.

34. Produce all documents reflecting or regarding the dollar value of sales or projected sales of the services offered by You under the WESTHAVEN mark, including but not limited to documents reflecting or discussing how such projected sales numbers were determined.

35. Produce all documents showing the amount of money budgeted and/or expended to date to promote the services offered by You under the WESTHAVEN mark.

36. For each expert that Petitioner intends to call to testify in this proceeding produce the written report required by Fed. R. Civ. P. 26(a)(2)(B).

37. Produce all documents upon which Petitioner relies to support its position that Registrant's Marks are geographically descriptive.

38. Produce all documents upon which Petitioner relies to support its position that Registrant's Marks are geographically descriptive within the meaning of the Trademark Act.

39. Produce all documents upon which Petitioner relies to support its position that fraud was committed in prosecuting the applications for registration of Registrant's Marks.

40. Produce all documents which Petitioner referred to or relied upon in responding to Registrant's first set of interrogatories in this proceeding.

41. Produce any and all documents reflecting objections by or disputes with third parties relating to Your use of the mark WESTHAVEN.

42. Produce any and all documents which refer or relate to Your knowledge of the application for registration of "WESTHAVEN" by Registrant.

43. Produce any and all documents which refer or relate to Your knowledge of the application for registration of "WESTHAVEN (plus design)" by Registrant.

44. Produce all documents that relate to every other alternative mark which was considered for adoption and use in connection with Your real estate services.

45. Produce all documents that relate to or reference consumer confusion or possible consumer confusion between the services offered by You under the WESTHAVEN mark and the services offered by Registrant under Registrant's Marks.

46. Produce all documents that relate or refer to whether the use of Petitioner's Mark might infringe Registrant's rights in Registrant's Marks.

47. Produce all documents reflecting internal communications referring or relating to possible conflict with Registrant's Marks in using or possibly using the mark WESTHAVEN.

48. Produce all documents which refer or relate to communications with third parties referring or relating to possible conflict with Registrant's Marks in using or possibly using the mark WESTHAVEN.

49. Produce all documents relating to Petitioner's knowledge of Registrant's prosecution of U.S. Registration No. 3,101,150.

50. Produce all documents relating to Petitioner's knowledge of Registrant's prosecution of U.S. Registration No. 3,101,151.

June 6, 2014

Respectfully submitted,

STITES & HARBISON PLLC

James R. Michels
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2234
Email: randy.michels@stites.com

Mari-Elise Taube
STITES & HARBISON PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
Telephone: (703) 837-3932
Email: mtaube@stites.com

Counsel for Respondent
Southern Land Company, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that true copies of the foregoing were served on counsel for Petitioner, this 6th day of June, 2014, by sending it via U.S. Mail, postage prepaid, and by e-mail, to:

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras Street, Suite 1470
New Orleans, Louisiana 70130
E-mail: brandon@proentertainmentlaw.com

Mari-Elise Taube

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| **LISA ALYN,**<br><br>Petitioner<br><br>v.<br><br><br>**SOUTHERN LAND COMPANY, LLC**<br><br>Registrant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cancellation No. 92058638<br>U.S. Registration Nos. 3,101,150<br>3,101,151 |

**REGISTRANT'S FIRST REQUESTS FOR ADMISSION**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure and Rule 2.120 of the Trademark Rules of Practice, Registrant **SOUTHERN LAND COMPANY** ("Registrant") requests that Petitioner **LISA ALYN** ("Petitioner") serve upon Registrant signed responses to the requests for admission set forth below within thirty (30) days after the service hereof. These discovery requests are intended to be continuing in nature and any information that may be discovered subsequent to the service and filing of the answer should be brought to Registrant's attention through supplemental answers within a reasonable time following such discovery.

For the convenience of the Board and the parties, Registrant requests that each request for admission be quoted in full immediately preceding your response.

**DEFINITIONS AND INSTRUCTIONS**

Registrant incorporates by reference the definitions and instructions set forth in Registrant's First Set of Interrogatories to Petitioner and Registrant's First Set of Requests for Admission to Petitioner. In addition, Registrant provides the following definitions and instructions:

a. If the request is not admitted, Your answer must specifically deny it or state in detail why you cannot truthfully admit or deny the request.

b. Your denial of a request must fairly respond to the substance of the request. If, in good faith, you must qualify an answer or deny only a part of a request, your answer must specify the part admitted and qualify or deny the rest of the request.

c. You may assert lack of knowledge or information as a reason for failing to admit or deny only if you state that you have made reasonable inquiry and that the information you know or can readily obtain is insufficient to enable you to admit or deny.

d. The grounds for objecting to a request must be specifically stated. You may not object solely on the ground that the request presents a genuine issue for trial.

**REQUESTS FOR ADMISSION**

1. Admit that the documents and things produced by You in response to Registrant's First Request for Production of Documents are authentic.

2. Admit that Initial Disclosures were due May 17, 2014.

3. Admit that You did not serve Initial Disclosures by May 17, 2014.

4. Admit that prior to commencing use of "WESTHAVEN" as a mark for your real estate services, You were aware of Registrant's use and registration of "WESTHAVEN" in connection with real estate and land development services.

5. Admit that prior to commencing use of "WESTHAVEN" as a mark for your real estate services, You were aware of Registrant's use and registration of "WESTHAVEN (and design)" in connection with real estate and land development services.

6. Admit that Registrant created the Westhaven community in Franklin, Tennessee.

7. Admit that before Registrant created the Westhaven community in Franklin, Tennessee, it did not exist.

8. Admit that "Westhaven" has no geographical significance under the meaning of the Trademark Act.

9. Admit that "WESTHAVEN" had no geographical significance in Franklin, Tennessee, in 2002.

10. Admit that "WESTHAVEN" is a term coined by Registrant.

11. Admit that Registrant is a land developer.

12. Admit that Registrant offers real estate services.

13. Admit that Registrant offers real estate services under the mark "WESTHAVEN".

14. Admit that Registrant offers real estate services under the mark "WESTHAVEN (plus design)".

15. Admit that Registrant offers land development services under the mark "WESTHAVEN".

16. Admit that Registrant offers land development services under the mark "WESTHAVEN (plus design)".

17. Admit that in 2002, Registrant began offering land development services under the mark "WESTHAVEN".

18. Admit that in 2002, Registrant began offering land development services under the mark "WESTHAVEN (plus design)".

19. Admit that in 2002, Registrant began offering real estate services under the mark "WESTHAVEN".

20. Admit that in 2002, Registrant began offering real estate services under the mark "WESTHAVEN (plus design)".

21. Admit that prior to 2002, the Westhaven community did not exist in Franklin, Tennessee.

22. Admit that the Westhaven community was designed by Registrant.

23. Admit that the Westhaven community was developed by Registrant.

24. Admit that Registrant selected the mark WESTHAVEN for the name of the community it created in Franklin, Tennessee.

25. Admit that You are using the mark "WESTHAVEN" for your real estate services.

26. Admit that You are marketing Your real estate services under the mark "WESTHAVEN" in Registrant's Westhaven community.

27. Admit that You have no rights in the mark "WESTHAVEN" for your real estate services.

28. Admit that You are using the mark "WESTHAVEN" to advertise your real estate services.

29. Admit that you are attempting to sell real estate within Registrant's WESTHAVEN community.

30. Admit that You have received legal opinion(s) regarding the possible infringement of one or more of Registrant's Marks because of use of the mark WESTHAVEN.

31. Admit that You have received legal opinion(s) regarding possible infringement of one or more of Registrant's Marks because of your use of WESTHAVEN in connection with real estate services.

32. Admit that You have conducted market studies or surveys to measure the consumer impression created by one or more of Registrant's Marks.

33. Admit that You commenced use of the “WESTHAVEN” mark to increase your real estate sales in Registrant’s Westhaven community.

34. Admit that the services You offer under the WESTHAVEN mark are directly competitive with the services offered under one or more of Registrant’s Marks.

35. Admit that You are aware of instances of actual confusion between the source of the your real estate services and those of Registrant.

36. Admit that You are aware of instances where consumers mistakenly thought that you were affiliated with Registrant.

37. Admit that You are aware of instances where consumers mistakenly thought that your services were provided by Registrant.

38. Admit that You are aware of instances where consumers mistakenly thought that you were employed by Registrant.

39. Admit that You knowingly adopted Registrant’s WESTHAVEN mark.

June 6, 2014

Respectfully submitted,

STITES & HARBISON PLLC

/s/ Mari-Elise Taube

James R. Michels
STITES & HARBISON PLLC
401 Commerce St., Suite 800
Nashville, TN 37219
Telephone: (615) 782-2234
Email: randy.michels@stites.com

Mari-Elise Taube
STITES & HARBISON PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
Telephone: (703) 837-3932
Email: mtaube@stites.com

Counsel for Respondent
Southern Land Company, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that true copies of the foregoing were served on counsel for Petitioner, this 6th day of June, 2014, by sending it via U.S. Mail, postage prepaid, and by e-mail, to:

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras Street, Suite 1470
New Orleans, Louisiana 70130
E-mail: brandon@proentertainmentlaw.com

Mari-Elise Taube

Mari-Elise Taube

**EXHIBIT B**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | |
|---|---|
| **LISA ALYN**,<br>Petitioner,<br><br>v.<br><br>**SOUTHERN LAND COMPANY, LLC**<br>Registrant. | Cancellation No. 92058638<br><br>U.S. Trademark Reg. Nos. 3,101,150 and 3,101,151 |

**LISA ALYN'S RESPONSES TO**
**<u>SOUTHERN LAND COMPANY'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS</u>**

Petitioner Lisa Alyn responds to the Request for Production of Documents and Things served upon it by Registrant, Southern Land Company, LLC as follows:

**GENERAL OBJECTIONS**

Under Rules 26 and 34 of the Federal Rules of Civil Procedure and the Trademark Rules of Practice, Petitioner hereby makes the following general responses and objections ("General Objections") to each Request for Production of Documents and Things propounded in Registrant's First Requests for Production of Documents and Things. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar or additional objections or partial responses to individual interrogatories does not waive any of Petitioner's General Objections.

1. Petitioner objects to each Request to the extent the request is vague, ambiguous, overbroad, or unduly burdensome, or purport to impose upon Petitioner any duty or obligation

that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules of Civil Procedure and the Trademark Rules of Practice, or any other applicable rule.

2. Petitioner objects to the extent they purport to define words or phrases to have a meaning different from their commonly understood meaning, or to include more than their commonly understood definitions.

3. Petitioner objects to each Request as overbroad and unduly burdensome to the extent that it calls for information that is neither relevant to this proceeding or the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.

4. Petitioner objects to any Request to the extent it seeks irrelevant information about Petitioner's services or business operations. Such requests are overbroad and unduly burdensome. Petitioner will only respond to Requests that is relevant to the trademarks subject to this cancellation proceeding, or that is otherwise related to the claims or defenses of the parties asserted by the parties in this proceeding.

5. Petitioner objects to each Request to the extent that it would impose a duty on Petitioner to undertake a search for or an evaluation of information, documents, or things for which Registrant is equally able to search for and evaluate. In particular, Petitioner objects to each Request to the extent that it seeks information or documents that are publicly available or in Registrant's possession, custody, and control.

6. Petitioner objects to the Requests to the extent they seek information that is not in the possession, custody, or control of Petitioner.

7. Petitioner objects to the Requests to the extent they would require Petitioner to draw a legal conclusion or contention to make a proper response.

8. Petitioner objects to any Request to the extent that it purports to require identification of oral communications. Such requests are overbroad, vague, ambiguous and unduly burdensome.

9. Petitioner objects to the Requests to the extent they are not limited in time and seek information for periods of time that are not relevant to any claim or defense in this proceeding.

10. Petitioner objects to Registrant's definition of "PETITIONER", "YOU" and "YOUR" to the extent they purport to include persons or entities that are separate and distinct from Petitioner or are not under Petitioner's control. For the purpose of these responses and objections, the terms "Petitioner", "You" and "Your" refer only to Lisa Alyn.

11. Petitioner objects to Registrant's definition of "REGISTRANT'S MARKS" because it is inaccurate, overly broad, vague, ambiguous, and unduly burdensome. The definition is particularly vague and ambiguous in its use of the phrase "Registrant's Marks shall include", and overly broad in attempting to include other trademarks and information other than that cited to the Trademark Office during the prosecutions of the trademarks that are the subject of this Cancellation Proceeding. For the purpose of these responses and objections, the words "Registrant's Marks" means the marks shown in U.S. Registration Nos. 3,101,150 and 3,101,151.

12. Petitioner objects to every Request that uses the phrase "under the WESTHAVEN mark", "use of the WESTHAVEN mark" or other similar iteration because it is inaccurate, misleading, overly broad, vague, ambiguous and unduly burdensome. Use of these phrases inappropriately assumes that use of the geographically descriptive term Westhaven is a trademark use.

13. Petitioner objects to Registrant's definition of "DOCUMENT" because it is overly broad and unduly burdensome because it would require Petitioner to include in its responses, for example, documents related to trademarks that Registrant may own or claim to own other than the trademarks covered by U.S. Registration Nos. 3,101,150 and 3,101,151; documents and testimony supporting every fact in Petitioner's responses; information and documents that is neither relevant to this proceeding, the claims or defenses of the parties, nor reasonably calculated to lead to the discovery of admissible evidence.

14. Petitioner objects to each Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or discovery immunity.

15. Petitioner provides these objections and responses to the best of its current knowledge. Discovery or further investigation may reveal additional or different information warranting amendment of these objections and responses. Petitioner reserves the right to produce at trial and make reference to any evidence, facts, documents, or information not discovered at this time, omitted through good-faith error, mistake, or oversight, or the relevance of which Petitioner has not presently identified.

16. Petitioner's objections as set forth herein are made without prejudice to Petitioner's right to assert any additional or supplemental objections pursuant to Rule 26(e).

17. Petitioner will make, and has made, reasonable efforts to respond to Registrant's Requests, to the extent that no objection is made, as Petitioner reasonably understands and interprets each Request. If Registrant subsequently asserts any interpretation of any request that differs from the interpretation of Petitioner, then Petitioner reserves the right to supplement and amend its objections and responses.

