UNITED STATES DISTRICT COURT
MIDDLE DISTRICT COURT OF TENNESSEE

| | |
|---|---|
| LISA ALYN, | CIVIL ACTION NO. 3:15-cv-00596 |
| Plaintiff | JUDGE WAVERLY D. CRENSHAW, JR. |
| v. | MAGISTRATE JUDGE JOHN S. BRYANT |
| SOUTHERN LAND COMPANY, LLC | |
| Defendant | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
SOUTHERN LAND'S OMNIBUS MOTION TO EXCLUDE
MS. ALYN'S PROFFERED EXPERT TESTIMONY**

Lisa Alyn (hereinafter "Ms. Alyn" or "Plaintiff") submits this memorandum in opposition to Southern Land Company, L.L.C.'s ("Southern Land") Omnibus Motion to Exclude Ms. Alyn's Proffered Expert Testimony (Doc. No. 80)("Motion").

**I.   INTRODUCTION**

In less than five pages, Southern Land cobbles together its arguments for excluding the proffered testimony of Edward Timberlake, Robert J. Fisher, and Joseph C. Grubbs ("Alyn Experts"). Southern Land's Motion consists almost entirely of a mere gloss over the general rules regarding the admissibility of expert testimony followed by unsupported and conclusory statements that the proffered testimony by the Alyn Experts is neither reliable nor helpful to the trier of fact.

First, Southern Land improperly claims that Timberlake and Fisher are not "reliable" because they do not point to "scientific research or a test" used as the basis in forming their opinions. Neither Fisher nor Timberlake are considered "scientific" or "technical" experts under FRE 702. Rather, these experts have a "specialized knowledge" and their extensive experience

1

in the field of trademark practice and procedure (Timberlake) and public relations (Fisher) provide a sufficient basis for their testimony to be deemed reliable.

In a nutshell, Southern Land's remaining arguments are also not supported by law or fact:

- Southern Land argues that Mr. Timberlake is a "lawyer" and offers "legal conclusions" as to whether the name "Westhaven" is geographically descriptive and whether the issue of descriptiveness was material to the registration being issued. To the contrary, the law identifies these issues as questions of fact. Indeed, patent and trademark office experts, like Mr. Timberlake, are routinely accepted as experts to testify on the practices and procedures at the United States Patent and Trademark Office.

- Southern Land seeks to exclude Mr. Fisher for not identifying a monetary amount of damages – an issue for which he was not retained. Mr. Fisher is an expert, with several decades of experience, in the field of public relations. He was retained to educate the jury on the impact of Southern Land's defamatory statements and how these statements have harmed Ms. Alyn's reputation both professionally and personally.

- Southern Land seeks to exclude Mr. Grubbs without even reading the content of his report. First, Southern Land claims the report is untimely since he purportedly opines on Ms. Alyn's damages. To the contrary, the report speaks to rebutting Southern Land's damages (not Ms. Alyn's), and therefore, is timely. Second, Southern Land claims Mr. Grubbs' failed to represent that his calculations are based on generally accepted accounting principles – an argument that is also directly refuted by the clear language of the report.

## II. LEGAL STANDARD

The Federal Rules of Evidence provide that expert witnesses may only testify where that testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 293 (6th Cir. 2007), quoting Fed R. Evid. 702. As a threshold matter, expert witnesses must be qualified to testify to a matter relevant to the case, and a proffering party can qualify their expert with reference to his "knowledge, skill,

experience, training or education." *Id.* Indeed, in evaluating the flexibility of Rule 702, the Supreme Court noted that "the relevant reliability concerns may focus upon personal knowledge or experience" as opposed to engineering testimony, for example, which "rests upon scientific foundations." *See, Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). As set forth below, all of Ms. Alyn's experts have vast experience in their specialized fields of expertise, and their testimony is not only reliable, but also helpful to the trier of fact.

### III. ARGUMENT

#### A. Edward Timberlake's Expert Testimony Will Assist the Trier of Fact in Understanding Complex Trademark Practice and Procedure and Its Application to Southern Land's Registrations.