Subject to the above objections, and without waiving the same, Petitioner now answers and objects to the numbered Request for Production of Documents and Things as follows:

**SPECIFIC RESPONSES AND OBJECTIONS**

1. Produce all documents related to market research (including, surveys, studies, investigations and focus group inquiries) conducted by or on behalf of You regarding the use of WESTHAVEN as a mark. Subject to the objections and without waiving them, Ms. Alyn has no documents responsive to this request.

**RESPONSE**: Petitioner has no documents responsive to this request.

2. Produce all documents related to your creation, selection and adoption of the WESTHAVEN mark, including without limitation search reports, market surveys, emails and interoffice memoranda.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject

to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

3. Produce all documents which relate or refer to Your intention to use the WESTHAVEN mark in connection with real estate services.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

4. Produce all documents which relate or refer to Your use of the WESTHAVEN mark in connection with real estate services.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for

cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Ms. Alyn further objects to this request on the grounds that it is overly broad, harassing and unduly burdensome because, to fully respond to this request, Ms. Alyn would have to provide every single piece of paper relating to her real estate business for nearly a decade; obviously, most of those documents would have absolutely no relevance to the claims or defenses in this proceeding.

5. Produce all documents responsive to each and every request for identification of documents in Registrant's First Set of Interrogatories.

**RESPONSE**: Ms. Alyn incorporates her answers to Registrant's First Set of Interrogatories. Petitioner further objects to this request on the ground that the request is harassing, overly broad and unduly burdensome.

6. Produce all documents in your possession that refer to Registrant.

**RESPONSE**: Petitioner further objects to this request on the ground that the request is harassing, overly broad and unduly burdensome because any documents in Ms. Alyn's possession are also within the possession, custody, or control of the Registrant, and publicly available.

7. Produce all documents in your possession that refer to Registrant's Marks.

**RESPONSE**: Ms. Alyn objects to this request on the ground that the request is harassing, overly broad and unduly burdensome. The term "Registrant's Marks" have been defined to include the designation "Westhaven"; as Ms. Alyn's business also uses the term "Westhaven", to respond to this request Ms. Alyn would be required to produce every single piece of paper relating to her real estate business for nearly a decade. Obviously, most of those documents would have absolutely no relevance to the claims or defenses in this proceeding.

8. Produce all documents relating to Your knowledge of Registrant's intellectual property protection for Registrant's Marks.

**RESPONSE**: Petitioner objects to this request on the ground that the request is vague and ambiguous. Subject to that objection, and without waiving it, Ms. Alyn does not believe she has any documents responsive to this request. Ms. Alyn will supplement this response if and when the request is clarified.

9. Produce all documents related to the consideration of each and every other alternative mark which was considered for adoption and use in connection with Your real estate services.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

10. Produce all documents relating to the reasons for Your selection of the WESTHAVEN mark in connection with Your real estate services.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of

fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

11. Produce all documents related to the steps taken by You to determine the availability of WESTHAVEN as a mark for use in connection with real estate services.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

12. Produce all documents related to or reflecting opinions as to whether Your use of WESTHAVEN would conflict with any prior used or registered mark.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

13. Produce all documents related to or reflecting opinions obtained on the inherent registrability of "WESTHAVEN" for the services which You offer under the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it is vague and ambiguous; Ms. Alyn is uncertain what is meant by the phrase "inherent registrability." Further, Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern

Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

14. Produce all documents showing or relating to sales of the Your services under the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving

infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

15. Produce all documents showing or relating to the advertising of Your services under the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request.

16. Produce all documents relating to the costs of advertising already implemented for any and all services offered under the mark WESTHAVEN by You.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for

cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

17. Produce representative samples of all advertising which has been implemented and representative samples of all planned advertising for the services offered by You under the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving

infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

18. Produce all documents relating to sales strategies for the services offered under the mark WESTHAVEN by You.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

19. Produce all documents relating to the advertising strategies for the services offered under the mark WESTHAVEN by You.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical

significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

20. Produce all documents relating to the date the mark WESTHAVEN was first used by You in connection with real estate services.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

21. Produce all documents, as applicable, relating to the first property sold under the mark WESTHAVEN by You.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

22. Produce copies of all legal and non-legal opinions which you have obtained that relate to Your use or application for registration of the mark WESTHAVEN for the services You offer or intend to offer under the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that may be subject to the attorney-client privilege or the work product privilege. Subject to those objections, and without waiving them, Ms. Alyn does not have any documents which are responsive to this request.

23. Produce all documents related to the channels of trade and distribution in the United States that You use or intend to use for the offering of Your services under the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

24. To the extent that documents have not been produced in response to the preceding document requests, produce all documents showing any and all agreements related to the mark WESTHAVEN, including without limitation, agreements relating to advertising under the mark, assignments, licenses, authorizations, permissions or consents.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical

significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

25. Produce all documents related to Petitioner's knowledge of Registrant and any or all of the Registrant's Marks.

**RESPONSE**: Petitioner objects to this request on the ground that the request is overbroad and unduly burdensome; Ms. Alyn is uncertain what is meant by "documents related to Petitioner's knowledge of Registrant." Subject to this objection, and without waiving it, Ms. Alyn responds that she has no documents responsive to this request except those publically available, such as Registrant's website.

26. Produce all documents related to Petitioner's knowledge of services offered by Registrant under any or all of Registrant's Marks.

**RESPONSE**: Ms. Alyn has no documents in her possession that are not otherwise publically available, such as copies of Registrant's website.

27. Produce all documents related to studies, surveys or polls conducted by or for Petitioner relating to Registrant or Registrant's Marks.

**RESPONSE**: Petitioner has no documents responsive to this request in its possession or control.

28. Produce all documents relating to Petitioner's policies for keeping and retaining records.

**RESPONSE**: Petitioner has no documents responsive to this request in its possession or control.

29. Produce all documents relating to trademark searches, clearance, approval, and evaluation of the mark WESTHAVEN for use by You.

**RESPONSE**: Petitioner has no documents responsive to this request.

30. Produce all documents that demonstrate, discuss or describe the services in connection with which You use the WESTHAVEN mark.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving

infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

38. Produce all documents regarding the geographical areas in which You offer and intend to offer your services under the WESTHAVEN mark.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

31. Produce all documents reflecting or regarding the buyers of the services offered by You under the WESTHAVEN mark.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by

Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

32. Produce all documents regarding or discussing Registrant's rights in connection with the exclusive use of WESTHAVEN in connection with real estate services.

**RESPONSE**: Except for the prosecution records relating to the trademark applications filed by Registrant, which documents are publicly available to Registrant, Petitioner has no documents responsive to this request.

33. Produce all documents regarding or discussing Registrant's rights in connection with the exclusive use of WESTHAVEN in connection with land development services.

**RESPONSE**: Except for the prosecution records relating to the trademark applications filed by Registrant, which documents are publicly available to Registrant, Petitioner has no documents responsive to this request

34. Produce all documents reflecting or regarding the dollar value of sales or projected sales of the services offered by You under the WESTHAVEN mark, including but not limited to documents reflecting or discussing how such projected sales numbers were determined.

**<u>RESPONSE:</u>** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

35. Produce all documents showing the amount of money budgeted and/or expended to date to promote the services offered by You under the WESTHAVEN mark.

**<u>RESPONSE</u>**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving

infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

36. For each expert that Petitioner intends to call to testify in this proceeding produce the written report required by Fed. R. Civ. P. 26(a)(2)(B).

**RESPONSE**: At this time, Petitioner has no documents responsive to this request in its possession or control. Ms. Alyn reserves the right to supplement this response pursuant to the deadlines established by the Board's scheduling order.

37. Produce all documents upon which Petitioner relies to support its position that Registrant's Marks are geographically descriptive.

**RESPONSE**: Ms. Alyn will produce all responsive documents in her possession and control.

38. Produce all documents upon which Petitioner relies to support its position that Registrant's Marks are geographically descriptive within the meaning of the Trademark Act.

**RESPONSE**: Ms. Alyn will produce all responsive documents in her possession and control.

39. Produce all documents upon which Petitioner relies to support its position that fraud was committed in prosecuting the applications for registration of Registrant's Marks.

**RESPONSE**: Ms. Alyn will produce all responsive documents in her possession and control.

40. Produce all documents which Petitioner referred to or relied upon in responding to Registrant's first set of interrogatories in this proceeding.

**RESPONSE**: Ms. Alyn will produce all responsive documents, if any, in her possession and control.

41. Produce any and all documents reflecting objections by or disputes with third parties relating to Your use of the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to these objections, and without waiving them, except for Registrant, no third party has objected to Ms. Alyn's use of the geographical term Westhaven. Ms. Alyn will produce all responsive documents in her control and possession, relating to the current dispute with Registration.

42. Produce any and all documents which refer or relate to Your knowledge of the application for registration of "WESTHAVEN" by Registrant.

**RESPONSE**: Ms. Alyn's knowledge of Registrant's trademark application is limited to the publically available file wrapper for Registrant's registration.

43. Produce any and all documents which refer or relate to Your knowledge of the application for registration of "WESTHAVEN (plus design)" by Registrant.

**RESPONSE**: Ms. Alyn's knowledge of Registrant's trademark application is limited to the publically available file wrapper for Registrant's registration.

44. Produce all documents that relate to every other alternative mark which was considered for adoption and use in connection with Your real estate services.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

45. Produce all documents that relate to or reference consumer confusion or possible consumer confusion between the services offered by You under the WESTHAVEN mark and the services offered by Registrant under Registrant's Marks.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn has no documents responsive to this request in her possession or control.

46. Produce all documents that relate or refer to whether the use of Petitioner's Mark might infringe Registrant's rights in Registrant's Marks.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical

significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

47. Produce all documents reflecting internal communications referring or relating to possible conflict with Registrant's Marks in using or possibly using the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn has no documents responsive to this request in her possession or control.

48. Produce all documents which refer or relate to communications with third parties referring or relating to possible conflict with Registrant's Marks in using or possibly using the mark WESTHAVEN.

**RESPONSE**: Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. *See* Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn has no documents responsive to this request in her possession or control.

49. Produce all documents relating to Petitioner's knowledge of Registrant's prosecution of U.S. Registration No. 3,101,150.

**RESPONSE**: Ms. Alyn's knowledge of Registrant's prosecution of U.S. Registration No. 3,101,150 is limited to the publically available file wrapper for Registrant's registration.

50. Produce all documents relating to Petitioner's knowledge of Registrant's prosecution of U.S. Registration No. 3,101,151.

**<u>RESPONSE</u>**: Ms. Alyn's knowledge of Registrant's prosecution of U.S. Registration No. 3,101,151 is limited to the publically available file wrapper for Registrant's registration.

Respectfully submitted,

/Brandon J Frank /

Dated: July 11, 2014

____________________

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
Telephone: (504) 322-7166
Facsimile: (504) 322-7184
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras, Suite 1470
New Orleans, Louisiana 70130
Tel: 504-299-3415
Fax: 504-527-5111
E-mail: Brandon@proentertainmentlaw.com

*Attorney for Petitioner, Lisa Alyn*

## CERTIFICATE OF SERVICE

I certify that on this 11 day of July, 2014, a true copy of the foregoing were served on counsel for Registrant, by e-mail and via First Class Mail, postage prepaid, to:

James R. Michels
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2234
Email: randy.michels@stites.com

Mari-Elise Taube
STITES & HARBISON PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
Telephone: (703) 837-3932
Email: mtaube@stites.com

/Brandon J Frank/

______________________________

Brandon J. Frank

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | |
|---|---|
| **LISA ALYN**,<br>Petitioner,<br><br>v.<br><br>**SOUTHERN LAND COMPANY, LLC**<br>Registrant. | Cancellation No. 92058638<br><br>U.S. Trademark Reg. Nos. 3,101,150 and 3,101,151 |

**LISA ALYN'S RESPONSE TO**
**SOUTHERN LAND COMPANY'S FIRST REQUESTS FOR ADMISSION**

Lisa Alyn, Petitioner, by and through its undersigned counsel, responds and objects to the Requests for Admissions issued to Petitioner by the Registrant, Southern Land Company, LLC, on or about June 6, 2014, and in support of her objection represents as follows:

**GENERAL OBJECTIONS**

Under Rules 26 and 36 of the Federal Rules of Civil Procedure and the Trademark Rules of Practice, Petitioner hereby makes the following general responses and objections ("General Objections") to each Request for Admission propounded in Registrant's First Requests for Admission to Petitioner. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar or additional objections or partial responses to individual interrogatories does not waive any of Petitioner's General Objections.

1. Petitioner objects to each Request for Admission to the extent the request is vague, ambiguous, overbroad, or unduly burdensome, or purport to impose upon Petitioner any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by

the Federal Rules of Civil Procedure and the Trademark Rules of Practice, or any other applicable rule.

2. Petitioner objects to the Registrant's First Requests for Admission to the extent they purport to define words or phrases to have a meaning different from their commonly understood meaning, or to include more than their commonly understood definitions.

3. Petitioner objects to each Request for Admission as overbroad and unduly burdensome to the extent that it calls for information that is neither relevant to this proceeding or the claims or defenses of the parties.

4. Petitioner objects to any Request for Admission to the extent it seeks irrelevant information about Petitioner's services or business operations. Such requests are overbroad and unduly burdensome. Petitioner will only respond to Requests for Admission that is relevant to the trademarks subject to this cancellation proceeding, or that is otherwise related to the claims or defenses of the parties asserted by the parties in this proceeding.

5. Petitioner objects to each Request for Admission to the extent that it would impose a duty on Petitioner to undertake a search for or an evaluation of information, documents, or things for which Registrant is equally able to search for and evaluate. In particular, Petitioner objects to each Request for Admission to the extent that it seeks information or documents that are publicly available or in Registrant's possession, custody, and control.

6. Petitioner objects to the Requests for Admission to the extent they seek information that is not in the possession, custody, or control of Petitioner.

7. Petitioner objects to the Requests for Admission to the extent they would require Petitioner to draw a legal conclusion or contention to make a proper response.

8. Petitioner objects to any Request for Admission to the extent that it purports to require identification of oral communications. Such requests are overbroad, vague, ambiguous and unduly burdensome.