Southern Land's arguments for exclusion are two-fold: (1) Mr. Timberlake's opinion is unreliable because he does not describe any particular test or process; and (2) Mr. Timberlake's opinions on whether the term "Westhaven" is considered geographically descriptive and whether the issue of that descriptiveness was material to the registration being issued are nothing more than "conclusions of law."[1]

First, Southern Land's argument that Mr. Timberlake's report is not reliable simply because he "does not describe any specialized test or process"[2] has no merit. Rather, an expert opinion may be entirely based on experience. *See, Innovation Ventures, LLC v. NVE, Inc.*, 90 F. Supp. 3d 703, 724 (E.D. Mich. 2015). Indeed, expert testimony on the basic principles of U.S. trademark law has consistently been deemed useful in explaining the rules of the road to a jury or even to a judge with very little trademark experience. *See,* 1 Anne Gilson LaLonde, Gilson on Trademarks § 8.03(4)(c) (2015). Notably, courts have routinely allowed trademark attorneys and former examiners to offer expert opinion testimony on the internal proceedings used by the

---

[1] *See,* Motion at p. 2.

[2] *See,* Motion at p. 3.

3

United States Patent and Trademark Office when deciding whether to issue a trademark. *See, Fresh Mkt. v. Marsh Supermarkets, Inc*., 2005 U.S. Dist. LEXIS 19708, *7 (N.D. Ind. Sept. 7, 2005); *see also, Specialized Seating, Inc. v. Greenwich Indus., L.P*., 472 F. Supp. 2d 999 (N.D. Ill. 2007) (former Board member testified regarding fraud on PTO); *Glamorene Prods. Corp. v. Boyle-Midway, Inc.*, 188 U.S.P.Q. 145 (S.D.N.Y. 1975) (former Board member testified as expert on examination of trademark applications). Here, Mr. Timberlake is a former examiner at the United States Patent and Trademark Office ("USPTO"), a former adjunct professor of trademark law, a practicing trademark attorney, and has given numerous presentations on trademark procedure and practice at the USPTO. *See,* Edward Timberlake's Expert Report (Doc. No. 80-1, at p.6 and attached resume) ("Timberlake Report"). Clearly, Mr. Timberlake's knowledge, education, and personal experience qualifies his opinions on trademark practice and procedure at the USPTO as reliable.

Second, Southern Land has simply mischaracterized factual issues as "legal conclusions" in a desperate attempt to find some grounds for excluding Mr. Timberlake's expert testimony. The case law is clear: the issue of whether a given term is geographically descriptive is a question of fact (not law). *See, In re Newbridge Cutlery Co.,* 776 F.3d 854, 856 (Fed. Cir. 2015); *In re Compagnie Generale Mar.*, 993 F.2d 841, 845 (Fed. Cir. 1993). Moreover, Courts have relied on a patent and trademark office expert's opinion in determining the factual issue of whether a trademark applicant's misrepresentations were "material" to the trademark registration being issued. *See, Fair Isaac Corp. v. Experian Info. Solutions, Inc.,* 650 F.3d 1139, 1150 (8th Cir. 2011). Based on Mr. Timberlake's experience and specialized knowledge governing the internal procedures at the USPTO, his testimony would certainly be helpful to the trier of fact in

4

determining whether the term "Westhaven" is a geographically descriptive term and whether that descriptiveness is material to a trademark registration being issued.[3]

Mr. Timberlake's qualifications are not being challenged and the arguments set forth by Southern Land for exclusion are clearly contrary to law. Accordingly, Southern Land's motion to exclude Mr. Timberlake's proffered expert testimony should be denied.

### B. Robert J. Fisher's Extensive Experience in Public Relations Will Help a Juror Understand How Southern Land's Defamatory Statements Have Impacted Ms. Alyn's Reputation.

Mr. Fisher has a long and distinguished career (over 48 years) practicing in the fields of public relations, crisis communications management, and reputation management. *See,* Robert Fisher's Expert Report (Doc. No. 80-2, at pp. 1-4) ("Fisher Report"). Over the past decade, he has served as an expert in these fields for cases involving claims of libel, slander, and defamation. *Id.*

Southern Land argues that Mr. Fisher's testimony is "not helpful" because he does not assign a monetary or quantifiable amount to Ms. Alyn's damages.[4] Mr. Fisher was not retained to quantify Ms. Alyn's damages. Rather, he was retained to assist the trier of fact in understanding how Southern Land's defamatory statements have negatively impacted Ms. Alyn's reputation. In other words, Mr. Fisher will assist in proving that Ms. Alyn <u>was</u> damaged, not in determining the quantum of damages.