9. Petitioner objects to the Requests for Admission to the extent they are not limited in time and seek information for periods of time that are not relevant to any claim or defense in this proceeding.

10. Petitioner objects to Registrant's definition of "PETITIONER", "YOU" and "YOUR" to the extent they purport to include persons or entities that are separate and distinct from Petitioner or are not under Petitioner's control. For the purpose of these responses and objections, the terms "Petitioner", "You" and "Your" refer only to Lisa Alyn.

11. Petitioner objects to Registrant's definition of "REGISTRANT'S MARKS" because it is inaccurate, overly broad, vague, ambiguous, and unduly burdensome. The definition is particularly vague and ambiguous in its use of the phrase "Registrant's Marks *shall include*", and overly broad in attempting to include other trademarks and information other than that cited to the Trademark Office during the prosecutions of the trademarks that are the subject of this Cancellation Proceeding. For the purpose of these responses and objections, the words "Registrant's Marks" means the marks shown in U.S. Registration Nos. 3,101,150 and 3,101,151.

12. Petitioner objects to every Request for Admission that uses the phrase "under the WESTHAVEN mark", "use of the WESTHAVEN mark" or other similar iteration because it is inaccurate, misleading, overly broad, vague, ambiguous and unduly burdensome. Use of these phrases inappropriately assumes that use of the geographically descriptive term Westhaven is a trademark use.

13. Petitioner objects to Registrant's definition of "DOCUMENT" because it is overly broad and unduly burdensome because it would require Petitioner to include in its responses, for example, documents related to trademarks that Registrant may own or claim to own other than the trademarks covered by U.S. Registration Nos. 3,101,150 and 3,101,151; documents and testimony supporting every fact in Petitioner's responses; information and documents that is neither relevant to this proceeding or to the claims or defenses of the parties.

14. Petitioner objects to each Request for Admission to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or discovery immunity.

15. Petitioner provides these objections and responses to the best of her current knowledge. Discovery or further investigation may reveal additional or different information warranting amendment of these objections and responses. Petitioner reserves the right to produce at trial and make reference to any evidence, facts, documents, or information not discovered at this time, omitted through good-faith error, mistake, or oversight, or the relevance of which Petitioner has not presently identified.

16. Petitioner's objections as set forth herein are made without prejudice to Petitioner's right to assert any additional or supplemental objections pursuant to Rule 26(e).

17. Petitioner will make, and has made, reasonable efforts to respond to Registrant's First Requests for Admission, to the extent that no objection is made, as Petitioner reasonably understands and interprets each Request for Admission. If Registrant subsequently asserts any interpretation of any request that differs from the interpretation of Petitioner, then Petitioner reserves the right to supplement and amend its objections and responses.

Subject to the above objections, and without waiving the same, Petitioner now answers and objects to the numbered Request for Admission of Registrant's First Requests for Admission as follows:

1. Admit that the documents and things produced by You in response to Registrant's First Request for Production of Documents are authentic.

**Response:** Unless specifically stated otherwise, Ms. Alyn admits that documents supplied are authentic.

2. Admit that Initial Disclosures were due May 17, 2014.

**Response:** Admit.

3. Admit that You did not serve Initial Disclosures by May 17, 2014.

**Response:** Admit.

4. Admit that prior to commencing use of "WESTHAVEN" as a mark for your real estate services, You were aware of Registrant's use and registration of "WESTHAVEN" in connection with real estate and land development services.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court

proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn admits that she was aware of Southern Land's use of the geographic designation "Westhaven"; just as Ms. Alyn was aware of numerous third parties using the geographic designation "Westhaven" in connection with their services, or to identify locations, places or addresses. Ms. Alyn denies that she was aware of Southern Land's fraudulently-procured registration for the designation "Westhaven."

5. Admit that prior to commencing use of "WESTHAVEN" as a mark for your real estate services, You were aware of Registrant's use and registration of "WESTHAVEN (and design)" in connection with real estate and land development services.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and

without waiving it, Ms. Alyn further objects to this request on the grounds that it assumes that Ms. Alyn uses the designation "Westhaven" as a mark; she does not. Ms. Alyn uses the term "Westhaven" to signify the geographical location in which she lives and provides her services. Subject to these objections, and without waiving them, Ms. Alyn admits that she was aware of Southern Land's use of the geographic designation "Westhaven (and design)"; just as Ms. Alyn was aware of numerous third parties using the geographic designation "Westhaven" in connection with their services, or to identify locations, places or addresses. Ms. Alyn denies that she was aware of Southern Land's fraudulently-procured registration for the designation "Westhaven (and design)."

6. Admit that Registrant created the Westhaven community in Franklin, Tennessee.

**Response:** Ms. Alyn does not have personal information required to admit or deny this request.

7. Admit that before Registrant created the Westhaven community in Franklin, Tennessee, it did not exist.

**Response:** Ms. Alyn objects to this request on the grounds that it is vague and ambiguous. Subject to those objections, and without waiving them, Ms. Alyn responds that the designation "Westhaven" has been used in many instances as a geographical term throughout the United States; Registrant did not "create" the term "Westhaven."

8. Admit that “Westhaven” has no geographical significance under the meaning of the Trademark Act.

**Response:** Deny.

9. Admit that “WESTHAVEN” had no geographical significance in Franklin, Tennessee, in 2002.

**Response:** Deny.

10. Admit that "WESTHAVEN" is a term coined by Registrant.

**Response:** Deny.

11. Admit that Registrant is a land developer.

**Response:** Admit.

12. Admit that Registrant offers real estate services.

**Response:** Ms. Alyn is without sufficient information or knowledge to enable her to admit or deny the request.

13. Admit that Registrant offers real estate services under the mark "WESTHAVEN".

**Response:** Ms. Alyn is without sufficient information or knowledge to enable her to admit or deny the request.

14. Admit that Registrant offers real estate services under the mark "WESTHAVEN (plus design)".

**Response:** Petitioner is without sufficient information or knowledge to enable her to admit or deny the request.

15. Admit that Registrant offers land development services under the mark "WESTHAVEN".

**Response:** Ms. Alyn admits that Registrant offers land development services in or around Westhaven, Franklin, Tennessee; but denies that use of the designation Westhaven is a trademark use.

16. Admit that Registrant offers land development services under the mark "WESTHAVEN (plus design)".

**Response:** Ms. Alyn admits that Registrant offers land development services in or around Westhaven, Franklin, Tennessee; but denies that use of the designation Westhaven is a trademark use.

17. Admit that in 2002, Registrant began offering land development services under the mark "WESTHAVEN".

**Response:** Ms. Alyn objects to this request on the grounds that it improperly assumes that the designation "Westhaven" serves as a trademark; it does not. Subject to that objection, and without waiving it, Ms. Alyn does not have personal information required to admit or deny this request.

18. Admit that in 2002, Registrant began offering land development services under the mark "WESTHAVEN (plus design)".

**Response:** Ms. Alyn objects to this request on the grounds that it improperly assumes that the designation "Westhaven" serves as a trademark; it does not. Subject to that objection, and without waiving it, Ms. Alyn does not have personal information required to admit or deny this request.

19. Admit that in 2002, Registrant began offering real estate services under the mark "WESTHAVEN".

**Response:** Ms. Alyn objects to this request on the grounds that it improperly assumes that the designation "Westhaven" serves as a trademark; it does not. Subject to that objection, and without waiving it, Ms. Alyn does not have personal information required to admit or deny this request.

20. Admit that in 2002, Registrant began offering real estate services under the mark "WESTHAVEN (plus design)".

**Response:** Ms. Alyn objects to this request on the grounds that it improperly assumes that the designation "Westhaven" serves as a trademark; it does not. Subject to that objection, and without waiving it, Ms. Alyn does not have personal information required to admit or deny this request.

21. Admit that prior to 2002, the Westhaven community did not exist in Franklin, Tennessee.

**Response:** Ms. Alyn does not have personal information required to admit or deny this request.

22. Admit that the Westhaven community was designed by Registrant.

**Response:** Ms. Alyn does not have personal information required to admit or deny this request.

23. Admit that the Westhaven community was developed by Registrant.

**Response:** Ms. Alyn does not have personal information required to admit or deny this request.

24. Admit that Registrant selected the mark WESTHAVEN for the name of the community it created in Franklin, Tennessee.

**Response:** Ms. Alyn does not have personal information required to admit or deny this request.

25. Admit that You are using the mark “WESTHAVEN” for your real estate services.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a

term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn admits that she, as well as numerous other third parties, use the geographical term 'Westhaven' to identify a geographical area where she or they provide real estate services.

26. Admit that You are marketing Your real estate services under the mark "WESTHAVEN" in Registrant's Westhaven community.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton*

*Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn admits that she, as well as numerous other third parties, uses the geographical term 'Westhaven' to identify a geographical area where she markets her real estate services.

27. Admit that You have no rights in the mark "WESTHAVEN" for your real estate services.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it; denied. Ms. Alyn has the right to use the geographical term 'Westhaven' in connection with her real estate services.

28. Admit that You are using the mark "WESTHAVEN" to advertise your real estate services.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern

Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn admits that she, as well as numerous other third parties, use the geographical term 'Westhaven' to identify a geographical area where she advertises her real estate services.

29. Admit that you are attempting to sell real estate within Registrant's WESTHAVEN community.

**Response:** Ms. Alyn admits that she sells real estate in and around Westhaven, Franklin, Tennessee.

30. Admit that You have received legal opinion(s) regarding the possible infringement of one or more of Registrant's Marks because of use of the mark WESTHAVEN.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. This is not an infringement proceeding. Ms. Alyn further objects to this request to the extent it seeks information that is subject to the attorney-client privilege or the work product privilege. Subject to

those objections, and without waiving them, Ms. Alyn has not received legal opinions from anyone other than current legal counsel.

31. Admit that You have received legal opinion(s) regarding possible infringement of one or more of Registrant's Marks because of your use of WESTHAVEN in connection with real estate services.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. This is not an infringement proceeding. Ms. Alyn further objects to this request to the extent it seeks information that is subject to the attorney-client privilege or the work product privilege. Subject to those objections, and without waiving them, Ms. Alyn has not received legal opinions from anyone other than current legal counsel.

32. Admit that You have conducted market studies or surveys to measure the consumer impression created by one or more of Registrant's Marks.

**Response:** Deny.

33. Admit that You commenced use of the "WESTHAVEN" mark to increase your real estate sales in Registrant's Westhaven community.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven"

or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn admits to using the designation Westhaven to increase sales in the area known as Westhaven, Franklin, Tennessee.

34. Admit that the services You offer under the WESTHAVEN mark are directly competitive with the services offered under one or more of Registrant's Marks.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn has no personal knowledge or information as to whether Registrant provides real estate services in and around Westhaven Franklin, Tennessee.

35. Admit that You are aware of instances of actual confusion between the source of the your real estate services and those of Registrant.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to those objections, and without waiving them, denied.

36. Admit that You are aware of instances where consumers mistakenly thought that you were affiliated with Registrant.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does

not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to those objections, and without waiving them, denied.

37. Admit that You are aware of instances where consumers mistakenly thought that your services were provided by Registrant.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to those objections, and without waiving them, denied.

38. Admit that You are aware of instances where consumers mistakenly thought that you were employed by Registrant.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to those objections, and without waiving them, denied.

39. Admit that You knowingly adopted Registrant's WESTHAVEN mark.

**Response:** Ms. Alyn objects to this request on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This request does not seek any information relating to geographical significance of the term "Westhaven"

or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to those objections, and without waiving them, denied. Subject to such objection, and without waiving it, Ms. Alyn admits that she knowingly adopted the geographically descriptive term "Westhaven" to describe where her services are offered; Ms. Alyn denies that Southern Land holds exclusive rights to use the geographically descriptive term or that she adopted the geographically descriptive term with the knowledge that Southern Land had fraudulently procured trademark registrations for the term.

Respectfully submitted,

Dated: July 11, 2014

/Brandon J Frank/

___________________

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
Telephone: (504) 322-7166
Facsimile: (504) 322-7184
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras, Suite 1470
New Orleans, Louisiana 70130
Tel: 504-299-3415
Fax: 504-527-5111
E-mail: Brandon@proentertainmentlaw.com

*Attorney for Petitioner, Lisa Alyn*

## CERTIFICATE OF SERVICE

I certify that on this 11 day of July, 2014, a true copy of the foregoing were served on counsel for Registrant, by e-mail and via First Class Mail, postage prepaid, to:

James R. Michels
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2234
Email: randy.michels@stites.com

Mari-Elise Taube
STITES & HARBISON PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
Telephone: (703) 837-3932
Email: mtaube@stites.com

/Brandon J Frank/

________________________________

Brandon J Frank

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | |
|---|---|
| **LISA ALYN**,<br>Petitioner,<br><br>v.<br><br>**SOUTHERN LAND COMPANY, LLC**<br>Registrant. | Cancellation No. 92058638<br><br>U.S. Trademark Reg. Nos. 3,101,150 and 3,101,151 |

## LISA ALYN'S RESPONSE TO SOUTHERN LAND COMPANY'S FIRST SET OF INTERROGATORIES

Lisa Alyn, Petitioner, by and through her undersigned counsel, responds and objects to the Interrogatories issued to the Petitioner by the Registrant, Southern Land Company, LLC, on or about June 6, 2014, and in support of her objection represents as follows:

### GENERAL OBJECTIONS

Under Rules 26 and 33 of the Federal Rules of Civil Procedure and the Trademark Rules of Practice, Petitioner hereby makes the following general responses and objections ("General Objections") to each definition, instruction, and interrogatory propounded in Registrant's First Set of Interrogatories to Petitioner. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar or additional objections or partial responses to individual interrogatories does not waive any of Petitioner's General Objections.

1. Petitioner objects to each Interrogatory and to Registrant's "Definitions" and "Instructions" to the extent they are vague, ambiguous, overbroad, or unduly burdensome, or purport to impose upon Petitioner any duty or obligation that is inconsistent with or in excess of

those obligations that are imposed by the Federal Rules of Civil Procedure and the Trademark Rules of Practice, or any other applicable rule.