---

[3] Mr. Timberlake offered his opinions on various other factual issues relating to USPTO practice and procedure, none of which are being challenged by Southern Land in its Motion. For example, Mr. Timberlake opined that (1) "Westhaven" is a known geographic location and consumers would expect the purported services under the "Westhaven" marks to originate in that location, and (2) "Westhaven" would not be perceived by consumers as a "coined" or "fanciful" mark. Timberlake Report at pp. 4-5. Even if the Court agreed with Southern Land, the proper course would be to strike (or limit) the portions which Southern Land complains of and allow the rest.

[4] *See,* Motion at p. 3.

The law of defamation is a unique tort that is not easily understood by the average layperson – especially when it comes to the types of harm caused by defamation. Tennessee courts have long held that for an alleged defamatory statement to be actionable, it must "constitute a serious threat to the plaintiff's reputation." *In re Conservatorship of Turner*, 2014 Tenn. App. LEXIS 278, *22 (Tenn. Ct. App. May 9, 2014), quoting *Stones River Motors, Inc. v. Mid—South Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983). Indeed, most jurors will not have been victims of defamatory statements and will not fully understand how, and to what extent, a person's reputation may be harmed or threatened by defamatory statements. With his testimony, Mr. Fisher helps the jury by explaining how the defamatory statements at issue were disseminated, and more importantly, how these defamatory statements have harmed Ms. Alyn both personally and professionally. *See,* Fisher Report at pp. 7-11.

Southern Land's second argument for exclusion mirrors the same argument advanced for excluding Mr. Timberlake's testimony – since no "tests" were performed, argues Southern Land, Mr. Fisher's testimony is not reliable. As stated above, this argument is without merit. Mr. Fisher's experience alone is sufficient to qualify his testimony as reliable and helpful to the trier of fact. *See*, *Innovation Ventures, LLC,* supra.

### C. Joseph C. Grubbs' Expert Report Was Timely Submitted and Will Help the Jury Quantify the "Net Profits" Ms. Alyn May Owe to Southern Land as Infringement Damages.

Joseph C. Grubbs has been a licensed certified public accountant in Tennessee since 1998. *See,* Joseph Grubbs' Expert Report (Doc. No. 80-3, at p. 9) ("Grubbs Report"). Since 2005, Mr. Grubbs has managed his own accounting firm where his firm has prepared over 150 tax returns for real estate agents and brokerage firms in the area. *Id.* at p. 3. Mr. Grubbs has spent the last decade quantifying the profits and expenses of real estate agents for tax return

purposes. *Id.* Given Mr. Grubbs' unassailable experience, Southern Land does not challenge Mr. Grubbs' qualifications as an accountant. Rather, Southern Land seeks to exclude Mr. Grubbs' testimony as not being timely submitted. This argument is based in error as the report is clearly a report rebutting Southern Land's damages (and not a report on Ms. Alyn's damages). Second, Southern Land seeks to strike Mr. Grubbs testimony as not being reliable because he purportedly failed to represent that his calculations were performed in accordance with generally accepted accounting principles. This argument has no merit and is contradicted by the clear language in the Grubbs Report.

First, Southern Land improperly concludes that Mr. Grubbs' report "exclusively addresses Ms. Alyn's alleged damages," and therefore, should have been filed on or before June 13, 2016[5] (as opposed to July 13, 2016 when rebuttal reports were due). As Mr. Grubbs' report explains, and as counsel for Southern Land should know, the Lanham Act provides that when a defendant infringes a service mark, a plaintiff "shall be entitled . . . subject to the principles of equity" to recover, among other things, the "defendant's profits." *Taylor v. Thomas,* 624 Fed. Appx. 322, 328 (6th Cir. 2015), quoting 15 U.S.C. § 1117(a). Under established law, once gross profits related to the trademark infringement are established, the infringing party has the burden of documenting any legitimate offsets. *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1000 (9th Cir. 2004). Moreover, the Court must assume that the defendant's profits equal his gross sales unless he presents evidence of his costs. *Taylor*, 624 Fed. Appx. at 328 (6th Cir. 2015).