2. Petitioner objects to the Registrant's First Set of Interrogatories to the extent they purport to define words or phrases to have a meaning different from their commonly understood meaning, or to include more than their commonly understood definitions.

3. Petitioner objects to each Interrogatory as overbroad and unduly burdensome to the extent that it calls for information that is neither relevant to this proceeding or the claims or defenses of the parties.

4. Petitioner objects to any Interrogatory to the extent it seeks irrelevant information about Petitioner's services or business operations. Such requests are overbroad and unduly burdensome. Petitioner will only produce information that is relevant to the trademarks subject to this cancellation proceeding, or that is otherwise related to the claims or defenses of the parties asserted by the parties in this proceeding.

5. Petitioner objects to each Interrogatory to the extent that it would impose a duty on Petitioner to undertake a search for or an evaluation of information, documents, or things for which Registrant is equally able to search for and evaluate. In particular, Petitioner objects to each Interrogatory to the extent that it seeks information or documents that are publicly available or in Registrant's possession, custody, and control.

6. Petitioner objects to the Interrogatories to the extent they seek information that is not in the possession, custody, or control of Petitioner.

7. Petitioner objects to the Interrogatories to the extent they would require Petitioner to draw a legal conclusion or contention to make a proper response.

8. Petitioner objects to any Definition, Instruction or Interrogatory to the extent that it purports to require identification of oral communications. Such Definition, Instruction or Interrogatory is overbroad, vague, ambiguous and unduly burdensome.

9. Petitioner objects to the Interrogatories to the extent they are not limited in time and seek information for periods of time that are not relevant to any claim or defense in this proceeding.

10. Petitioner objects to Registrant's definition of "PETITIONER", "YOU" and "YOUR" to the extent they purport to include persons or entities that are separate and distinct from Petitioner or are not under Petitioner's control. For the purpose of these responses and objections, the terms "Petitioner", "You" and "Your" refer only to Lisa Alyn.

11. Petitioner objects to Registrant's definition of "REGISTRANT'S MARKS" because it is inaccurate, overly broad, vague, ambiguous, and unduly burdensome. The definition is particularly vague and ambiguous in its use of the phrase "Registrant's Marks *shall include*", and overly broad in attempting to include other trademarks and information other than that cited to the Trademark Office during the prosecutions of the trademarks that are the subject of this Cancellation Proceeding. For the purpose of these responses and objections, the words "Registrant's Marks" means the marks shown in U.S. Registration Nos. 3,101,150 and 3,101,151.

12. Petitioner objects to every Interrogatory that uses the phrase "under the WESTHAVEN mark", "use of the WESTHAVEN mark" or other similar iteration because it is inaccurate, misleading, overly broad, vague, ambiguous and unduly burdensome. Use of these phrases inappropriately assumes that use of the geographically descriptive term Westhaven is a trademark use.

13. Petitioner objects to Registrant's definition of "DOCUMENT" because it is overly broad and unduly burdensome because it would require Petitioner to include in its responses, for example, documents related to trademarks that Registrant may own or claim to own other than the trademarks covered by U.S. Registration Nos. 3,101,150 and 3,101,151; documents and testimony supporting every fact in Petitioner's responses; information and documents that is neither relevant to this proceeding or to the claims or defenses of the parties.

14. Petitioner objects to each Interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or discovery immunity.

15. Petitioner provides these objections and responses to the best of its current knowledge. Discovery or further investigation may reveal additional or different information warranting amendment of these objections and responses. Petitioner reserves the right to produce at trial and make reference to any evidence, facts, documents, or information not discovered at this time, omitted through good-faith error, mistake, or oversight, or the relevance of which Petitioner has not presently identified.

16. Petitioner's objections as set forth herein are made without prejudice to Petitioner's right to assert any additional or supplemental objections pursuant to Rule 26(e).

17. Petitioner will make, and has made, reasonable efforts to respond to Registrant's First Set of Interrogatories, to the extent that no objection is made, as Petitioner reasonably understands and interprets each Interrogatory. If Registrant subsequently asserts any interpretation of any Interrogatory that differs from the interpretation of Petitioner, then Petitioner reserves the right to supplement and amend its objections and responses.

Subject to the above objections, and without waiving the same, Petitioner now answers and objects to the numbered Interrogatories of Registrant's First Set of Interrogatories to Petitioner as follows:

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1**:

Identify (a) the three people most knowledgeable as to the creation, selection, adoption, and use of WESTHAVEN by You and (b) the three people most knowledgeable as to the services provided by You under the WESTHAVEN mark.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 1:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Lisa Alyn and Becky Best.

**INTERROGATORY NO. 2**:

Identify and describe in detail each service offered by You under the mark WESTHAVEN and identify and describe in detail where these services are offered.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 2:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn is a licensed real estate agent in the state of Tennessee and provides real estate services in and around Westhaven Franklin Tennessee.

**INTERROGATORY NO. 3**:

Explain the basis for and identify all facts which evidence, support, refer or relate to the good faith use of the WETSHAVEN mark by You.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 3:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of

Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn uses the designation Westhaven to identify a geographical location in which she provides real estate services. Ms. Alyn uses the designation Westhaven similar to other third parties uses of said designation to refer to places, addresses or locations in and around Westhaven, Franklin, Tennessee.

**INTERROGATORY NO. 4**:

State the reasons for Your selection of the WESTHAVEN mark for use on or in connection with real estate services and identify the person(s) who first suggested, proposed, recommended, conceived of, or suggested use of the WESTHAVEN mark in connection with these services.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 4:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern

Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn selected "Westhaven" to refer to a location or area where she provides her real estate services.

**INTERROGATORY NO. 5**:

Describe in detail all steps which were taken in connection with creation and adoption of Petitioner's Mark, and identify all documents which relate to creation and adoption of Petitioner's Mark.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 5:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement

and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn did not create the Westhaven designation; rather she uses the designation to refer to a location where she lives and provides real estate services.

**INTERROGATORY NO. 6**:

Identify and describe in detail the channels of trade in the United States that You use or intend to use to offer and promote your real estate services under the WESTHAVEN mark.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 6:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn provides her real estate services in and around Westhaven Franklin Tennessee.

**INTERROGATORY NO. 7**:

Identify Your target purchasers for the services offered under the WESTHAVEN mark.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 7:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Ms. Alyn offers real estate services to individuals who want to purchase a home, as well as to individuals who want to sell their home in and around Westhaven, Franklin, Tennessee.

**INTERROGATORY NO. 8**:

Identify (a) the three persons most knowledgeable as to the advertising or the plans for advertising Your services under the WESTHAVEN mark and (b) documents showing the sales and plans for sales and advertising and plans for advertising under the WESTHAVEN mark.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 8:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently

represented to the USTPO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Lisa Alyn and Becky Best are most knowledgeable about advertising Ms. Alyn's real estate services in and around Westhaven, Franklin, Tennessee.

**INTERROGATORY NO. 9**:

Identify all documents in the possession, custody or control of You referring or relating to Registrant and Registrant's Marks.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 9:**

In addition to the general objections, Ms. Alyn objects to this interrogatory on the ground that is overbroad, harassing and unduly burdensome because it requires Ms. Alyn to produce any and all documents that refer or relate to or contain the term Westhaven.

**INTERROGATORY NO. 10**:

Identify all documents in the possession, custody or control of Petitioner relating to Registrant's services sold under Registrant's Marks.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 10:**

In addition to the general objections, Ms. Alyn objects to this interrogatory on the grounds that it is overbroad, harassing and unduly burdensome. Subject to this objection, and

without waiving it, Ms. Alyn has no documents responsive to this request other than documents that are publicly available, for example, information contained on Registrant's website and on the trademark registrations subject to this proceeding.

**INTERROGATORY NO. 11**:

Identify all persons who participated in any way in the preparation of the responses to these interrogatories, Registrant's First Set of Requests for Production of Documents and Things, and Registrant's First Set of Requests for Admissions, and for each person, identify the responses for which the person provided information (excluding only Petitioner's outside counsel and/or their representatives).

**RESPONSE AND OBJECTIONS TO INTERROGATORY 11:**

Lisa Alyn.

**INTERROGATORY NO. 12**:

State whether Petitioner has requested or received or has knowledge of any opinions, legal or otherwise, of any type regarding the right to use the WESTHAVEN mark or the registrability of the mark WESTHAVEN by Petitioner. If Your answer to this question is anything other than an unqualified "No", (a) identify the person or persons requesting each such opinion, (b) identify the person or persons rendering each such opinion, and (c) identify all documents relating to the opinion.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 12:**

Ms. Alyn objects to this request to the extent it seeks information that is subject to the attorney-client privilege or the work product privilege. Subject to those objections, and without waiving them, Ms. Alyn has not received legal opinions from anyone other than current legal counsel.

**INTERROGATORY NO. 13**:

Describe all steps taken by You to determine whether the mark WESTHAVEN was available for use by You and would not conflict with any prior used or registered mark or name, and identify the three persons who are most knowledgeable as to the steps taken to determine availability of the mark and all related documents.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 13:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Subject to this objection, and without waiving it, Petitioner submits that she did not make a "formal determination" regarding the availability of the Westhaven designation for use (1) because it's a geographically descriptive term, (2) because of the widespread third party use of the designation Westhaven indicates that it is available for use, and (3) when Ms. Alyn registered the www.westhavenfranklin.com and www.westhavenfranklin.net domain names she informed Southern Land and Southern Land did not object to her use of the designation Westhaven.

**INTERROGATORY NO. 14**:

State the date that you first offered services under the mark WESTHAVEN by You.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 14:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011). Petitioner further objects on the ground that the question assumes that Ms. Alyn's use of the designation Westhaven serves as a trademark, but it does not. Ms. Alyn has offered real estate services in and around Westhaven Franklin Tennessee since 2006.

**INTERROGATORY NO. 15**:

Identify all agreements relating to Your use of the mark WESTHAVEN and services offered or to be offered under the mark WESTHAVEN, including without limitation agreements relating to advertising of the services offered under the WESTHAVEN mark, assignments, licenses, authorizations, permissions or consents.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 15:**

Ms. Alyn objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in these proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the USPTO that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. This interrogatory does not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. See Trademark Rule 402 ("The scope of discovery in Board proceedings, though, is generally narrower than in court proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks", *citing, Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011).

**INTERROGATORY NO. 16**:

For each expert that Petitioner has retained to give testimony in this proceeding, provide the information required in Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 16:**

Petitioner has not retained experts but reserve the right to do so under scheduling order.

**INTERROGATORY NO. 17**:

With respect to each Request for Admission as to which Your response is anything other than an unequivocal admission, please state all facts upon which You base that response.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 17:**

Petitioner objects to this interrogatory on the grounds that is overbroad, harassing, irrelevant, and unduly burdensome because it could include, for example, privileged information,

mental impressions and information beyond the scope of the Federal Rules of Civil Procedure and the Trademark Rules of Practice, or any other applicable rule.

**INTERROGATORY NO. 18**:

For each of the allegations in the Complaint, state the factual basis on which You intend to rely to prove each of these allegations and identify all the documents on which You will rely to support these allegations.

**RESPONSE AND OBJECTIONS TO INTERROGATORY 18:**

Petitioner objects to this interrogatory on the grounds that is overbroad, harassing, irrelevant, and unduly burdensome because it could include, for example, privileged information, mental impressions and information beyond the scope of the Federal Rules of Civil Procedure and the Trademark Rules of Practice, or any other applicable rule.

Respectfully submitted,

Dated: July 11, 2014

/Brandon J Frank/

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
Telephone: (504) 322-7166
Facsimile: (504) 322-7184
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras, Suite 1470
New Orleans, Louisiana 70130
Tel: 504-299-3415
Fax: 504-527-5111
E-mail: Brandon@proentertainmentlaw.com

*Attorney for Petitioner, Lisa Alyn*

## CERTIFICATE OF SERVICE

I certify that on this 11 day of July, 2014, a true copy of the foregoing were served on counsel for Registrant, by e-mail and via First Class Mail, postage prepaid, to:

James R. Michels
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2234
Email: randy.michels@stites.com

Mari-Elise Taube
STITES & HARBISON PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
Telephone: (703) 837-3932
Email: mtaube@stites.com

/Brandon J Frank/

---

Brandon J Frank

**STITES & HARBISON** PLLC
ATTORNEYS

**EXHIBIT C**

SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2405
(615) 244-5200
(615) 782-2371 FAX
www.stites.com

James R. Michels
(615) 782-2234
(615) 742-7215 FAX
randy.michels@stites.com

August 8, 2014

**VIA EMAIL ONLY**

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras Street, Suite 1470
New Orleans, Louisiana 70130

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170

Re: ***Lisa Alyn v. Southern Land Company, LLC***
**Cancellation No. 92058638**

Dear Brandon and Greg:

We have reviewed Petitioner's Responses to Registrant's First Set of Interrogatories, Petitioner's Responses to Registrant's First Request for Production of Documents and Things, and Petitioner's Responses to Registrant's First Requests for Admissions. As detailed below, Petitioner's discovery responses are woefully deficient.

As an initial matter, the Board expects parties and their attorneys to cooperate in the discovery process. TBMP § 408.01. Parties and their attorneys have a duty to make a good faith effort to satisfy the discovery needs of their adversaries. *Id.*; *see also Johnson Pump/General Valve Inc. v. Chromalloy American Corp.*, 10 USPQ2d 1671, 1674 (TTAB 1988). Petitioner has refused to provide entire categories of information and documents that bear on the issues in this proceeding, namely Registrant's ownership and rights in its WESTHAVEN marks, the validity of U.S. Registration Nos. 3,101,150 and 3,101,151, and Petitioner's awareness of Registrant and Registrant's ownership and rights in its marks. Also at issue in this proceeding are the likelihood of confusion factors set forth in *In re E.I. DuPont DeNemours & Co*., 177 USPQ 563 (CCPA 1973), since Petitioner claims to be injured by the continued existence of Registrant's marks on the principal register.

We write in a good faith effort to resolve disputes arising from Petitioner's deficient discovery responses and address the deficient responses below *seriatim* by subject matter area. We request that your client provide supplemental responses and/or documents to address these deficiencies at your earliest convenience, **but no later than August 22, 2014**.