Accordingly, after Southern Land establishes gross profits, the burden shifts to Ms. Alyn to put forth evidence of costs. Ms. Alyn fully expected Southern Land to produce an expert

---

[5] *See,* Motion at p. 4.

report on gross revenues – a burden it carries – by the June 13, 2016 deadline. When that date passed, and no report was provided, Ms. Alyn operated under the belief that Southern Land was going to exclusively rely on Ms. Alyn's tax records to carry its burden of proving gross revenues.[6] In response, Ms. Alyn submitted the timely rebuttal report of Mr. Grubbs outlining his expert opinion on the "net profits" Southern Land may be entitled to on its trademark infringement claims against Ms. Alyn. *See,* Grubbs Report at pp. 4-7. Mr. Grubbs' report gives a thorough accounting of Ms. Alyn's gross revenues and expenditures in order to refute (or "rebut") Southern Land's claims for damages. Specifically, Mr. Grubbs' opinion states the following:

> **"…it is my opinion that her [Ms. Alyn's] net profits from October 22, 2013 through May 30, 2016 that are attributable to infringement are [dollar amount][7]."**

*See,* Grubbs Report at p. 6.

Accordingly, Mr. Grubbs' report was timely submitted to rebut Southern Land's purported infringement damages.

Next, Southern Land argues that Mr. Grubbs' opinion and calculations are unreliable because his report "conspicuously lacks any representation that his calculations or opinions are consistent with generally accepted accounting principles."[8] Southern Land must not have read the Grubbs Report before drafting its Motion. The report clearly states:

---

[6] This assumption was confirmed in Southern Land's recent Memorandum in Support of its Motion for Partial Summary Judgment (Doc No. 87, pp. 1-2).

[7] In an effort to avoid filing this Response under seal, Ms. Alyn has excluded the actual dollar amount from this brief as it is considered protected confidential information and not necessary for purposes of this Response. If the Court would like to know the actual dollar amount, it can be seen in the Grubbs Report (filed under seal).

[8] *See,* Motion at p. 5.

8

> **"1.6) My assumptions, methodologies, and calculations are based on current knowledge and professional methods consistent with the professional standards of accounting."[9]**

Despite this "oversight," Southern Land offers no expert testimony, or other evidence, to challenge the admissibility of the Grubbs Report.

## IV. Conclusion

For the foregoing reasons, Ms. Alyn respectfully requests that this Court deny Southern Land's Motion.

                        Respectfully submitted,

                        /s/ Greg D. Latham
                        Gregory D. Latham (admitted pro hac vice)
                        Stephen M. Kepper (admitted pro hac vice)
                        **INTELLECTUAL PROPERTY CONSULTING, LLC**
                        201 St. Charles Ave., Suite 2500
                        New Orleans, Louisiana 70170
                        Telephone: (504) 322-7166
                        Facsimile: (504) 322-7184
                        E-mail: *glatham@iplawconsulting.com*
                        E-mail: *skepper@iplawconsulting.com*

                        and

                        Thomas K. Potter, III (TN Bar No. 024857)
                        John Paul Nefflen (TN Bar No. 020226)
                        **BURR & FORMAN LLP**
                        511 Union Street, Suite 2300
                        Nashville, TN 37219
                        Telephone:  (615) 724-3219
                        Facsimile:   (615) 724-3319
                        Email: *tpotter@burr.com*
                        Email: *jnefflen@burr.com*

                        ***Attorneys for Lisa Alyn***

---

[9] Moreover, the revenues and business expenses used in Mr. Grubbs' Expert Report are derived directly from Ms. Alyn's tax returns. Certainly, a licensed certified public accountant is qualified to interpret an individual's tax return and use those values to compute "net profits."

**CERTIFICATE OF SERVICE**

I certify that on this 8th day of September, 2016, a copy of the foregoing Response to Southern Land's Omnibus Motion to Exclude Ms. Alyn's Proffered Expert Testimony was filed electronically with the Clerk of Court using the CM/ECF System of the Middle District of Tennessee, which will automatically send email notification of such filing to the following attorneys of record:

Randy Michels, Esq.
Kevin Hartley, Esq.
Trust Tree Legal, P.C.
1321 Adams Street
Nashville, TN 37208
Telephone: 615-852-8408
Email: randy@trust-tree.com
Email: kevin@trust-tree.com

/s/ Greg Latham
Gregory D. Latham