**Requests for Admission**

We note that your response to numerous Requests for Admission was “Petitioner is without sufficient information or knowledge to enable her to admit or deny the request.” Specifically, you responded with this answer to Request Nos. 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, and 34. This response is insufficient. Pursuant to Fed. R. Civ. P. and TMBP § 407.03(b), a party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that it has made a reasonable inquiry and that the information known or readily obtainable by the party to admit or deny the request. Your client’s responses do not comply with the requirements of these rules, and we request that Ms. Alyn supplement her responses. On a related note, you stated that Interrogatory No. 17 was “burdensome” and “irrelevant.” We disagree. Interrogatory No. 17 states, “With respect to each Request for Admission as to which Your response is anything other than an unequivocal admission, please state all facts upon which You base that response.” The Requests for Admission are all directed to information that is relevant to the claims and defenses in this proceeding. Accordingly, please supplement your response to Interrogatory No. 17 and provide the requested information to which my client is entitled.

**Discovery Directed to Sales and Advertising Information**

We have requested information and documents reflecting sales and advertising figures for Petitioner’s services offered under the WESTHAVEN mark at issue. Annual sales and advertising figures, stated in round numbers, for a party’s involved goods or services sold under its involved mark are proper matters for discovery. TBMP § 414(18); *see American Optical Corp. v. Exomet, Inc.*, 181 USPQ 120, 123 (TTAB 1974). Accordingly, please provide amended responses to the following discovery requests:

> Request No. 14 Produce all documents showing or relating to sales of the Your services under the mark WESTHAVEN.
>
> Request No. 16 Produce all documents relating to the costs of advertising already implemented for any and all services offered under the mark WESTHAVEN by You.
>
> Request No. 18 Produce all documents relating to sales strategies for the services offered under the mark WESTHAVEN by You.

> Request No. 34 Produce all documents reflecting or regarding the dollar value of sales or projected sales of the services offered by You under the WESTHAVEN mark, including but not limited to documents reflecting or discussing how such projected sales numbers were determined
>
> Request No. 35 Produce all documents showing the amount of money budgeted and/or expended to date to promote the services offered by You under the WESTHAVEN mark.

**Discovery Directed to Petitioner's Advertising and Promotion**

We have asked for representative samples of marketing materials and comprehensive information regarding Petitioner's advertising and sales strategies for its services. Marketing materials and channels of advertising are directly relevant to the legal issues in this proceeding and are thus discoverable. In particular, these requests bear on Petitioner's knowledge of Registrant and Petitioner's use of Registrant's marks, which pertain directly to Petitioner's defenses in the proceeding. Please supplement your responses to the following requests:

> Interrogatory No. 8 Identify (a) the three persons most knowledgeable as to the advertising or the plans for advertising Your services under the WESTHAVEN mark and (b) documents showing the sales and plans for sales and advertising and plans for advertising under the WESTHAVEN mark.
>
> Request No. 15 Produce all documents showing or relating to the advertising of Your services under the mark WESTHAVEN.
>
> Request No. 17 Produce representative samples of all advertising which has been implemented and representative samples of all planned advertising for the services offered by You under the mark WESTHAVEN.
>
> Request No. 18 Produce all documents relating to sales strategies for the services offered under the mark WESTHAVEN by You.
>
> Request No. 19 Produce all documents relating to the advertising strategies for the services offered under the mark WESTHAVEN by You.

We note that in response to Interrogatory No. 8, listed above, while Ms. Alyn did list herself and Becky Best as the individuals most knowledgeable as to plans pertaining to advertising, Ms. Alyn neglected to list a third individual and failed to acknowledge her duty to identify documents showing the sales and plans for sales and advertising and plans for advertising under the WESTHAVEN mark. We ask that Ms. Alyn amend her response to Interrogatory No. 8 to comply with her discovery obligations to identify documents.

**Discovery Directed to Petitioner's Channels of Trade**

We have requested and are entitled to documents that evidence the channels of trade through which Petitioner sells her services. Specific information regarding Petitioner's sales channels are relevant to an *inter partes* proceeding before the Board. TBMP § 414(16). Accordingly, supplement the response to the interrogatory listed below and please produce the documents requested below:

> Interrogatory No. 6 Identify and describe in detail the channels of trade in the United States that You use or intend to use to offer and promote your real estate services under the WESTHAVEN mark.
>
> Request No. 23 Produce all documents related to the channels of trade and distribution in the United States that You use or intend to use for the offering of Your services under the mark WESTHAVEN.

**Discovery Directed to Agreements Involving Petitioner's Mark**

The existence of Petitioner's agreements including licensees and terms of related agreements are also relevant and discoverable in this proceeding. *See Johnston Pump/General Valve Inc. v. Chromalloy American Corp.*, 10 USPQ2d 1671, 1675 (TTAB 1988) (licensing agreements and arrangements between Opposer and third-parties are relevant). Accordingly, please provide amended responses to the following discovery requests:

> Interrogatory No. 15 Identify all agreements relating to Your use of the mark WESTHAVEN and services offered or to be offered under the mark WESTHAVEN, including without limitation agreements relating to advertising of the services offered under the WESTHAVEN mark, assignments, licenses, authorizations, permissions or consents.

> Request No. 24 To the extent that documents have not been produced in response to the preceding document requests, produce all documents showing any and all agreements related to the mark WESTHAVEN, including without limitation, agreements relating to advertising under the mark, assignments, licenses, authorizations, permissions or consents.

**Discovery Directed to Selection and Adoption of Petitioner's Mark**

We have requested documents and things related to the creation, selection and adoption of Petitioner's mark, including any non-privileged search materials. As you are likely aware, information concerning a party's selection and adoption of its involved mark, including those directing mark selection, is discoverable. TBMP § 414(4); *Volkswagenwerk Aktiengesellschaft v. MTD Products Inc.*, 181 USPQ 471, 473 (TTAB 1974) (identification of persons who suggested use of involved mark on involved goods is not improper); *Goodyear Tire & Rubber Co. v. Tyrco Industries*, 186 USPQ 207, 208 (TTAB 1975) (whether applicant received opinions concerning adoption of mark is not privileged and applicant must identify person, date and documents relating thereto). We note that in response to Interrogatory No. 1, Ms. Alyn only provided the names of two individuals rather than the requested three. We also note, in response to Request No. 1, Ms. Alyn claimed to have no documents pertaining to the selection and adoption of the WESTHAVEN mark. We find this extremely difficult to believe, and remind you of Ms. Alyn's duty to thoroughly search her records for all information properly sought in each of the discovery requests. With this duty in mind, please supplement your responses to the discovery requests listed below:

> Interrogatory No. 1 Identify (a) the three people most knowledgeable as to the creation, selection, adoption, and use of WESTHAVEN by You and (b) the three people most knowledgeable as to the services provided by You under the WESTHAVEN mark.

> Interrogatory No. 4 State the reasons for Your selection of the WESTHAVEN mark for use on or in connection with real estate services and identify the person(s) who first suggested, proposed, recommended, conceived of, or suggested use of the WESTHAVEN mark in connection with these services.

> Interrogatory No. 5: Describe in detail all steps which were taken in connection with creation and adoption of Petitioner's Mark, and identify all documents which relate to creation and adoption of Petitioner's Mark.

> Request No. 2 Produce all documents related to your creation, selection and adoption of the WESTHAVEN mark, including without limitation search reports, market surveys, emails and interoffice memoranda.

> Request No. 10 Produce all documents relating to the reasons for Your selection of the WESTHAVEN mark in connection with Your real estate services.

> Request No. 44 Produce all documents that relate to every other alternative mark which was considered for adoption and use in connection with Your real estate services

**Discovery Directed to First Use the WESTHAVEN Mark**

We have requested documents related to the first use of your client's mark. Information concerning a party's first use of its mark is discoverable. TBMP § 414(5); *Georgia Pacific Corp. v. Great Plains Bag Co.*, 190 USPQ 193, 195-96 (TTAB 1976). Please provide the documents and things requested below:

> Request No. 20 Produce all documents relating to the date the mark WESTHAVEN was first used by You in connection with real estate services

> Request No. 21 Produce all documents, as applicable, relating to the first property sold under the mark WESTHAVEN by You.

As to the requests above, we note that in response to Interrogatory No. 14, you state that Ms. Alyn first offered services under the mark WESTHAVEN in 2006, yet you objected to the above requests and refused to provide responses. Petitioner is entitled to clear and consistent responses. Please modify your responses to the above requests to comply with your obligations under the Board's rules.

**Discovery Directed to Legal Opinions Received by Ms. Alyn**

Your have refused to provide information about legal opinions received by your client and have refused to identify documents relating to the legal opinions received. While your client states in response to Interrogatory No. 12 that she has not obtained any legal opinions from anyone other than you, she fails to even acknowledge her duty to identify documents pertaining to the legal opinions that you have provided. We demand that you supplement your response to Interrogatory No. 12, which, for your convenience, has been listed below. The identification of discovery documents (as opposed to their substance) is not privileged or confidential. TBMP § 414(1); *see Goodyear Tire & Rubber Co.*, 186 USPQ at 208 (fact that client received legal opinions and identity of documents related thereto, not privileged). Please amend your response to the following:

> Interrogatory No. 12 State whether Petitioner has requested or received or has knowledge of any opinions, legal or otherwise, of any type regarding the right to use the WESTHAVEN mark or the registrability of the mark WESTHAVEN by Petitioner. If Your answer to this question is anything other than an unqualified "No", (a) identify the person or persons requesting each such opinion, (b) identify the person or persons rendering each such opinion, and (c) identify all documents relating to the opinion

**Discovery Directed to Target Customers**

We have requested information and documents that indicate Ms. Alyn's target customers The classes of customers for a party's involved goods or services are discoverable. TBMP § 414(3); *see J.B. Williams Co. v. Pepsodent G.m.b.H.*, 188 USPQ 577, 580 (TTAB 1975) (must identify class of customers who purchase products under mark). Accordingly, please provide amended responses to the following discovery requests:

> Interrogatory No. 7 Identify Your target purchasers for the services offered under the WESTHAVEN mark.

> Request No. 31 Produce all documents reflecting or regarding the buyers of the services offered by You under the WESTHAVEN mark.

**Petitioner's Knowledge of Registrant and Registrant's Marks**

As you are likely aware, information concerning a party's knowledge of the opposing party's use of that party's mark is discoverable in Board proceedings. TBMP § 414 (19); *see Volkswagenwerk Aktiengesellschaft v. MTD Products Inc.*, 181 USPQ 471 (TTAB 1974). Please supplement your responses to the following discovery requests:

> Interrogatory No. 9 Identify all documents in the possession, custody or control of You referring or relating to Registrant and Registrant's Marks.
>
> Interrogatory No. 10 Identify all documents in the possession, custody or control of Petitioner relating to Registrant's services sold under Registrant's Marks.
>
> Request No. 6 Produce all documents in your possession that refer to Registrant.
>
> Request No. 7 Produce all documents in your possession that refer to Registrant's Marks.
>
> Request No. 8 Produce all documents relating to Your knowledge of Registrant's intellectual property protection for Registrant's Marks.
>
> Request No. 25 Produce all documents related to Petitioner's knowledge of Registrant and any or all of the Registrant's Marks.
>
> Request No. 26 Produce all documents related to Petitioner's knowledge of services offered by Registrant under any or all of Registrant's Marks.

We note that you have provided inconsistent responses to Interrogatory No. 9 and Request No. 6 and 7. In response to Interrogatory No 9, you state that you have no documents that refer or relate to Registrant, which we know is simply untrue, yet you say that it would be overly burdensome to produce documents that identify Registrant and Registrant's marks in response to Registrant's Requests. Which is it? Registrant is entitled to clear and consistent responses. These are not the only discovery requests where Petitioner has provided inconsistent answers. This is unacceptable. Please modify the responses accordingly.

**Petitioner's Use of the Mark on Petitioner's Services**

As you are no doubt aware, information that a party sells the same goods or services as the propounding party is relevant. TBMP § 414 (11). Parties must provide discovery with respect to those of its marks and services that are involved in the proceeding. *Id.* Accordingly, please supplement your responses to the following discovery requests:

> Interrogatory No. 2 Identify and describe in detail each service offered by You under the mark WESTHAVEN and identify and describe in detail where these services are offered.
>
> Request No. 4 Produce all documents which relate or refer to Your use of the WESTHAVEN mark in connection with real estate.

Additionally, we must bring it to your attention that Petitioner has objected to a large number of Registrant's discovery requests on the basis of relevance. We remind you that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence and description of any relevant documents. Relevant information includes any discovery reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

In conclusion, Registrant has refused to provide entire categories of information and documents that bear on the validity of its claims, on Registrant's defenses in this matter, and on the presence or absence of a likelihood of confusion under the facts set forth in *In re E.I. duPont DeNemours & Co.*, 177 USPQ 563 (CCPA 1973). These deficiencies must be promptly remedied in order to avoid Board involvement in this matter.

Additionally, I note that your Initial Disclosures have yet to be produced. These disclosures were due on May 17, 2014. Ms. Alyn admitted in her Responses to Registrant's First Requests for Admission that she did not provide Initial Disclosures. If Ms. Alyn refuses to produce Initial Disclosures, Southern Land will be left with no choice but to file a motion to compel, and ultimately, a motion for discovery sanctions. *See* 7 CFR § 2.120(e); 37 CFR § 2.120(g)(1); *See also Luster Products Inc. v. Van Zandt*, 104 USPQ2d 1877, 1878-79 (TTAB 2012) (motion to compel is available remedy for failure to serve, or insufficient, initial disclosures).

Finally, you are reminded of your client's ongoing duty to search and to supplement discovery responses imposed by TBMP § 408.02 ("a responding party which, due to an incomplete search of its records, provides an incomplete response to a discovery request, may not thereafter rely at trial on information from its records which was properly sought in the

discovery request but was not included in the response thereto"). We ask that Petitioner supplement the discovery responses to include any newly discovered, responsive information or documents during the course of the proceeding.

You are also reminded of your client's duty to sign her responses to Registrant's First Set of Interrogatories. Pursuant to Fed. R. Civ. P. 33(b)(5), the person who makes the answers must sign them, and the attorney who objects must sign any objections. In her response to Interrogatory No. 11, Ms. Alyn confirmed that she answered the Interrogatories. **Please produce a copy of her signed verification as soon as possible.**

Should you have any questions about anything contained in this letter, I invite you to contact me at your convenience. We look forward to resolving these discovery disputes amicably and professionally.

Regards,

James R. Michels

cc: Mari-Elise Taube

STITES & HARBISON PLLC
ATTORNEYS

SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2405
(615) 244-5200
(615) 782-2371 FAX
www.stites.com

September 17, 2014

James R. Michels
(615) 782-2234
(615) 742-7215 FAX
randy.michels@stites.com

**VIA EMAIL ONLY**

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras Street, Suite 1470
New Orleans, Louisiana 70130

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170

Re: ***Lisa Alyn v. Southern Land Company, LLC***
**Cancellation No. 92058638**

Dear Brandon and Greg:

We are in receipt of your email dated August 22, 2014, and remain unpersuaded by your comments as to why Ms. Alyn's responses are not deficient. We write to once again attempt to resolve the discovery dispute without Board intervention. However, if Ms. Alyn's responses are not satisfactorily supplemented by Wednesday, September 24, then Southern Land will have no choice but to file a Motion to Compel with the Board.

We remind you that the Board expects parties and their attorneys to cooperate in the discovery process, and that parties and counsel have a duty to make a good faith effort to satisfy the discovery needs of their adversaries. TBMP § 408.01. The scope of discovery in a Board proceeding is governed by Fed. R. Civ. P. 26(b)(1), which provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to ***any party's*** **claim** or defense." Fed. R. Civ. P. 26(b)(2) (emphasis added). Paragraph 14 of Petitioner's Petition for Cancellation states that "Petitioner will be damaged by the continued existence of United States Trademark Registration No. 3,101,151 and No. 3,101,150 because they will give color of rights to the Respondent and will continue to be an impediment to Petitioner's ability to use 'Westhaven' in regard to her business services and advertising." In its Answer, Southern Land Company denied this allegation. Since Petitioner claimed that she will be damaged by the continued existence of Registrant's marks on the principal register, under the Federal Rules of Civil Procedure, Respondent is entitled to take discovery on this claim.

Furthermore, your email of August 22, 2014, inaccurately states that Southern Land's standing does not deny Ms. Alyn's standing. This is not true. As noted above, Southern Land's Answer very clearly denies that Petitioner will be damaged by the continued existence of United States Trademark Registration No. 3,101,151 and No. 3,101,150 because they will give color of rights to the Respondent and will continue to be an impediment to Petitioner's ability to use 'Westhaven' in regard to her business services and advertising. *See* Answer, ¶ 14. Ms. Alyn would only be injured by the continued existence of U.S. Registration Nos. 3,101,151 and 3,101,150 if Ms. Alyn intended to use WESTHAVEN and WESTHAVEN (plus design) as a trademark. If Ms. Alyn intended to use WESTHAVEN in a descriptive sense, then she would not be injured by the continued existence of U.S. Registration Nos. 3,101,151 and 3,101,150 on the principal register. Therefore, the likelihood of confusion factors are at issue and relevant to Ms. Alyn's claim to be injured by Southern Land's registrations.

The rule contemplates liberal discovery. *See* TBMP § 402.02. It is a general rule that parties are entitled to seek discovery as they may deem necessary to help them prepare for trial. *See Dow Corning Corp. v. The Doric Corp.*, 183 USPQ 377, 378 (TTAB 1974). The information sought in Southern Land's discovery requests pertaining to Petitioner's claims that she will be injured by the continued existence of Registrant's marks on the principal register will help Respondent prepare for discovery. Injury to the Petitioner is relevant to the issues in this proceeding.

Petitioner continues to refuse to provide entire categories of information and documents that bear on the issues in this proceeding, namely Registrant's ownership and rights in its WESTHAVEN marks, the validity of U.S. Registration Nos. 3,101,150 and 3,101,151, and Petitioner's awareness of Registrant and Registrant's ownership and rights in its marks, all of which are relevant to the claims and defenses in this proceeding. Petitioner is entitled to discovery on these topics, since they are relevant to the claims and defenses in the action.

Additionally, Ms. Alyn's Initial Disclosures are deficient. Though these disclosures were due on May 17, 2014, we did not receive Ms. Alyn's bare-bone disclosures until August 26, 2014. Pursuant to Fed. R. Civ. P. 26(a)(1), Initial Disclosures must include the name, address, and telephone number of each individual likely to have discoverable information, along with the subjects of information, that the disclosing party may use to support its claims and defenses. Initial Disclosures must also include a copy (or a description by category and location) of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1). Ms. Alyn's Initial Disclosures do not disclose the subjects of information for which each individual disclosed has personal knowledge, and they also fail to include a copy of the listed documents. If Ms. Alyn does not want to provide copies of the documents disclosed in the

STITES & HARBISON PLLC
ATTORNEYS



Initial Disclosures, she must at least supplement the disclosures to state the location of the listed documents.

You are also once again reminded of your client's duty to sign her responses to Registrant's First Set of Interrogatories. Pursuant to Fed. R. Civ. P. 33(b)(5), the person who makes the answers must sign them, and the attorney who objects must sign any objections. Your email of August 22, 2014, states that Ms. Alyn will provide a signed verification of her discovery responses within a week from that date. We have yet to receive the signed verification. Please produce a copy of her signed verification as soon as possible. Similarly, your email states that Ms. Alyn will supplement her responses to Southern Land's requests for admissions. Despite this representation, we have not yet received her supplemental responses.

We remain hopeful that we can resolve these discovery disputes amicably and professionally. We reiterate our request that your client provide supplemental responses and/or documents to address the deficiencies outlined in our letter of August 8, 2014, as well as supplemental initial disclosures, at your earliest convenience, **but no later than September 24, 2014**.

Regards,

James R. Michels

cc: Mari-Elise Taube

EXHIBIT D

## Taube, Mari-Elise

**From:** Greg Latham <glatham@iplawconsulting.com>
**Sent:** Friday, August 22, 2014 5:06 PM
**To:** Michels, James R.; Taube, Mari-Elise
**Cc:** brandon@proentertainmentlaw.com
**Subject:** RE: Lisa Alyn v. Southern Land Company - Discovery Deficiencies

Randy:

I am writing in response to your August 8, 2014 letter regarding Ms. Alyn's discovery responses. We respectfully disagree with Southern Land's statement that Ms. Alyn's responses are deficient; Ms. Alyn will not be supplementing her responses except as specifically set forth below.

The August 8th letter fails to consider the limited scope of the current proceedings. Ms. Alyn has moved for cancellation of Southern Land's trademark registrations on the grounds that Southern Land fraudulently represented to the Board that the term "Westhaven" has no geographical significance; Southern Land has answered that the term "Westhaven" is a term coined by Southern Land and is not geographically significant. The discovery requests that Southern Land complains are deficient do not seek any information relating to geographical significance of the term "Westhaven" or to Ms. Alyn's allegations of fraud by Southern Land. Rather, those discovery requests wrongfully attempt to broaden this proceeding into something akin to an infringement lawsuit.

The August 8th letter states that the likelihood of confusion factors are at issue since Ms. Alyn claims to be injured by Southern Land's marks. The requirement that Ms. Alyn allege injury relates only to whether Ms. Alyn has standing to bring these Opposition proceedings. Southern Land's Answer does not deny Ms. Alyn's standing; it is not an issue as this case moves forward. As a result, discovery requests aimed at the issue of standing are not relevant.

We have thoroughly reviewed each Board decision cited in the August 8th letter; in each decision, the parties were engaged in a dispute regarding likely confusion. Obviously, the scope of discovery is significantly broader where confusion is at issue. In this proceeding, there are no claims or defenses that rely upon a showing of confusion (or a lack of confusion). The cited cases are inapposite because the factual scenarios underlying those discovery disputes were very different than the circumstances here. Additionally, the repeated, vague citations to Section 414 of the TBMP does not support Southern Land's position; Section 414 primarily pertains to likelihood of confusion claims under Section 2(d).

Ms. Alyn will agree to supplement her responses in two manners requested by Southern Land. First, Ms. Alyn will provide a signed verification of her discovery responses; we will have that to you next week. Second, Ms. Alyn will supplement her responses to Southern Land's admission requests to state, where applicable, that she has made a reasonable inquiry and that the information she knows or can readily obtain is insufficient to enable her to admit or deny the request.

Please let us know if you would like to discuss this further.

---

Greg Latham
Intellectual Property Consulting

glatham@iplawconsulting.com
Phone: 504.322.7166
Fax: 504.322.7184

**From:** Michels, James R. [mailto:randy.michels@stites.com]
**Sent:** Friday, August 08, 2014 3:41 PM
**To:** brandon@proentertainmentlaw.com; Greg Latham
**Cc:** Taube, Mari-Elise
**Subject:** Lisa Alyn v. Southern Land Company - Discovery Deficiencies

Brandon and Greg,

Please see the attached letter regarding Lisa Alyn's discovery deficiencies.

As noted in the letter, we are asking that your client cure the deficiencies by August 22. We also request a copy of the signed verification for the answers to interrogatories. In addition, your client's Initial Disclosures are long overdue. Please produce them.

Thanks,

Randy

**James ("Randy") Michels**
*Member*
*Direct: 615-782-2234*
*Fax: 615-742-7215*
*randy.michels@stites.com*
STITES & HARBISON PLLC
401 Commerce Street, Suite 800, Nashville, TN 37219
**About Stites & Harbison | Bio | V-Card**

LinkedIn | Twitter | Blog

**NOTICE:**This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

**EXHIBIT E**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Lisa Alyn<br>Petitioner,<br><br>v.<br><br>Southern Land Company, LLC<br>Registrant. | Opposition No. 92058638<br><br>U.S. Trademark Reg. Nos. 3,101,151 and 3,101,151 |

**LISA ALYN'S RULE 26(a)(1) INITIAL DISCLOSURES**

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Lisa Alyn ("Petitioner") provides the following initial disclosures:

**I. Individuals Likely to Have Discoverable Information Supporting Petitioner's claim:**

1. Lisa Alyn

   Through undersigned counsel

   Ms. Alyn has personal knowledge of the facts alleged in Ms. Alyn's Complaint.

2. Becky Best

   Through undersigned counsel

   Ms. Best, an employee of the Petitioner, has personal knowledge of facts alleged in Petitioner's Complaint.

3. Joanne Arunst

   Through undersigned counsel

   Ms. Arunst, an employee of the Petitioner, has personal knowledge of facts alleged in Petitioner's Complaint.

4. Mary Lee Bennett

   Through Respondent's counsel

   Petitioner believes Ms. Bennett, an employee of Southern Land Company, LLC ("Respondent"), has personal knowledge of facts alleged in Petitioner's Complaint.

5. Brian Sewall

   Through Respondent's counsel

   Petitioner believes Mr. Sewall, an employee of Respondent, has personal knowledge of facts alleged in Petitioner's Complaint.

6. Tim Downey

   Through Respondent's counsel

   Petitioner believes Mr. Downey, an employee of Respondent, has personal knowledge of facts alleged in Petitioner's Complaint.

7. James R. Michels

   Through Respondent's counsel

   Mr. Michels is an attorney for Respondent. He signed the application that Petitioner believes is fraudulent.

8. Dianne Balciar

   5111 Maryland Way, Brentwood, TN 37027

   Ms. Balciar is a real estate agent who also uses the WESTHAVEN mark.

## II. Documents By Category Supporting Petitioner's Claims

1. United States Patent and Trademark Office documents evidencing Southern Land's fraudulently obtained trademark registration;

2. Documents evidencing Southern Land's selection and development of the term Westhaven for its planned community;
3. Printouts of the website operated by Southern Land at <westhaventn.com> demonstrating the use of the term Westhaven in a geographical sense;
4. Printouts of Ms. Alyn's website and other marketing materials evidencing use of the term Westhaven;
5. Documents evidencing Southern Land's knowledge of Lisa Alyn's use of the term Westhaven;
6. Printout of the WHOIS registration data for Ms. Alyn's domain names;
7. Documents evidencing third party use of the term Westhaven;

**II. Computation of Damages**

Not applicable.

**IV. Insurance**

Not applicable.

Respectfully submitted,

Dated: August 26, 2014

/s/ Greg Latham

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
Telephone: (504) 322-7166
Facsimile: (504) 322-7184
E-mail: glatham@iplawconsulting.com

*Attorney for Petitioner, Lisa Alyn*

## CERTIFICATE OF SERVICE

I certify that on this 26th day of August, a true copy of the above Lisa Alyn's Rule 26(a)(1) Initial Disclosures were served via e-mail on Respondent's counsel at the following addresses:

James R. Michels
Stites & Harbison PLLC
401 Commerce St., Suite 1800
Nashville, TN 37219
E-mail: randy.michels@stites.com

Mari-Elise Taube
Stites & Harbison PLLC
1199 North Fairfax St., Suite 900
Alexandria, VA 22314
E-mail: mtaube@stites.com

By: Greg Latham
Gregory D. Latham

EXHIBIT 17

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500

BUO

Mailed: February 4, 2015

Cancellation No. 92058638

*Lisa Alyn*

*v.*

*Southern Land Co., LLC*

**Benjamin U. Okeke, Interlocutory Attorney:**

Now before the Board is Respondent's motion, filed October 6, 2014, to: (1) compel Petitioner to fully respond to Respondent's first set of interrogatories, including a signed verification from Petitioner, and document production requests; (2) have certain of Respondent's requests for admission deemed admitted in light of Petitioner's failure to appropriately respond to those requests; and (3) compel Petitioner to serve its initial disclosures in this proceeding.

The Board, in its discretion, suggested that the issues raised in the motion be resolved by telephone conference as permitted by TBMP § 502.06 (2014). The conference was held at 12:30 p.m. EST, on Friday, January 30, 2015. Participating in the conference were Petitioner's counsel, Gregory D. Latham and Brandon Frank, Respondent's counsel, James R. Michels, and Board interlocutory attorney, Benjamin U. Okeke.

The Board carefully considered the arguments raised by the parties during the telephone conference, as well as the briefs on the motions and exhibits attached thereto, and the record of this case in coming to a determination regarding the issues presented in the motions.

The Board presumes the parties' familiarity with the factual background and arguments with respect to this motion, particularly in light of the telephone conference, and therefore will only recount the facts and arguments as necessary to discuss this motion.

During the telephone conference, the Board made the following findings and determinations:

***Motion to Compel***

Initially, the Board finds that Respondent made a sufficient good faith effort to resolve the parties' discovery disputes prior to seeking Board intervention. *See* Trademark Rule 2.120(e)(1). Notwithstanding Petitioner's contention that "[t]he parties have never conferred on" the matter of Petitioner's initial disclosures, indeed Respondent's letter to Petitioner, dated August 8, 2014, includes a paragraph addressing Petitioner's initial disclosures and pointing out that they "have yet to be produced." Motion, Ex. C, p.9. Therefore, a good faith effort has been made by Respondent as to each issue raised in its motion. Additionally, the Board finds that the motion has been timely made. *Id*.

The Board reminded the parties that a party may take discovery not only as to matters specifically raised in the pleadings, but also as to any matter which might serve as the basis for an additional claim, defense, or counterclaim. *See Varian Assoc. v. Fairfield-Noble Corp.*, 188 USPQ 581, 583 (TTAB 1975) (discussing general scope of discovery); *Mack Trucks, Inc. v. Monroe Auto Equipment Co.*, 181 USPQ 286, 287 (TTAB 1974) (opposer must answer interrogatories concerning allegations in notice of opposition); *Neville Chemical Co. v. Lubrizol Corp.*, 183 USPQ 184, 187 (TTAB 1974) ("applicant is entitled to take discovery not only as to the matters specifically raised in the pleadings but also as to any matters which might serve as the basis for an affirmative defense or for a counterclaim."). While the scope of discovery is therefore rather broad, parties may not engage in "fishing expeditions" and must act reasonably in framing discovery requests. Fed. R. Civ. P. 26(b). *See Luehrmann v. Kwik Kopy Corp.*, 2 USPQ2d 1303, 1305 (TTAB 1987).

The Board will take up each category of information at issue in this motion in turn:

- **Interrogatories and Document Requests**

*A. Petitioner's Awareness of Respondent and Its Marks; Interrogatory Nos. 9-10 and Document Request Nos. 6-8 and 25-26.*

It is unclear, and Respondent offers no compelling explanation as to what relevance this category of information carries in a cancellation proceeding involving a claim of fraud based upon Petitioner's allegation that Respondent misinformed the USPTO regarding the geographic significance of its mark.

Indeed, as Petitioner points out, this is a line of questioning more appropriate for a determination of a likelihood of confusion claim. In fact, Respondent itself has couched much of its argument regarding the motion to compel and its objected-to discovery requests on the misplaced notion that this proceeding by virtue of Petitioner's pleading of its standing implicates "the likelihood of confusion factors set forth in *In re E.I. DuPont DeNemours & Co.*, 177 USPQ 563 (CCPA 1973)." Motion, Ex. C, p.1. This is simply not true as explained further *infra*.

Nonetheless, inasmuch as Petitioner has not pleaded any property that may be the subject of a counterclaim alleging priority and likelihood of confusion, the Board construes these questions as supporting a potential defense of laches. However, laches, while a viable defense to a claim of likelihood of confusion under Trademark Act Section 2(d), will not lie as a defense to a fraud claim. *See Hornby v. TJX Cos. Inc.*, 87 USPQ2d 1411, 1419 (TTAB 2008) (*citing Treadwell's Drifters Inc. v. Marshak*, 18 USPQ2d 1318 (TTAB 1990)). Therefore, it would be futile for Respondent to attempt to pursue such a defense, and thus discovery aimed at a defense of laches would be imprudent.[1]

Accordingly, Respondent's motion to compel is **DENIED** with respect to Interrogatory Nos. 9-10 and Document Request Nos. 6-8 and 25-26.

---

[1] This is equally applicable to the other equitable defenses relating to Petitioner's knowledge of Respondent, its use of the challenged mark, and any perceived delay in opposing such use. This is because it is in the public interest to prohibit registrations procured or maintained by fraud, but the defenses are available when the rights asserted by a petitioner are personal in nature.

*B. Petitioner's Use of the WESTHAVEN Mark; Interrogatory No. 2 and Document Request Nos. 4 and 20-21.*

Both parties miss the mark in their respective discussions regarding the relevance of Petitioner's use of the WESTHAVEN mark. As previously stated, Respondent's discovery requests appear primarily geared toward a likelihood of confusion analysis; and in response, Petitioner argues that these requests are inapposite to its fraud claim and are equally irrelevant to its standing to bring this proceeding. Neither position is tenable.

Indeed, the petition to cancel alleges that "Petitioner will be damaged by the continued existence of United States Trademark Registration No. 3,101,151 and No. 3,101,150 because they will give color of rights to the Respondent and will continue to be an impediment to Petitioner's ability to use 'Westhaven' in regards to her business services and advertising." Petition to Cancel, ¶ 14. However, this does not implicate the likelihood of confusion analysis of *DuPont* as argued by Respondent, but instead the commercial interest and mere intermeddler standard found in *Herbko Int'l Inc. v. Kappa Books Inc.*[2] and *Jansen Enters. Inc. v. Rind.*[3] That is, Petitioner's allegation of standing relies on its commercial interest in the use of the mark WESTHAVEN, thus, without proof of such commercial interest the Board would not reach the merits of the fraud claim in this cancellation due to Petitioner's lack of standing.

---

[2] 64 USPQ2d 1375 (Fed. Cir. 2002)

[3] 85 USPQ2d 1104, 1107 (TTAB 2007).

Inasmuch as standing remains an issue to be proven at trial, evidence regarding Petitioner's commercial interest in the WESTHAVEN mark, despite Petitioner's objections, is clearly a proper subject of discovery. Therefore, inquiries regarding Petitioner's use of the mark WESTHAVEN are appropriate given the circumstances presented.

Accordingly, Respondent's motion to compel is **GRANTED** with respect to Interrogatory No. 2 and Document Request Nos. 4 and 20-21.

*C. Petitioner's Target Customers; Interrogatory No. 7 and Document Request No. 31*

Again, it appears that Respondent's misinterpretation of the implications of Petitioner's pleaded standing has resulted in objectionable discovery requests. Respondent failed in its motion or during the conference to advance a reasonable explanation for the relevance of this category of questions with regard to Petitioner's claim of fraud. Indeed, and as Petitioner asserts, the single case cited in support of Respondent's argument is one involving a claim of likelihood of confusion.

Accordingly, Respondent's motion to compel is **DENIED** as to Interrogatory No. 7 and Document Request No. 31.

*D. Petitioner's Sales and Advertising; Interrogatory No. 8 and Document Request Nos. 14-19 and 34-35.*

Inasmuch as this information appears at least reasonably related to Petitioner's use of the WESTHAVEN mark, its relevance has been determined with respect to Petitioner's standing.

Accordingly, Respondent's motion to compel is **GRANTED** with respect to Interrogatory No. 8 and Document Request Nos. 14-19 and 34-35.

*E. Petitioner's Agreements Regarding the WESTHAVEN Mark; Interrogatory No. 15 and Document Request No. 24.*

These inquiries also implicate Petitioner's claim of use or interest in the WESTHAVEN mark. Accordingly, Respondent's motion to compel is **GRANTED** with respect to Interrogatory No. 15 and Document Request No. 24.

*F. Petitioner's Selection and Adoption of the WESTHAVEN mark; Interrogatory Nos. 1 and 4-5, and Document Request Nos. 2, 10, and 44.*

Petitioner does not allege ownership of the WESTHAVEN mark, and its pleading of standing does not constitute such a claim. Again, Respondent appears to confuse the pleading of a commercial interest for a claim of likelihood of confusion. The Board rejects this construction, and in the absence of a compelling argument regarding some ancillary relevance of the information sought, Respondent's motion to compel must be **DENIED** as to Interrogatory Nos. 1 and 4-5, and Document Request Nos. 2, 10, and 44.

*G. Signed Verification of Interrogatories*

The parties indicated during the conference that this issue has been resolved. Therefore, Respondent's motion to compel is rendered **MOOT** with respect to Petitioner's signed verification of its responses.[4]

[4] Petitioner is reminded however, that she must also provide a signed verification of the supplemental responses served pursuant to this order.

- **Initial Disclosures**

Additionally, the parties indicated that Petitioner has served sufficient initial disclosures, and that this issue is no longer in dispute. Therefore, Respondent's motion to compel is rendered **MOOT** with respect to Petitioner's initial disclosures.

***Sufficiency of Admissions***

Respondent moves to have Requests for Admission Nos. 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, and 34 deemed admitted. However, Requests Nos. 12-14 and 17-20, appear to assume a likelihood of confusion claim in this proceeding (relatedness of services, similarity of marks, priority, etc.). However, as previously discussed, many inquiries aimed at a likelihood of confusion, absent further explanation, are wholly irrelevant to this proceeding involving only a claim of fraud.

Requests Nos. 21-24 on the contrary, inquire about the geographic significance of the term WESTHAVEN and its origin. This is squarely within the purview of this proceeding inasmuch as Petitioner's fraud claim is based upon alleged misinformation provided by Respondent to the USPTO regarding the geographic significance of the mark WESTHAVEN. Contrary to Petitioner's contention, it is incumbent upon Petitioner to have made a reasonable inquiry into this information before ever filing its petition to cancel; therefore, Petitioner should carefully consider the efficacy of maintaining its objections to responding to these requests.

Similarly, Request No. 34 is the proper subject of a request for admission to the extent that it is directed at Petitioner's use, and thus its commercial interest in the term WESTHAVEN, which as previously discussed implicates Petitioner's standing in this proceeding. Therefore, Petitioner's objection to responding to this request is **OVERRULED**.

Based on the foregoing, Respondent's motion to test the sufficiency of Petitioner's admissions is **GRANTED** in part and **DENIED** in part, to the extent that while the requests are not deemed admitted, Petitioner is allowed until the date set forth below to serve amended responses to Respondent's Request for Admission Nos. 21-24 and 34.

***Summary***

Accordingly, Respondent's motion to compel is **GRANTED in part**, and **DENIED in part**, to the extent that Petitioner is ordered, within **THIRTY DAYS** of the mailing date of this order, to serve upon Respondent supplemental verified responses to Respondent's Interrogatory Nos. 2, 8, and 15, Document Request Nos. 4, 14-21, 24, and 34-35,[5] and Requests for

[5] Petitioner is reminded that its obligation to conduct a thorough search of its records and produce any responsive materials includes a search of electronically stored information. Electronically stored information may be produced in the form specified by the request. If no specification is made, Petitioner must produce the electronically stored information in the form in which it is ordinarily maintained, or in a reasonably usable form. *See* Fed. R. Civ. P. 34(b)(2)(E)(ii). Fed. R. Civ. P. 34(a) "requires that, if necessary, a responding party 'translate' information it produces into a 'reasonably usable' form." However, the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation.

Admission Nos. 21-24 and 34, without objection on the merits.[6] *See*, *No Fear, Inc. v. Rule*, 54 USPQ2d 1551 (TTAB 2000). Further, Petitioner is ordered to copy and send all responsive documents to Respondent, at its own expense. *See Unicut Corp. v. Unicut, Inc.*, 220 USPQ 1013 (TTAB 1983); *No Fear*, 54 USPQ2d at 1556.

If, after a thorough search has been completed, no such documents are found to exist, then Petitioner must so state clearly. A proper written response to a document request requires the responding party to state whether responsive documents exist or not, and if so, that either they will be produced or will be withheld on a claim of privilege. *See No Fear*, 54 USPQ2d at 1556.

However, Petitioner is reminded that it may be barred from relying upon or later producing documents or information at trial, or to use any information or witnesses to supply evidence on a motion or at a hearing, where such documents, information, or witnesses were withheld from discovery.[7] *See* Fed. R. Civ. P. 37(c)(1); *Panda Travel, Inc. v. Resort Option*

---

[6] Objections going to the merits of a discovery request include those which challenge the request as overly broad, unduly vague and ambiguous, burdensome and oppressive, as seeking non-discoverable information on expert witnesses, or as not calculated to lead to the discovery of admissible evidence. In contrast, claims that information sought by a discovery request is trade secret, business-sensitive or otherwise confidential, is subject to attorney-client or a like privilege, or comprises attorney work product, goes not to the merits of the request but to a characteristic or attribute of the responsive information. *See No Fear*, 54 USPQ2d at 1554.

[7] Respondent must raise this matter by objecting to the evidence in question during the trial period and preserving its objection in its brief on the case. *See Panda Travel, Inc.* 94 USPQ2d at 1792-93; *General Mills Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1593-94 (TTAB 2011); TBMP § 527.01(e).

*Enters., Inc.*, 94 USPQ2d 1789, 1792 (TTAB 2009); *Quality Candy Shoppes/Buddy Squirrel of Wisconsin Inc. v. Grande Foods*, 90 USPQ2d 1389, 1392 (TTAB 2007); *Presto Prods. v. Nice-Pak Prods.*, 9 USPQ2d 1895, 1896 n.5 (TTAB 1988); TBMP § 527.01(e).

The parties are expected to move this case forward efficiently, and to cooperate with one another going forward to avoid unnecessary motions that tax the Board's limited resources.

***Schedule***

The proceeding is **RESUMED**. Remaining discovery, disclosure, and trial dates are reset as follows:

| | |
|---|---|
| Discovery Closes | **2/10/2015** |
| Plaintiff's Pretrial Disclosures | **3/27/2015** |
| Plaintiff's 30-day Trial Period Ends | **5/11/2015** |
| Defendant's Pretrial Disclosures | **5/26/2015** |
| Defendant's 30-day Trial Period Ends | **7/10/2015** |
| Plaintiff's Rebuttal Disclosures | **7/25/2015** |
| Plaintiff's 15-day Rebuttal Period Ends | **8/24/2015** |

In each instance, a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.l25.

---

However, if Petitioner fails to comply with this order, the remedy lies in a motion for sanctions, pursuant to Trademark Rule 2.120(g)(1). Should Respondent seek to file such a motion *it must first seek leave to file the motion by contacting the assigned Board interlocutory attorney*. Failure to obtain such leave may result in the motion being given no consideration. Furthermore, Petitioner is reminded that a party that has responded to a discovery request has a duty to supplement or correct that response. *See* Fed. R. Civ. P. 26(e).

Briefs shall be filed in accordance with Trademarks Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.

**EXHIBIT 18**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number: **ESTTA663453**

Filing date: **03/27/2015**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 92058638 |
| Party | Defendant<br>Southern Land Company, LLC |
| Correspondence Address | JAMES R MICHELS<br>TRUST TREE LEGAL PC<br>1321 ADAMS ST<br>NASHVILLE, TN 37208<br>UNITED STATES<br>randy@trust-tree.com |
| Submission | Motion for Sanctions |
| Filer's Name | James R. Michels |
| Filer's e-mail | randy@trust-tree.com |
| Signature | /JRM/ |
| Date | 03/27/2015 |
| Attachments | Southern Land Company's Motion for Discovery Sanctions.pdf(90756 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**IN THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| **LISA ALYN,**<br><br>Petitioner<br><br>v.<br><br>**SOUTHERN LAND COMPANY, LLC**<br><br>Registrant | ) | Cancellation No. 92058638<br>U.S. Registration Nos. 3,101,150<br>3,101,151 |

**SOUTHERN LAND COMPANY'S MOTION FOR DISCOVERY SANCTIONS**

Registrant Southern Land Company, LLC ("Southern Land Company") hereby moves the Board for an Order entering sanctions against Petitioner for failing to comply with the Board's February 4, 2015 order (the "Order"). Pursuant to the Order, Petitioner was required, within thirty days of the mailing date of the Order, to serve upon Southern Land Company supplemental verified responses to Southern Land Company's Interrogatory Nos. 2, 8, and 15, Document Request Nos. 4, 14-21, 24, and 34-35, and Requests for Admission Nos. 21-24 and 34, without objection on the merits. Petitioner was further ordered to copy and send all responsive documents to Southern Land Company, at its own expense. The deadline to comply with the Order was March 6, 2015. The deadline passed without any action taken by Petitioner.

Based on the foregoing, Southern Land Company moves the Board for an Order barring Petitioner from relying upon or later producing documents or information at trial, or to use any information or witnesses to supply evidence on a motion or at a hearing,

where such documents, information, or witnesses were withheld from discovery. TBMP § 527.01(e). Southern Land Company also moves the Board for an Order deeming Requests for Admission Nos. 21-24 and 34 to be admitted. TBMP § 527.01(d).

Respectfully submitted,

James R. Michels
TRUST TREE LEGAL, P.C.
1321 Adams Street
Nashville, TN 37208
Telephone: (615) 852-8408
Email: randy@trust-tree.com

Attorney for Registrant,
SOUTHERN LAND COMPANY, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2015, a copy of Southern Land Company's Motion for Discovery Sanctions was served on counsel for Petitioner via email to:

Gregory D. Latham
Intellectual Property Consulting, LLC
201 St. Charles, Suite 2500
New Orleans, LA 70170
E-mail: glatham@iplawconsulting.com

Brandon Frank
Pailet & Ostendorf, LLP
650 Poydras Street, Suite 1470
New Orleans, Louisiana 70130
E-mail: brandon@proentertainmentlaw.com

Attorney for Registrant

**EXHIBIT 19**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500

BUO

Mailed: June 1, 2015

Cancellation No. 92058638

*Lisa Alyn*

*v.*

*Southern Land Company, LLC*

**Benjamin U. Okeke, Interlocutory Attorney:**

Now before the Board are Petitioner's combined motions, filed February 6, 2015, to compel Respondent to "(i) provide for inspection documents identified in [Respondent's] responses to [Petitioner's] document requests; … (ii) produce for deposition certain corporate employees and the appropriate corporate representatives pursuant to Rule 30(b)(6);" for "an extension of the discovery period for the limited purpose of allowing Petitioner time to review [Respondent's] documents made available for inspection and, if necessary, pursue follow-up discovery," with a corresponding rescheduling of the testimony dates; and Petitioner's motion, filed May 27, 2015, to suspend this proceeding pending determination of a civil action. 12 TTABVUE 2.

Additionally, on March 27, 2015, Respondent filed a motion for discovery sanctions, based upon Petitioner's failure to comply with the Board's February 4,

2015 order, directing Petitioner to serve upon Respondent supplemental verified responses to Respondent's Interrogatory Nos. 2, 8, and 15, Document Request Nos. 4, 14-21, 24, and 34-35, and Requests for Admission Nos. 21-24 and 34, without objection on the merits.

The Board, in its discretion, suggested that the issues raised in the motions be resolved by telephone conference as permitted by TBMP § 502.06 (2014). The conference was held at 1:00 p.m. ET, on Friday, May 29, 2015. Participating in the conference were Petitioner's counsel, Gregory D. Latham and Brandon Frank, Respondent's counsel, James R. Michels, and Board interlocutory attorney, Benjamin U. Okeke.

The Board carefully considered the arguments raised by the parties during the telephone conference, as well as the briefs on the motions and exhibits attached thereto, and the record of this case in coming to a determination regarding the issues presented in the motions.

The Board presumes the parties' familiarity with the arguments made in their submissions, the facts of the proceeding, and particularly the facts that occasioned the filing of the respective motions; therefore, those arguments and facts will only be recounted as necessary to explain the Board's decision. During the telephone conference, the Board made the following findings and determinations:

***Petitioner's Motion to Compel***

Prior to the taking of a discovery deposition on notice alone, the party seeking to take the deposition ("the deposing party") must give reasonable notice in writing to

every adverse party. Fed. R. Civ. P. 30(b)(1); Trademark Rules 2.124(b)(2) and 2.124(c).

> (1) … A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs.
>
> . . .
>
> (6) … In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.

Fed. R. Civ. P. 30(b)(1) and (6).

In support of her motion to compel, Petitioner attached, *inter alia*, a string of email messages sent between Petitioner's counsel and Respondent's counsel. These email messages discuss possible dates and times to schedule an inspection of documents identified by Respondent in response to Petitioner's discovery requests and attempt to schedule the depositions of Respondent under Fed. R. Civ. P. 30(b)(6), Mary Lee Bennett, and Tim Downey. However, Petitioner did not provide a formal deposition notice. Nonetheless, "formal" notice is not required. However, inspecting the email messages, the messages cannot be construed as providing sufficient notice to treat them as properly noticing a Rule 30(b)(6) deposition, which must include: (i) the time and place of the deposition, (ii) the deponent's name and address, and (iii) *a description with reasonable particularity of the matters for*

*examination*. See Fed. R. Civ. P. 30(b)(6); *Red Wing Co. v. J.M. Smucker Co.*, 59 USPQ2d 1861, 1864 (TTAB 2001) (subject matter of deposition to be described with reasonable particularity in the notice).

Although the email messages contain the name of the parties to be deposed (albeit without providing the addresses of those parties), there is no specified date, merely an inquiry regarding "convenient dates/times." 12 TTABVUE 31. Indeed, although Respondent replied providing possible dates for the deposition(s) to occur, this cannot reasonably be construed as a date certain, such as to properly notice the deposition, particularly in the absence of an email from Petitioner agreeing to those dates.

However, notwithstanding any contention that may be made regarding the date of the deposition, no such contention can be made regarding the absence of any information regarding the topics to be examined during the deposition(s). The chain of emails between the parties' counsel is devoid of any mention of this information.

Accordingly, inasmuch as Petitioner failed to provide the information required by Fed. R. Civ. P. 30(b) for properly noticing a deposition, Petitioner's motion to compel is **DENIED** with respect to the request to produce for deposition certain corporate employees and the appropriate corporate representatives on behalf of Respondent pursuant to Rule 30(b)(6).

However, the email messages do indicate that Respondent has not fulfilled its duty to make responsive documents reasonably available to Petitioner for inspection. Pursuant to Trademark Rule 2.120(e)(1), the signature of a party or

attorney constitutes a certification as to a discovery request, response or objection and disclosure as set forth in Fed. R. Civ. P. 26(g)(1). *See Miss Am. Pageant v. Petite Prods., Inc.*, 17 USPQ2d 1067, 1069 (TTAB 1990). Moreover, this signature also certifies that the party or lawyer has made a reasonable effort to assure that all available information and documents responsive to the discovery demand have been provided. *See* Fed. R. Civ. P. 26 Advisory Committee's Notes (1983 Amendment Rule 26, Subdivision (g)).

Unlike the deposition scheme described above, there is no burden of notice on Petitioner, and Petitioner need only propound the discovery seeking such information in order to trigger Respondent's duty to make responsive documents available should Respondent choose not to simply copy and forward the responsive documents to Petitioner, which could have been done at Petitioner's expense. *See No Fear Inc. v. Rule*, 54 USPQ2d 1551, 1555 (TTAB 2000).

While Respondent's contention that it has not "fail[ed] to permit inspection and copying of any document or thing," may be accurate, it appears that Respondent has been much less than cooperative or forthcoming in the production of responsive documents. This is in contravention of Respondent's duty to not only produce such materials or make them reasonably available for inspection, but also the continuing duty to cooperate in the conduct of discovery. *See Panda Travel Inc. v Resort Option Enters., Inc.*, 94 USPQ2d 1789, 1791 (TTAB 2009) ("Each party has a duty to make a good faith effort to satisfy the reasonable and appropriate discovery needs of its adversary.").

Accordingly, Petitioner's motion to compel is **GRANTED** with respect to Respondent's production of documents responsive to Petitioner's document requests. Consequently, Respondent is ordered, within **TWENTY DAYS** of the issuance of this order, to copy and forward such responsive documents as exist to Petitioner at Respondent's own expense. *See, No Fear*, 54 USPQ2d at 1554.

In the event Respondent fails to produce documents identified as responsive to Petitioner's discovery requests as ordered herein, Respondent may be subject to sanctions, potentially including entry of judgment against it. Trademark Rule 2.120(g); Fed. R. Civ. P. 37(b)(2).

***Respondent's Motion for Sanctions***

On February 4, 2015, the Board issued an order granting in part Respondent's motion to compel, to the extent that Petitioner was ordered, within thirty days of the mailing date of that order, to serve upon Respondent supplemental responses to Respondent's Interrogatory Nos. 2, 8, and 15, Document Request Nos. 4, 14-21, 24, and 34-35, and Requests for Admission Nos. 21-24 and 34, without objection on the merits. 11 TTABVUE 9-10.

On March 27, 2015, Respondent filed a motion for sanctions, citing Petitioner's failure to comply with the Board's prior order. Respondent seeks to preclude Petitioner from relying upon or later producing documents or information at trial, or to use any information or witnesses to supply evidence on a motion or at a hearing, where such documents, information, or witnesses were withheld from discovery.

As noted in the Board's April 3, 2015 suspension order, neither the filing of Petitioner's motion to compel nor the suspension of the proceeding would toll the time for Petitioner to make required discovery disclosures, or to respond to any outstanding discovery requests. Inasmuch as Petitioner failed to comply with the Board's prior order and did not oppose Respondent's motion, the motion is **GRANTED** as conceded.

Accordingly, as a sanction for Petitioner's failure to comply with the Board's discovery order issued February 4, 2015, Petitioner is prohibited from introducing at trial or relying upon any answers or documents not produced to Respondent in response to Interrogatory Nos. 2, 8, and 15, Document Request Nos. 4, 14-21, 24, and 34-35. Additionally, Requests for Admission Nos. 21-24 and 34 are deemed admitted.

***Petitioner's Motion for Suspension for Civil Action***

Consideration of Petitioner's motion, filed May 27, 2015, for suspension of this proceeding pending resolution of a civil action is deferred pending Petitioner's service of the complaint in that action on Respondent. It is noted, however, that any such suspension would nonetheless begin to run following the twenty day period within which Respondent has been directed to copy and serve responsive documents to Petitioner.

***Schedule***

The proceeding is resumed, and the remaining discovery, disclosure, and trial dates are reset as follows:

| | |
|---|---|
| Discovery Closes | **6/6/2015** |
| Plaintiff's Pretrial Disclosures | **7/21/2015** |
| Plaintiff's 30-day Trial Period Ends | **9/4/2015** |
| Defendant's Pretrial Disclosures | **9/19/2015** |
| Defendant's 30-day Trial Period Ends | **11/3/2015** |
| Plaintiff's Rebuttal Disclosures | **11/18/2015** |
| Plaintiff's 15-day Rebuttal Period Ends | **12/18/2015** |

In each instance, a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.

**EXHIBIT 20**

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500

BUO

Mailed: June 23, 2015

Cancellation No. 92058638

*Lisa Alyn*

*v.*

*Southern Land Co., LLC*

**Benjamin U. Okeke, Interlocutory Attorney:**

The motion, originally filed May 27, 2015, and supplemented June 16, 2015, to suspend this proceeding pending final determination of Civil Action *Lisa Alyn v. Sourthern Land Company, LLC*, 3:15-cv-596 filed in the United States District Court for the Middle District of Tennessee.is **GRANTED** as well taken. It is the policy of the Board to suspend proceedings when the parties are involved in a civil action, which may be dispositive of or have a bearing on the Board case. *See* Trademark Rule 2.117(a).

Accordingly, proceedings are **SUSPENDED** pending final disposition of the civil action.

Within **TWENTY DAYS** after the final determination of the civil action, the parties shall so notify the Board so that this proceeding may be called up for

appropriate action.[1] Such notification to the Board should include a copy of any final order or final judgment which issued in the civil action.

During the suspension period, the parties must notify the Board of any address changes for the parties or their attorneys. In addition, the parties are to promptly inform the Board of any other related cases, even if they become aware of such cases during the suspension period. Upon resumption, if appropriate, the Board may consolidate related Board cases.

---

[1] A proceeding is considered to have been finally determined when a decision on the merits of the case (*i.e.*, a dispositive ruling that ends litigation on the merits) has been rendered, and no appeal has been filed therefrom, or all appeals filed have been decided. *See* TBMP § 510.02(b) (2014).